CHOI & ITO
Attorneys at Law

CHUCK C. CHOI
ALLISON A. ITO
745 Fort Street, Suite 1900
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Fax: (808) 566-6900
Email: cchoi@hibklaw.com;
aito@hibklaw.com

Proposed Attorney for Debtor
and Debtor-in-Possession

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>AINA LEʻA, INC.,<br><br>      Debtor and<br>      Debtor-in-possession | Case No. 17-00611<br>(Chapter 11)<br><br>Date:  to be set<br>Time:  \_\_\_\_ .m.<br>Judge: Hon. Robert J. Faris |

MOTION FOR ORDER AUTHORIZING DEBTOR TO
OBTAIN POST-PETITION FINANCING
ON SUPERPRIORITY BASIS; EXHIBIT "A" – "B"

Aina Leʻa, Inc., debtor and debtor-in-possession herein (the "Debtor"), hereby moves this Court, pursuant to 11 U.S.C. §§ 105 and 364, and Federal Rule of Bankruptcy Procedure 4001(c) hereby moves for an interim and final order

78107

authorizing the Debtor to incur debtor-in-possession financing ("DIP Financing") from certain shareholders and investors (each, a "Lender" and collectively, the "Lenders"), on the terms set forth in the Loan Term Sheet, attached hereto as Exhibit "A". In support of this motion (the "Motion"), the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## SUMMARY OF DIP FINANCING

3. The following is a summary of the proposed DIP Financing which the Debtor intends to offer to its existing shareholders and others. Terms used below and not defined shall have the meanings given them in the proposed LOI, attached hereto as Exhibit "A."

   a. Borrower: AINA LE'A, INC.

   b. Lender: investors and shareholders who participate ("Lender")

   c. Loan Amount and Terms: Minimum amount of $25,000.00 for any individual Lender. Each Lender shall participate in a maximum credit facility of up to $5,000,000 ("DIP Credit Facility") to be funded upon approval of the DIP Credit Facility by the Bankruptcy Court in accordance with the terms herein.

2

d. Use of Proceeds: The DIP Credit Facility shall be used to pay administrative expenses of the Bankruptcy Proceeding, including, but not limited to, payment for maintenance and preservation of the property of the Debtor's estate, salaries, rent, insurance, utility services, operating expenses and court-approved professional fees and as such pre-petition expenses as may be approved by the Bankruptcy Court.

e. Priority and Collateral: The loan shall be: (a) given superpriority pursuant to 11 U.S.C. § 364(c)(1) and shall have priority over administrative expenses of the kind specified in 11 U.S.C. §§ 503(b), 507(a), 507(b) and 726.

f. Interest Rate: Simple interest at the rate of 12% per annum shall accrue.

g. Maturity: Earlier of July 31, 2019 or confirmation of a Plan of Reorganization in the Debtor's Chapter 11 Case, unless terminated earlier pursuant to a "DIP Credit Facility Termination Event".

h. Conversion Option: Provided that Borrower is not in default, Lender shall have the option of converting the outstanding principal balance of its loan (including accrued and unpaid interest) into the common stock of the reorganized Borrower based on the Borrower's valuation at the time of confirmation.

i. Fees and Expenses: Borrower will pay each Lender's broker a flat fee of 10% of the principal loan amount.

j. Events of Default: Customary defaults including, (a) failure to pay principal, interest, fees and expenses when due; (b) violation of covenants; (c) change of control; (d) dismissal or conversion of the Borrower's Chapter 11 Case; (e) appointment of a chapter 11 trustee.

## BACKGROUND

4.  On June 22, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Hawaii (the "Court").

5.  The Debtor continues to operate its business pursuant to 11 U.S.C. § 1107 and 1108.

6.  The Debtor was initially formed by DW Aina Le'a Development, LLC ("DW") as a Nevada limited liability company Aina Le'a, LLC on April 1, 2009 and converted into Aina Le'a, Inc., a Delaware corporation, on February 6, 2012. From its formation 2009 through February 2012, the Debtor was owned by DW.

