McCORRISTON MILLER MUKAI MacKINNON LLP

FILED
U.S. BANKRUPTCY COURT
DISTRICT OF HAWAII

2017 JUL 10 P 1: 19

MICHAEL B. DOWLING
CLERK OF COURT

D. SCOTT MacKINNON     #1403-0
JORDON J. KIMURA     #9182-0
MARGUERITE S. N. FUJIE     #8599-0
Five Waterfront Plaza, 4th Floor
500 Ala Moana Boulevard
Honolulu, Hawai'i 96813
Telephone No.:     (808) 529-7300
Facsimile No.:     (808) 524-8293
E-mail:     mackinnon@m4law.com; kimura@m4law.com;
       fujie@m4law.com

Attorneys for Creditor
ROMSPEN INVESTMENT CORPORATION

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>AINA LE'A, INC.,<br><br>       Debtor and Debtor-in-<br>possession. | ) CIVIL NO. 17-00611<br>) (Chapter 11)<br>)<br>) ROMSPEN INVESTMENT<br>) CORPORATION'S OBJECTION TO<br>) MOTION FOR ORDER<br>) AUTHORIZING DEBTOR TO<br>) OBTAIN POST-PETITION<br>) FINANCING ON SUPERPRIORITY<br>) BASIS; EXHIBIT A; CERTIFICATE<br>) OF SERVICE<br>)<br>)<br>)<br>)<br>) <u>Hearing</u>:<br>) Date:     July 10, 2017<br>) Time:     2:00 p.m.<br>) Judge:     Hon. Robert J. Faris<br>) |

362327.2

## ROMSPEN INVESTMENT CORPORATION'S OBJECTION TO MOTION FOR ORDER AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING ON SUPERPRIORITY BASIS

Romspen Investment Corporation ("***Creditor Romspen***"), a secured creditor in the above-caption bankruptcy case, by and through its counsel, McCorriston Miller Mukai MacKinnon LLP, objects ("***Objection***") to the Motion for Order Authorizing Debtor to Obtain Post-Petition Financing on Superpriority Basis [Docket # 11] ("***DIP Motion***") filed by Aina Le'a, Inc., debtor and debtor-in-possession ("***Debtor Aina Le'a***"), and in support of the Objection, respectfully states as follows:

## PRELIMINARY STATEMENT

The DIP Motion raises issues that, in order to be fairly addressed, requires further information from Debtor Aina Le'a – particularly given:  (i) the fact that there is no actual commitment, conditional or otherwise, to provide the post-petition financing (the "***DIP financing***"), just a proposed financing scheme; (ii) the request that the proposed post-petition lenders be afforded superpriority treatment; (iii) the proposed use of a non-standard, highly unusual, and unorthodox means of DIP financing; (iii) the scant information provided by Debtor Aina Le'a regarding its expenses; (iv) the failure to include any loan budget to show how the DIP financing will be allocated and used by Debtor Aina Le'a; and (v) the insufficient information and lack of any demonstration as to how the proposed DIP financing

U.S. Bankruptcy Court - Hawaii  #17-00611  Dkt # 25  Filed 07/10/17  Page 2 of 21

will support or address the extremely serious circumstances that currently affect the bankrupt estate, including without limitation, the zoning and entitlement status of Debtor Aina Leʻa's primary asset, real property located in Waikoloa, South Kohala Island, County and State of Hawaiʻi, identified by Tax Map Key No. (3) 6-8-001:036 (the "***Waikoloa Property***").

More time and information is needed to fully consider what potential effect such DIP financing could have on the bankrupt estate and the other creditors' claims.

## BACKGROUND

1.     Debtor Aina Leʻa is indebted to Creditor Romspen.[1]  This indebtedness arises from a Loan Agreement ("***Loan Agreement***"), Promissory Note ("***Note***"), and Real Property Mortgage and Financing Statement ("***Mortgage***"), all dated July 24, 2015, which Debtor Aina Leʻa executed in favor of Creditor Romspen for the principal amount of $12,000,000.00.

2.     The Note and Mortgage are secured by the Waikoloa Property upon which Creditor Romspen was to develop and construct the Villages at Aina Leʻa – Phase I Condominium Project in accordance with the approved plans and specifications ("***Project***") with the use of the loan provided by Creditor Romspen.