7.  The Debtor has approximately 500 shareholders and is a voluntary SEC reporting company.

8.  The Debtor's primary asset is entitled real property (the "Waikoloa Property") located on the Kohala Coast, in the Waikoloa area on the Island of Hawaii as follows: (a) approximately 1,008.349 acres identified with Tax Map Key Nos. (3) 6-8-001:038 and 039 ("Parcel B-1-A", and "Parcel D-1-A", respectively, or collectively, the "1,011 acres"); (b) 85% interest in approximately 23.559 acres identified with Tax Map Key No. (3)6-8-001-069 ("Parcel D-1-B-1" or the "23

4

78017.v8

acres");[1] and (c) approximately 46.88% interest (directly or indirectly through Aina Leʻa Land Trust No. 1, "Trust 1") in approximately 37.863 acres identified with Tax Map Key No. (3) 6-8-001:036 ("Parcel D-1-B-2" or the "38 acres").[2]

   a. Parcels D-1-B-1 and D-1-B-2 were acquired in 2009 from Bridge Aina Leʻa, Inc. ("Bridge").[3] To assist in its acquisition and development of the property, the Debtor (via Capital Asia Group Pte. Ltd "CAG") sold Undivided Land Fractions ("ULF") to investors (primarily in Asia and Australia), who in turn, contribute ULF to a land trust in exchange for a beneficial interest in the Trust.

   b. Parcels B-1-A and D-1-A (the 1,011 acres) were purchased from Bridge in November 2015, with $10 million cash and a $14 million note.

   c. The Debtor also has an option (until November 17, 2018) to purchase a separate adjacent 27-acre parcel from Bridge.

---

[1] Aina Leʻa Land Trust No. 2 ("Trust 2") owns the remaining 15% interest in the 23 acres.

[2] Trust 1 owns approximately 95.85% and the Debtor owns 4.15% of the fee interest in the 38 acres. The Debtor owns an approximately 44.58% interest in Trust 1.

[3] In 2007, DW was formed for the purpose of performing due diligence on the Waikoloa property. DW entered into an option to purchase the property subject to due diligence. The Option included a payment of $1 million to Bridge, and a commitment to share all reports and engineering developed during the due diligence. DW created the Debtor's predecessor to complete the purchase and develop the property.

5
78017.v8

d. The Debtor also has a lease with Bridge for the Debtor to, amongst other things to develop wells and water systems to deliver water to the Waikoloa Property.

9. The Waikoloa Property is located mauka of Queen Kaahumanu Highway between the entrance to the Mauna Lani Resort and Puako. The Waikoloa Property abuts Queen Kaahumanu Highway. *See* Exhibit "B" (Map).

10. The Waikoloa Property is part of a larger 3,000 acres of land and was once owned by Bridge which still owns approximately 1,900 acres of land surrounding the Waikoloa Property. The Debtor and Bridge are parties to various agreements, including a recorded Agreement Regarding Easements and Utilities and a Road/Intersection Escrow Agreement discussed below.

11. In summary, the Debtor financed the acquisition and development of the Waikoloa Property through:

a. Original investors' conversion of their interest to common stock in the Debtor in the amount of approximately $16.7 million;

b. Trust 1 and Trust 2 sales of ULFs in the amount of $44 million and the conversion of 43.7% of Trust 1 to common stock equity;

c. $16 million purchase of common stock by Shanghai Zhongyou Real Estate Group;

d. Working capital secured loan from Libo Zhang of $6 million;

6

78017.v8

e. Bridge secured purchase money loan of $14 million;

f. Secured construction loan from Romspen Investment Corporation of $12 million; and

g. Working capital loan from Winston Yau of $2 million; and

h. Working capital loan from Relco Corp. (Wessel's company) of $2.7 million.