---

[1]  Although both Debtor Aina Leʻa and Emerald Hawaii Services, Inc., as Successor Trustee of the Aina Leʻa Land Trust No. 1, are borrowers and indebted to Creditor Romspen under the Note and Mortgage, for the purposes of this Objection, we refer only to Debtor Aina Leʻa.

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 25   Filed 07/10/17   Page 3 of 21

3. Creditor Romspen is the current holder of the Note and Mortgage and Debtor Aina Le'a has been in default of its obligations thereunder since, at least, February 16, 2017, thereby prompting Creditor Romspen to file a foreclosure action in the Circuit Court of the Third Circuit, State of Hawai'i (the "*Foreclosure Action*").

4. The Foreclosure Action is currently pending before the Honorable Melvin H. Fujino, and a hearing on Creditor Romspen's Motion for Appointment of a Receiver ("*Motion for Appointment of Receiver*") is scheduled for August 2, 2017.

5. Creditor Romspen filed its Motion for Appointment of Receiver for three (3) primary reasons: (1) Debtor Aina Le'a contractually agreed to allow Creditor Romspen to take possession of the Waikoloa Property and continue development in the event of Debtor Aina Le'a's default; (2) Creditor Romspen is entitled to assurances that the Waikoloa Property will not be further encumbered with additional debt without its knowledge and approval; and (3) the supervision and control by a receiver is required to ensure that (a) all requirements, conditions, and deadlines related to the zoning and other entitlements for the Waikoloa Property, and for the final subdivision map approval by the County of Hawai'i are timely satisfied, and (b) the zoning and entitlements for the Waikoloa Property are

preserved, protected, and maintained in good order and condition until it can be sold in foreclosure.

6.   Before Creditor Romspen's Motion for Appointment of Receiver could be heard in the Foreclosure Action, Debtor Aina Le'a filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 22, 2017. It thereafter filed a Notice of Automatic Stay in the Foreclosure Action on June 27, 2017.

7.   Debtor Aina Le'a continues to operate its business as a debtor-in-possession and now seeks this Court's approval to proceed with obtaining post-petition financing on a superpriority basis from its existing shareholders and others.

## OBJECTION

8.   Debtor Aina Le'a has not presented to the Court a proposed loan commitment from any recognized or reputable DIP lender for the DIP financing proposed here, but rather a proposed financing scheme to hopefully raise $5.0 million over some unspecified time period from up to 200 separate "lenders". There is nothing common, customary or standard about this proposal.

9.   Debtor Aina Le'a has made no showing that the DIP financing it proposes will serve the best interests of the secured and unsecured creditors of

Debtor Aina Leʻa, either in the short or long term or to maintain, preserve, or enhance the value of the bankrupt estate.

10.     In particular, Debtor Aina Leʻa failed to:  (i) provide information as to its expenses, including a budget to show how the DIP financing will be allocated and used so that it can be reasonably evaluated; (ii) explain how the DIP financing will advance a successful reorganization plan by Debtor Aina Leʻa without significant adverse impact on Creditor Romspen; and (iii) provide this Court with adequate information regarding the current and future circumstances that affect its primary asset - the Waikoloa Property.

11.     Debtor Aina Leʻa generally states that it requires up to $5,000,000 in DIP financing to pay carrying costs - specifically, payroll, completion of a Supplemental Environmental Impact Statement ("**SEIS**"), and infrastructure installation required under its existing entitlements for the Waikoloa Property. Notwithstanding the fact that Debtor Aina Leʻa failed to include information regarding its expenses, given Creditor Romspen's understanding that the currently estimated cost to complete the SEIS and installation of the required infrastructure is in the range of $12,500,000 – Debtor Aina Leʻa provides no explanation as to how the $5,000,000 in "emergency bridge financing" will be spent and used to further those objectives, or the time period in which such work needs to be

U.S. Bankruptcy Court - Hawaii  #17-00611  Dkt # 25  Filed 07/10/17  Page 6 of 21

accomplished. The timing of access to any such DIP financing is unknown and may never occur. *See* DIP Motion at 8 and 15.

12. In addition, it is difficult to accept Debtor Aina Le'a's characterizing of its situation and current financing needs, especially where it neglected or chose not to include information regarding the major unresolved issues related to its zoning and other entitlements required for the development of the Project or its long history of failed promises of action with the County of Hawai'i, including without limitation, the recent demand (dated May 16, 2017) from the County of Hawai'i's Planning Department ("***Planning Department***") that Debtor Aina Le'a cease construction on the Project and the Planning Department's asserted intention to initiate the appropriate steps to revert the zoning for the Waikoloa Property to its prior non-urban designation.