12. Because the Waikoloa Property was acquired as "raw" land (i.e., primarily lava field), the Debtor is required to install all infrastructure, including without limitation, a water system, wastewater treatment facility, an electrical distribution system, a cable system, roadways connecting to Queen Kaahumanu Highway, a signalized intersection and all internal roadways.

13. The Debtor has commenced development of the Waikoloa Property for residential (including approximately 384 affordable townhouses) and commercial units, including an approximately 234-acre open space highway setback, 37-acres in parks and open space, and a golf course.

   a. In the first phase, Parcel D-1-B-2 (38 acres) is being developed as a residential community.

   b. Parcel D-1-B-1 (23 acres adjacent to Parcel D-1-B-1) is also being developed as a residential community with approximately 70 residential lots.

7

14. The 38 acre parcel is already permitted for 432 buildings. It is being developed with approximately 384 affordable three and four-bedroom townhomes at an average price of about $450,000, plus 48 luxury villas. Fifty-four building pads containing 432 units have been graded and finished. There are four buildings each containing eight townhomes which have been already built and one building which is partially completed. The infrastructure for the 38 acres for the townhomes included much of the initial infrastructure of the entire project and includes the signalized highway intersection, a Hawaii County road, county parks; the Aina Le'a water system with initially 14,000 feet of distribution piping, the Aina Le'a wastewater system and the construction of approximately 2 miles of electrical power line installation roads.

15. Although the Debtor has invested about $35 million into infrastructure and construction already, there is remaining a need for an additional $12.5 million for infrastructure plus another $28 million to complete the construction of 192 of the townhouses which would be absorbed relatively quickly given the demand for affordable housing on the Big Island.

16. The completion of development would create hundreds of construction jobs in West Hawaii, and add a significant amount of affordable housing units to the lagging inventory.

8
78017.v8

U.S. Bankruptcy Court - Hawaii  #17-00611  Dkt # 11  Filed 07/05/17  Page 8 of 17

## DELAYS ENCOUNTERED BY PROJECT

17. Since the acquisition in 2009 of Parcels D-1-B-1 and D-1-B-2 (the 21 acres and 38 acres), the Debtor's ability to develop the Waikoloa Property has been stymied by land-use litigation.

18. For approximately five years starting in 2009, the Debtor litigated against the Hawaii State Land Use Commission's decision to revert the zoning reclassification from Urban to Agricultural.

   a. After acquiring its interest in the Parcels D-1-B-1 and D-1-B-2, DW and the Debtor were informed that the Hawaii State Land Use Commission (the "LUC") had ordered Bridge to show cause as to why the Urban Land District designation for the Waikoloa Property should not revert to Agricultural Land District due to Bridge's failure to develop the Waikoloa Project as contemplated by the LUC reclassification in 1989.

   b. Following several hearings and submissions in 2009 and 2010, the LUC issued an order (the "LUC Order") on April 25, 2011 reverting the zoning designation for the Waikoloa Property from Urban to Agricultural land district.

   c. On June 7, 2011, DW commenced a lawsuit captioned *DW Aina Leʻa Development LLC, v. Bridge Aina Leʻa, LLC, et al.*, Civil No.

9

3CC11-1-00112K in the Third Circuit for the State of Hawaii (the "Third Circuit") appealing the LUC's decision to revert the zoning designation for the Waikoloa Property to Agricultural Land District.

d. The Third Circuit denied DW's motion to stay the LUC Order, with the effect of stalling the development during the pendency of the proceeding.

e. On June 15, 2012, the Third Circuit entered an Amended Final Judgment reversing and vacating the LUC Order, which was subsequently appealed by the LUC.

f. On November 25, 2014, the Hawaii Supreme Court affirmed the Amended Final Judgment to the extent it was based on the Third Circuit's conclusion that the LUC failed to comply with HRS § 205-4.