13. By letter dated May 16, 2017, the Planning Department notified Debtor Aina Le'a that it is in violation of the Circuit Court of the State of Hawai'i, Third Circuit's Order, dated March 28, 2013 (Civ. No. 11-01-005K), because "[i]t has been four years since the Court Order was issued and a [SEIS] for this property has not yet been initiated." *See* **Exhibit A** (Letter from Michael Yee, Planning Director, dated May 16, 2017). In that letter, the Planning Department directs Debtor Aina Le'a to "**immediately cease all work**" until a SEIS has been accepted by the Planning Department. (Emphases in original).

U.S. Bankruptcy Court - Hawaii  #17-00611  Dkt # 25  Filed 07/10/17  Page 7 of 21

14.     In that same letter, the Planning Department also addressed other unresolved issues related to the entitlements, including: (i) Debtor Aina Le'a's failure to file annual progress reports ("*APR*") and filing of APRs containing misleading and inaccurate information; and (ii) noncompliance with various ordinance conditions. As a result of Debtor Aina Le'a's failure to complete an SEIS, failure to file acceptable APRs, and noncompliance with ordinance conditions, the entitlements are at risk and the Planning Department has stated its intent to initiate steps to downzone the Waikoloa Property. Should this occur, the value of Debtor Aina Le'a's primary asset will be significantly reduced, driving downward the value of the Waikoloa Property, which is the primary security for the $12.0 million loan made by Creditor Romspen.

15.     Debtor Aina Le'a's DIP Motion does not provide adequate information as to how the proposed DIP financing will preserve the bankrupt estate, given the current serious situation with the status and continuing validity of the entitlement necessary for the development of the Waikoloa Property.

16.     Although Debtor Aina Le'a "remains optimistic" that it "will soon obtain permanent development financing," (DIP Motion at 15), it has failed to make any showing to warrant such optimism. To the contrary, Debtor Aina Le'a has for years been unable to obtain sufficient financing to comply with the ordinance conditions imposed by the Planning Department, much less to complete

U.S. Bankruptcy Court - Hawaii  #17-00611  Dkt # 25  Filed  07/10/17  Page 8 of 21

the Project, as evidenced by its over four year-long lag in obtaining an SEIS. *See* DIP Motion at 11 (discussing Circuit Court Judge Elizabeth Strance's decision in March of 2013, in which she required Debtor Aina Le'a to obtain a SEIS).

17. The DIP Motion is not supported by any evidence of or even the assertion that the proposed DIP financing will benefit the estate and its creditors and lead to a successful reorganization.

18. Creditor Romspen and the other secured and unsecured creditors do not have sufficient information to evaluate either the likelihood of success in obtaining the DIP financing or about the true effect of the DIP financing on Debtor Aina Le'a's business and development operations and whether Debtor Aina Le'a is even able to survive and reorganize under all current and pertinent circumstances. These are matters that must be addressed and determined prior to allowing Debtor Aina Le'a to heap significant additional secured debt on an asset for which there is such little reliable operating and financial information.

19. If this Court is inclined to grant interim approval of the DIP Motion, it should be granted for only a brief period (no more than one week) solely to allow the funding on a secured basis of post-petition Project expenses, and reasonable attorneys' fees and expenses (subject, of course, to approval through the filing of fee applications in the case), incurred on and after the date of entry of such interim

order at a substantially lower, market interest rate than stated in the DIP financing proposal.

20.     Such short term interim relief should be extremely limited until this Court is able to make appropriate determinations regarding the effect on creditors, the viability of the Project, and the availability of other financing on less expensive and more favorable terms.  During such brief interim period, no superpriority status should be granted to post-petition lenders because no such need has yet been demonstrated.

## CONCLUSION

Based on the foregoing, Creditor Romspen respectfully requests that this Court deny Debtor Aina Leʻa's DIP Motion to Authorize Post-Petition Financing. Alternatively, should this Court be inclined to grant interim relief, such relief should be on a highly limited basis both in scope and duration.

DATED:  Honolulu, Hawaiʻi, July 10, 2017.