19. The Debtor has also been engaged in litigation brought by a neighboring owner against the Debtor and the County of Hawaii concerning the sufficiency of its environmental impact statement.

a. In 2010, DW's final environmental impact statement ("EIS") for the property was submitted and approved by the County of Hawaii (the "County").

b. In 2011, Mauna Lani Resort Association ("MLRA") commenced an action entitled *Mauna Lani Resort Ass'n v. County Planning Dep't of Hawaii, et al.*, Civ. No. 11-01-005K (the "Mauna Lani Lawsuit") also naming DW and Relco Corp. as defendants, seeking declaratory and injunctive relief. The complaint alleges that the EIS failed to consider the full area that might be developed in the future as a result of a joint development agreement between DW and Bridge.

c. On March 28, 2013, Circuit Court Judge Strance issued an order granting MLRA's motion for summary judgment, and requiring a supplemental environmental impact statement ("SEIS") to be submitted to the County for the Waikoloa Property to consider cumulative impacts of the remaining portion of the 3,000 acres that might be developed in the future by Bridge, and also tolling the development of the Waikoloa Property.

20. Between 2012 and 2015, the Debtor (unable to proceed with construction due to the LUC litigation) reported a net loss of approximately $45.3 million (which included approximately $39 million in development costs).

11

21. The Debtor was in the process of submitting the SEIS as required by Judge Strance's 2013 order. However, due to the lengthy and costly development inactivity, the Debtor currently lacks funds to complete the SEIS.[4]

22. Furthermore, pursuant to a letter dated May 16, 2017, the County of Hawaii Planning Department notified the Debtor and Bridge (which owns approximately 1,900 acres surrounding the Debtor's Waikoloa Property) that the Debtor and Bridge are in violation of Judge Strance's 2013 order, and instructed the Debtor to cease all construction work, pending acceptance of an SEIS by the County.

## SECURED CREDITORS AND PENDING LITIGATION

23. <u>Construction Loan.</u> On or about July 24, 2015, the Debtor and Trust 1 obtained a construction loan and signed a Note and Real Property Mortgage and Financing Statement in favor of Romspen Investment Corporation ("Romspen") in the original principal amount of $12,000,000.00. As of the Petition Date, approximately $11 million is owed to Romspen.

24. The Romspen Note is secured by Parcel D-1-B-2, and is also guaranteed by Robert Wessels. On May 10, 2017, Romspen commenced foreclosure proceedings in the Third Circuit Court for the State of Hawaii (the

---

[4] The County has requested that the Bridge Aina Le'a, LLC, seller's 1,900 acres of surrounding lands be included in a supplemental environmental impact statement (SEIS).

12

78017.v8

U.S. Bankruptcy Court - Hawaii    #17-00611    Dkt # 11    Filed 07/05/17    Page 12 of 17

"Third Circuit") entitled *[Romspen] v. [Debtor]*, Civil No. 3CC17-1-00159K (the "Romspen Foreclosure").

25.  Land Acquisition Loans. To finance its acquisition of the 1,011 acres, the Debtor has borrowed approximately $20 million in the aggregate.

   a. Zhang Loan. In November 2015, the Debtor obtained a one-year $6 million loan from Libo Zhang, a Chinese national, for the acquisition of the 1,011 acres from Bridge. As security, the Debtor granted a mortgage in its interest in Parcel D-1-B-1 (the 23 acres), and DW transferred 33,091 shares in the Debtor to Zhang. On December 30, 2016, Zhang commenced a foreclosure action against the Debtor in the Third Circuit captioned *Libo Zhang v. [Debtor], et al.*, Civil No. 3cc16-1-00423K (the "Zhang Foreclosure"). An interlocutory foreclosure decree has been issued in the Zhang Foreclosure but no action has been taken by Zhang.

   b. Bridge Carryback Loan. In connection with its acquisition of the 1,011 acres in November 2015, the Debtor paid Bridge $10,000,000 and obtained a 3-year $14 million loan from Bridge. As security for the loan, the Debtor granted Bridge a mortgage on the 1,011 acres. On April 3, 2017, Bridge commenced a foreclosure action against the Debtor in the Third Circuit captioned

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 11   Filed  07/05/17   Page 13 of 17

*Bridge Aina Le'a, LLC v. Aina Le'a, Inc. et al.*, Civil No. 3cc17-1-00124k (the "Bridge Foreclosure").