D. SCOTT MacKINNON
JORDON J. KIMURA
MARGUERITE S. N. FUJIE

Attorneys for Creditor
ROMSPEN INVESTMENT
CORPORATION

U.S. Bankruptcy Court - Hawaii  #17-00611   Dkt # 25   Filed 07/10/17   Page 10 of 21

Harry Kim
*Mayor*

Michael Yee
*Director*

Daryn Arai
*Deputy Director*



West Hawaiʻi Office
74-5044 Ane Keohokalole Hwy
Kailua-Kona, Hawaiʻi 96740
Phone (808) 323-4770
Fax (808) 327-3563

# County of Hawaiʻi
## PLANNING DEPARTMENT

East Hawaiʻi Office
101 Pauahi Street, Suite 3
Hilo, Hawaiʻi 96720
Phone (808) 961-8288
Fax (808) 961-8742

**CERTIFIED MAIL**

May 16, 2017

Mr. Alan M. Okamoto          **7011 1570 0001 5776 7401**
Nakamoto, Okamoto & Yamamoto
Attorneys at Law (Representing ʻĀina Leʻa, Inc. and ʻĀina Leʻa, LLC)
187 Kapiolani Street
Hilo, HI  96720-2687

Mr. John Baldwin, Manager     **7011 1570 0001 5776 7425**
Bridge ʻĀina Leʻa, LLC
PMB 29 Box 10001
Saipan, MP  96950

Dear Mr. Baldwin and Mr. Okamoto:

**Change of Zone Ordinance No. 96 153 (REZ 734)**
**Applicant:  Bridge ʻĀina Leʻa, LLC and ʻĀina Leʻa, LLC et al and ʻĀina Leʻa Inc.**
**                   (formerly Puakō Hawaiʻi Properties)**
**Subject:  Order to Toll (Cease) Work on the Subject Properties Related to**
**                Civil No. 11-01-005K and Other Unresolved Issues Related to Entitlements and**
**                Development of the Subject Properties**
**Tax Map Keys: (3) 6-8-001:025, 036 through 040, and 069**

The purpose of this letter is to inform you that the Planning Department (Department) has
determined that the Applicant is in violation of the enclosed Third Circuit Court's Order dated
March 28, 2013 (Civil No. 11-01-005K). The 2016 annual progress report (APR) submitted by
Mr. Robert Wessels, Chairman of ʻĀina Leʻa, LLC and ʻĀina Leʻa Inc. (ʻĀina Leʻa) on January
18, 2017 and a site inspection conducted by Department staff on August 5, 2016 (photos
enclosed) confirm that ʻĀina Leʻa is conducting work on the subject properties, which violates
the Court's Order.  The Planning Department requires that the Applicant **immediately cease all**
**work,** including but not limited to ground disturbance such as trenching and grading; grubbing
and stockpiling; and construction on the subject properties, comprising approximately 3,000 acre
property (Property).  Work shall be prohibited on the Property until a Final Supplemental
Environmental Impact Statement (SEIS) has been accepted by the Department.

**EXHIBIT A**

Mr. Alan M. Okamoto
Nakamoto, Okamoto & Yamamoto
Mr. John Baldwin, Manager
Bridge ʻĀina Leʻa, LLC
Page 2
May 16, 2017

In support of the preceding, we have the following to offer. The Court ordered that all development in the project is tolled. The Court also remanded the matter back to the Department to determine if the 2010 Final Environmental Impact Statement (FEIS) adequately considered whether the project proposed by DW ʻĀina Leʻa Development LLC (predecessor to ʻĀina Leʻa) was a segment of a larger project and whether there were cumulative impacts which were not fully analyzed.

Two years after the Court Order, the EIS consultant for ʻĀina Leʻa, James M. Leonard, requested to meet with Department staff to discuss whether a Supplemental EIS would be needed for the project. Department staff met with Mr. Leonard on April 14, 2015 and informed him that a Supplemental EIS would need to be completed as the December 11, 2009 Joint Development Agreement (JDA) between Bridge ʻĀina Leʻa, LLC (Bridge) and ʻĀina Leʻa, Inc. indicated infrastructure would be developed to support build-out of the entire 3,000 acre Property.

It should be noted that although the JDA was terminated on November 17, 2015, a new agreement titled the *Agreement Regarding Easements and Utilities*, executed on November 17, 2015 between Bridge and ʻĀina Leʻa continues to show that infrastructure will be sized and constructed to serve the entire Property. Thus, Mr. Leonard was informed that the SEIS project scope must include the entire 3,000 acres and must consider the cumulative impacts of developing the entire 3,000 acres.