26. In addition to the Bridge Foreclosure, Bridge filed an action in the Third Circuit captioned *Bridge Aina Le'a, LLC v. Old Republic Title & Escrow of Hawaii, Ltd. et al.*, Civil No. 17-1-0584-04 (the "Bridge Escrow Action"), seeking the turnover of $2 million that the Debtor deposited into Old Republic Title & Escrow of Hawaii, Ltd. ("Old Republic"), pursuant to a Road/Intersection Escrow Agreement by and among Old Republic, the Debtor and Bridge entered into on or about November 17, 2015, which required the Debtor to deposit $2 million into escrow to be used to build a road/intersection. In the Bridge Escrow Action, Bridge seeks all of the funds held in escrow.

## PRE-PETITION FINANCING EFFORTS

27. In the year and half before the Petition Date, the Debtor raised significant private equity, including through the sale of about $16 million of common stock in the Debtor in early 2016, to Shanghai Zhongyou Real Estate Group. The Debtor also attempted a public offering of its stock in 2016 which was not successful.

28. In December 31, 2016, the Debtor closed on a $34,000,000 term loan with Whales Point Fund LLP, to be funded by an EB-5 investor program.

14

78017.v8

However, only $1,050,000.00 was funded pre-petition and suspended pending the provision of certain collateral.

29. As set forth in the Declaration of Robert Wessels filed herewith, the Debtor has not been able to secure permanent construction financing nor obtain other short-term financing. The Debtor has had discussions with several potential sources of financing, including local commercial lenders First Hawaiian Bank, Bank of Hawaii, American Savings Bank, and mainland commercial banks, including Bank of America.

30. However, the Debtor remains optimistic that it will soon obtain permanent development financing which would also take out its existing secured lenders. In the interim, the Debtor, through CAG has approached certain shareholders and potential investors to provide emergency bridge financing on the terms set forth herein. In the immediate future, the Debtor requires financing to pay carrying costs, including payroll, to finish the SEIS, and to continue with infrastructure installation.

## **RELIEF REQUESTED AND BASIS**

31. To ensure that the Debtor has funds in the early stages of this case to operate, the Debtor believes it is appropriate to obtain financing on a super-priority basis in accordance with Section 364(c) of the Bankruptcy Code as set forth in the Loan Term Sheet.

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 11   Filed 07/05/17   Page 15 of 17

32. Section 364(c) of the Bankruptcy Code, which governs the ability of a debtor or trustee to obtain secured credit provides as follows:

> (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –
>
> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
>
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

33. The proposed terms provide for all advances to have super-priority in accordance with Section 364(c)(1).

34. The terms offered by the Lender are the best terms that the Debtor has been able to negotiate in his discussions with potential sources of financing. Thus, the Debtor believes that the proposed DIP Financing is in the best interests of the estate and its creditors.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court (a) enter an interim order authorizing the Debtor to borrow funds, substantially on the terms

16
78017.v8

U.S. Bankruptcy Court - Hawaii #17-00611 Dkt # 11 Filed 07/05/17 Page 16 of 17

attached hereto; (b) schedule a final hearing on the Motion; and (c) grant such other relief as the Court deems fair and just.

DATED: Honolulu, Hawaii, July 5, 2017.

/s/ Chuck C. Choi
CHUCK C. CHOI
ALLISON A. ITO
Proposed Attorneys for Debtor and
Debtor-in-Possession