In December 2015, Mr. Leonard submitted to the Department a draft preparation notice for the SEIS and Mr. Alan M. Okamoto (Attorney for ʻĀina Leʻa, Inc.) submitted an APR, as required by Condition Z of Change of Zone Ordinance No. 96-153. There were substantial discrepancies between the information contained in the SEIS preparation notice and APR, and therefore by email dated February 2, 2016, the Department provided Mr. Leonard a list of revisions that were needed before the Department could publish the SEIS preparation notice with the State Office of Environmental Quality. Department staff recently confirmed with Mr. Leonard that he is no longer preparing a Supplemental EIS for the property. It has been four years since the Court Order was issued and a Supplemental EIS for this property has not yet been initiated.

After the Court Order was issued in 2013, the Department received two inquiries requesting to know whether the County would honor building, plumbing and electrical permits that had previously been issued to construct the townhouse units. In letters dated May 23, 2014 to Robert J. Wessels and March 25, 2015 to Private Capital Group, the Department acknowledged the appropriate permits for twelve townhouse buildings known as Lulana Gardens were legally

Mr. Alan M. Okamoto
Nakamoto, Okamoto & Yamamoto
Mr. John Baldwin, Manager
Bridge ʻĀina Leʻa, LLC
Page 3
May 16, 2017

issued and consistent with land use approvals at the time they were issued. The Department indicated the County would continue to honor these permits provided that vesting of those approvals be consistent with prevailing County and State requirements. The Department clarified that this determination was conditioned on the facts as the Department knew them, and that no commitment or guarantee with regard to additional permitting or approval requirements would be made. The Department also indicated that ʻĀina Leʻa understood and acknowledged that they were proceeding with infrastructure and related occupancy improvement requirements over and across the subject property at their own risk and free will. **These letters were written with the understanding that an SEIS was being prepared by ʻĀina Leʻa to comply with the Court Order.**

Over a year has passed since the SEIS preparation notice revisions were provided to Mr. Leonard and there is no indication that ʻĀina Leʻa intends to complete the SEIS before proceeding with construction of the project, which is in clear violation of the Court Order. In fact the January 18, 2016 APR submitted by Mr. Wessels made no mention whatsoever of when the SEIS would be started or finished. It states, "Supplemental studies of flora and fauna, archaeological, cultural, and traffic were updated in 2016, which determined there were no significant variance to the Final Environmental Impact Statement for the project approved by the County of Hawaiʻi and published in 2010." To date, none of these studies have been provided to the Planning Department. The Court Order did not allow ʻĀina Leʻa to determine whether an SEIS needed to be completed, but rather remanded the matter to the Department to make that determination. It continues to be the position of the Department that ʻĀina Leʻa must prepare a Supplemental EIS before proceeding with work on the property.

### Lack of Compliance with Ordinance Conditions

The secondary purpose of this letter is to clearly communicate the Planning Department's position on several other unresolved issues related to entitlements and development of the Property. The Department partly relies on annual progress reports (APR) submitted by the applicant to determine the status of a project and compliance with ordinance or permit approvals. It has been difficult for the Department to understand the status of the project and condition compliance because Bridge has not provided an APR and the information that has been provided by Aina Lea is often misleading or inaccurate. Like the SEIS Preparation Notice and 2015 APR, the 2016 APR again contains misleading and inaccurate information that has made it difficult for the Department to accurately determine the status of the project and condition compliance. The following are two specific examples of this:

Mr. Alan M. Okamoto
Nakamoto, Okamoto & Yamamoto
Mr. John Baldwin, Manager
Bridge ʻĀina Leʻa, LLC
Page 4
May 16, 2017

1.  On page 2, in item F, the report states "The plans for the installation of the signalized intersection on the Queen Kaahumanu Highway have been approved by the Department of Transportation (DOT) and are waiting for the County to approve the electronics for the intersection". This statement is inaccurate. According to the DOT, intersection plans have not yet been approved.

2.  On page 3, item 3 for Parcel D-1-B-1 states, "The site was planned and a Planned Unit Development prepared and filed." This statement is misleading since the P.U.D. application was approved in June 2012 but then the approval was rescinded in January 2014 due to the Court Order.

Based on the information provided in the 2015 and 2016 APR's, site inspection and communication with other agencies, it is the Department's position that both Bridge and ʻĀina Leʻa have not complied with the conditions of Change of Zone Ordinance No. 96-153. The ordinance conditions that are currently out of compliance are specifically addressed below.

Condition B:
We have yet to receive a response to our February 2, 2016 letter regarding compliance with Condition B related to water supply.

Condition B states in part, *"Notwithstanding the provisions of Condition R, final inspection of the residential or commercial structures shall not be issued until the approved water source to the subject property and its transmission and distribution system for such source to the subject property has been constructed."* The "approved water source" referred to in this condition is from the County Department of Water Supply's Lālāmilo System through the terms of the water allocation arrangement described in the 2006 Water Development Agreement between Bridge and the Department of Water Supply (DWS). Additionally, when the zoning ordinance was approved in 1992 and amended in 1996, the proposed potable water source for the development was from the ʻŌuli Wells and Lālāmilo System rather than the private Waikoloa Water Company. The provision of private water from WWC for any portion of the 3,000 acre rezone area was never presented or approved by the County Council. Additionally, the 2010 FEIS which was remanded to the Planning Department only evaluated the impacts of temporarily using potable water from WWC for the affordable housing project.

Mr. Alan M. Okamoto
Nakamoto, Okamoto & Yamamoto
Mr. John Baldwin, Manager
Bridge ʻĀina Leʻa, LLC
Page 5
May 16, 2017

The *Agreement Regarding Easements and Utilities* executed on November 17, 2015 by Bridge and ʻĀina Leʻa indicates that ʻĀina Leʻa will use its best efforts to obtain an allocation of potable water from Waikoloa Water Co. (WWC) for parcels 38 and 39 (1,011 acres) based on the maximum number of residential units and dwellings permitted by the zoning of these properties, and for parcel 25 (27 acres) sufficient to support 500,000 square-feet of commercial gross leasable area.

Mr. Wessels 2016 APR indicates that potable water for Phase 1 of the project, including the affordable housing development, will be provided by WWC on a permanent basis upon approval by the Public Utilities Commission and that ʻĀina Leʻa is negotiating with WWC and other land owners in the area to jointly develop the ʻŌuli Well System to provide potable water to the remaining parcels. We reiterate that use of potable water from WWC is beyond the scope of the ordinance because it was never considered or approved by the County Council and is therefore not supported by the Department until the ordinance is amended by the County Council.

Condition C:
In their March 2, 2016 letter to the Planning Department, ʻĀina Leʻa requested reconsideration of the Department's conclusion that Condition C of Ordinance No. 96-153 was not satisfied by the September 21, 2009 deadline.

After further research into the matter, the Department has come to the same conclusion as stated in our letter dated February 2, 2016. We disagree with Mr. Okamoto's assumption that "Given the use of 'residential' in Condition C, the requirement focused on the RM zoned land. The requirement focused on those lands as a means to show meaningful development of the LUC Urban classified lands." It was not until 2008 that the LUC compelled the developer to show 'meaningful development' through its order to show cause. When Condition C was amended to its current form by the Hawaiʻi County Council in 1996, the LUC's Order was not a consideration. In fact, at the time the County Council was considering amending Condition C, the master plan for the 3,000-acre rezoned area called for Phase I development to include both Residential and Agricultural (RA) and Multiple Family Residential (RM) development. Thus, although not explicitly stated, it is the Department's determination that the term "residential subdivision" applied to the RA-zoned lands. This is especially the case when you consider that subdivision is not required to develop residential units on RM-zoned land. Whereas, subdivision is required to construct more than one residence on an RA-zoned lot. The bulk-lot subdivision

Mr. Alan M. Okamoto
Nakamoto, Okamoto & Yamamoto
Mr. John Baldwin, Manager
Bridge ʻĀina Leʻa, LLC
Page 6
May 16, 2017

(SUB-09-000860) that Mr. Okamoto claims fulfilled the requirement of Condition C was a subdivision of convenience on the part of the developer to allow financing of the affordable housing project on a lot separate from the rest of the lands. This is verified by Mr. Okamoto's statement "Those units are to be sold in fee simple, so the only way to do that is to create them as condominium units and not as subdivided lots as such".

Sidney Fuke's March 9, 2009 letter transmitting the subdivision application to the Planning Department requested that the access and utility improvements be waived as allowed under Chapter 23-7 (Applicability to consolidation or resubdivision action) of the Subdivision Code. Chapter 23-7 does not provide relief or allow deferral by the applicant of performing the conditions of an ordinance. Instead, County Council approval is required to provide relief or allow deferral of ordinance conditions. The Planning Department did not provide confirmation that the bulk-lot subdivision would satisfy Condition C, as requested in Mr. Fuke's letter dated March 3, 2009, because it did not have the authority to do so. The Planning Department's letter dated March 9, 2009 to Mr. Fuke confirmed that submission of the Master Plan fulfilled the portion of Condition C related to submission of a Master Plan. The letter did not confirm that the bulk-lot subdivision satisfied the 'residential subdivision' requirement of Condition C.

Final Subdivision Approval was granted for SUB 09-000860 pursuant to Section 23-13 (Large scale developments) of the Subdivision Code, which like Chapter 23-7, makes exceptions to the requirements and standards of the subdivision code, but does not provide relief or allow deferral of implementing ordinance conditions.

Condition A of Ordinance No. 96-153 states it is the responsibility of the applicant, successors or assigns to comply with the conditions of the ordinance. At any point, the applicant could have asked the County Council for clarification on the interpretation of an ordinance condition.

Conditions F:
This condition requires a drainage system meeting with the approval of the Department of Public Works (DPW) be installed. Mr. Wessels' 2016 APR indicates permits have been secured from the State Department of Health for injection wells but does not address what drainage system will be constructed for the project and whether or not approval has been granted by DPW for the drainage system.

Mr. Alan M. Okamoto
Nakamoto, Okamoto & Yamamoto
Mr. John Baldwin, Manager
Bridge ʻĀina Leʻa, LLC
Page 7
May 16, 2017

Condition G:
This condition has not been complied with in a timely manner because a park plan created by the applicant was due prior to receipt of final subdivision approval or final plan approval of any subdivision or residential units within the subject property. To date the Department has not received or approved the required park plan.

Condition I:
This condition requires that the preservation measures in the approved burial treatment plan for Site 15033 be implemented in conjunction with any land alterations in the subject property. Site 15033 is on lands owned by Bridge. We cannot verify whether the applicant is complying with this condition because Bridge has not provided an annual progress report to the Department.

Condition K:
This condition has not been complied with in a timely manner because prior to final subdivision approval for any portion of the subject property, the applicant was required to secure concurrence from the Office of Housing and Community Development (OHCD) of the applicant's affordable housing requirements for the residential development of the property. To date the Department has not received indication from the applicant or OHCD that this condition has been met.

Condition O:
This condition required the applicant construct full channelized intersection improvements at the property's access at Queen Kaahumanu Highway prior to final subdivision approval of any increment gaining access from the respective intersection. The affordable housing development will gain access from the southern intersection which has not yet been constructed per the condition. Mr. Wessels indicated in the 2016 APR that the intersection plans have been revised to address State Department of Transportation (DOT) comments and have been delivered to the County for review, and that ʻĀina Leʻa is still waiting for the county's response and approval. The Department recently verified with DPW that the intersection plans have not been submitted to the County for review and are still under review by the DOT. According to the DOT, the applicant has not responded to their letter dated July 13, 2016 addressed to Christian Renz of ʻĀina Leʻa containing required plan revisions.

Condition Q:
This condition has not been complied with in a timely manner because the applicant has not made a past due fair share payment. This condition required that the applicant pay a fair share

Mr. Alan M. Okamoto
Nakamoto, Okamoto & Yamamoto
Mr. John Baldwin, Manager
Bridge ʻĀina Leʻa, LLC
Page 8
May 16, 2017

contribution prior to receipt of final plan approval for the 432 townhouse units. In a letter dated May 15, 2015 the Department informed Mr. Wessels that the fair share payment is past due. To date the Department has not received this payment. In Mr. Wessels 2016 APR, he indicates a significant amount of funds have already been provided with the installation of roads and an escrow deposit of $2 million with DOT for the intersection.

The condition indicates that the Planning Director may approve credits to the fair share fee requirement in lieu of paying the fee, if the applicant provides land, improvements or facilities related to parks, fire, police, solid waste and roads. However, according to our records to date, the applicant has not requested and the Planning Director has not approved any credits in lieu of the fair share payment.

Condition R:
This condition allows final subdivision and/or plan approval to be issued by the Department prior to the actual completion of required infrastructural improvements provided the applicant enter into an agreement with the Planning Director, DPW and DWS and provide a surety, bond or other security deemed acceptable to the Planning Director and Corporation Counsel. Department records indicate the applicant has not entered into any agreements or provided security for the infrastructural improvements to date.

Condition S:
The applicant has not complied with this condition in a timely manner. This condition required the applicant provide a pro rata share for school facilities. The pro rata share determination and implementation were supposed to be approved by the Planning Director, in consultation with the Department of Education, in conjunction with final subdivision approval or final plan approval of any residential area within the subject property. This condition has not been satisfied to date.

Condition T:
This condition requires that the applicant disclose to all potential buyers of lots or units within the subject property that internal infrastructure and community facilities shall be developed and maintained privately and that the County is not obligated to construct any public facilities within the project area. Property tax records indicate Parcel 36 is owned by ʻĀina Leʻa LLC and several other individuals. Please provide evidence that the applicant has complied with this condition by disclosing this condition to these individuals.

Mr. Alan M. Okamoto
Nakamoto, Okamoto & Yamamoto
Mr. John Baldwin, Manager
Bridge 'Āina Le'a, LLC
Page 9
May 16, 2017

Condition V:
Please provide a report explaining how the applicant is complying with the State Land Use Commission's Decision and Order.

Based on the foregoing and pursuant to Condition AA, the Director will shortly initiate rezoning of the area to its original or more appropriate designation due to the applicant's noncompliance with the conditions of Ordinance No. 96-153. You will be notified of the date, time and location of the Planning Commission and County Council meetings for this matter once the agendas have been finalized.

If you have any questions, please feel free to contact Daryn Arai at (808) 961-8142 or Maija Jackson at (808) 961-8159.

Sincerely,

MICHAEL YEE
Planning Director

MJJ:mad
P:\wpwin60\Maija\Letters\Annual Reports\LAinaLea-REZ734-Court Order and Ord Noncompliance.doc

Enc:   Civil No. 11-01-005K Order
       Photos from August 5, 2016 Site Inspection

cc:    Kona Planning Office
       Amy Self, Deputy Corporation Counsel
       REZ 734, LUC 692, SUB 11-001070
       State Land Use Commission
       State Office of Planning
       State Department of Transportation
       State Department of Health
       HELCO
       Department of Water Supply
       Departmental of Public Works
       Hawai'i Water Service Company
       Cades Schutte

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF HAWAII

In re

AINA LE'A, INC.,

       Debtor and Debtor-in-
possession.

)
)
)
)
)
)
)
)
)
)
)

CIVIL NO. 17-00611
(Chapter 11)

CERTIFICATE OF SERVICE

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2017, a true and accurate copy of the

foregoing document was duly served by hand delivery upon the following parties:

      CHUCK C. CHOI, ESQ.
cchoi@hibklaw.com
ALLISON A. ITO, ESQ.
aito@hibklaw.com
Choi & Ito
745 Fort Street Mall, Suite 1900
Honolulu, Hawai'i 96813

      Attorneys for Debtor
AINA LE'A, INC.

      Office of the U.S. Trustee
ustpregion15.hi.ecf@usdoj.gov
United States Bankruptcy Court
1132 Bishop Street, Suite 602
Honolulu, Hawai'i 96813

362327.2

CUYLER E. SHAW, ESQ.
cshaw@awlaw.com
FRANCIS P. HOGAN, ESQ.
fhogan@awlaw.com
SARAH M. SIMMONS, ESQ.
ssimmons@awlaw.com
Ashford & Wriston
P.O. Box 131
Honolulu, Hawaii 96810

Attorneys for Creditor
LIBO ZHANG

BRUCE D. VOSS, ESQ.
bvoss@legalhawaii.com
MATTHEW C. SHANNON, ESQ.
mshannon@legalhawaii.com
JOHN D. FERRY III
jferry@legalhawaii.com
Bays Lung Rose & Holma
Topa Financial Center
700 Bishop Street, Suite 900
Honolulu, Hawai'i 96813

Attorneys for Creditor
BRIDGE AINA LE'A, LLC

DATED: Honolulu, Hawai'i, July 10, 2017.


_____
D. SCOTT MacKINNON
JORDON J. KIMURA
MARGUERITE S. N. FUJIE

Attorneys for Creditor
ROMSPEN INVESTMENT
CORPORATION

U.S. Bankruptcy Court - Hawaii  #17-00611  Dkt # 25  Filed 07/10/17  Page 21 of 21