

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF HAWAII

In re

AINA LE'A, INC.,

     Debtor and
     Debtor-in-possession.

Bankruptcy Case No. 17-00611
(Chapter 11)

Confirmation Hearing:

Date: March 13, 2019
Time: 9:30 a.m.
Judge: Hon. Robert J. Faris

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
CONFIRMING THE FIRST AMENDED CHAPTER 11 PLAN OF
REORGANIZATION OF AINA LE'A, INC., DATED APRIL 29, 2019;
EXHIBITS A-C**

The Confirmation Hearing of the *First Amended Chapter 11 Plan of Reorganization of Aina Le'a, Inc. dated February 20, 2019*, commenced on March 13, 2019, at 9:30 a.m., before the Honorable Robert J. Faris, United States Bankruptcy Judge for the District of Hawaii. Appearances are noted in the record.

On April 29, 2019, the Debtor filed its "First Amended Chapter 11 Plan of Reorganization of Aina Le'a, Inc., dated April 29, 2019" (the "<u>Final Confirmed Plan</u>" or the "<u>Plan</u>") (dkt. #464), to incorporate various stipulations previously filed

with the Bankruptcy Court reflecting agreements reached between the Debtor and Holders of Allowed Claims in Classes 2A, 2B, and 2C regarding the treatment of such Claims under the Plan. *See* dkt. ##417, 454, 461. Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Final Confirmed Plan. A true and correct copy of the Final Confirmed Plan is attached hereto as **Exhibit A**.

The Bankruptcy Court has considered the entire record in the Bankruptcy Case, including without limitation, the pleadings filed and evidence admitted in support of Confirmation, the arguments and representations of counsel, and the filed Declarations of Robert J. Wessels, Gerald Saxton, Hiram Rivera, John C. Vaughan, Richard B. Gaudet, Raymond J. Kirchner, Kelly Valenzuela, Dennis M. Lombardi, Esq., Ted N. Pettit, Esq. and Allison Ito, Esq., filed in support of Confirmation (including all attachments thereto, all of which were accepted into evidence).

The findings and conclusions set forth herein, together with the record of the Confirmation Hearing, constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. The orders entered

herein constitute the Bankruptcy Court's judgment pursuant to Bankruptcy Rule 7054, made applicable to this proceeding by Bankruptcy Rule 9014.

## FINDINGS OF FACT

### A.     Chapter 11 Petition.

1.     On June 22, 2017, the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Hawaii, Bankruptcy Case No. 17-00611. The Debtor was authorized to continue to operate its business and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtor was on the Petition Date and continues to be a "person" eligible for relief under sections 101(41) and 109 of the Bankruptcy Code, and the Debtor is the proper proponent of the Plan under section 1121(a) of the Bankruptcy Code.

### B.     Appointment of the Committee.

2.     On July 17, 2017, the U.S. Trustee appointed the Committee in this Bankruptcy Case, consisting of TrueStyle Pacific Builders L.L.C., Macias Gini & O'Connell, LLP and Clifford & Company, Inc. *See* dkt. #39. The U.S. Trustee expanded the Committee on July 20, 2017 to add E.M. Rivera & Sons, Inc. and Engineering Partners, Inc. *See* dkt. #39.

3

## C. **Judicial Notice.**

3.       This Bankruptcy Court takes judicial notice of the docket of the Bankruptcy Case maintained by the Clerk of this Bankruptcy Court or its duly appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at, the hearings held before this Bankruptcy Court during the pendency of the Bankruptcy Case.

## D. **Adequacy of Solicitation Materials; Notice and Transmittal of Solicitation Materials; Good Faith Solicitation.**

4.       On January 2, 2019, the Bankruptcy Court entered the Solicitation Procedures Order that, among other things: (i) approved the Disclosure Statement pursuant to Bankruptcy Code section 1125 and Bankruptcy Rule 3017; (ii) established March 13, 2019 as the date for the Confirmation Hearing; (iii) approved the form and method of notice of the Confirmation Hearing (the "Confirmation Hearing Notice"); (iv) established procedures for soliciting and tabulating votes with respect to the Plan; and (v) established procedures governing the Confirmation Hearing.

5.       In accordance with the Solicitation Order, the following items were transmitted to Creditors and other parties-in-interest by the Debtor: (i) the Confirmation Hearing Notice, (ii) the Disclosure Statement, and (iii) with respect to

4

those Creditors in Classes entitled to vote under the Plan and the Solicitation Order, the applicable Ballot (collectively, the "Solicitation Materials"). All said documents were transmitted by the Debtor to the appropriate parties on or before January 7, 2019. *See* dkt. ##342-347.

6. The Final Confirmed Plan is dated and identifies the Debtor as the proponent, thereby satisfying Bankruptcy Rule 3016(a). The Disclosure Statement satisfied the requirements of Bankruptcy Rule 3016(b).

7. The transmittal and service of the Solicitation Materials complied with the Solicitation Procedures Order, were appropriate and satisfactory based upon the circumstances of the Bankruptcy Case, were conducted in good faith, and were in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable rules, laws, and regulations. Because such transmittal and service were adequate and sufficient, no other or further notice is necessary or shall be required.

8. Based on the record before the Bankruptcy Court in the Bankruptcy Case, the Debtor and all entities acting on its behalf, including officers, directors, managers, principals, shareholders, employees, agents, financial advisors, attorneys, accountants, consultants, representatives, and other professionals, each in their capacity as such, together with their respective successors and assigns, have acted in

"good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules in connection with all of their respective activities relating to their participation in the Bankruptcy Case, and the activities described in section 1125 of the Bankruptcy Code and therefore are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**E.      Voting Report.**

9.      On February 20, 2019, the Debtor filed the *Declaration of Allison I. Ito Regarding Ballot Tabulation of Ballots in Support of Confirmation of First Amended Chapter 11 Plan of Reorganization of Aina Leʻa, Inc., Dated February 20, 2019*. *See* dkt. #380. On March 12, 2019, the Debtor filed the *Supplemental Declaration of Allison I. Ito Regarding Ballot Tabulation of Ballots in Support of Confirmation of First Amended Chapter 11 Plan of Reorganization of Aina Leʻa, Inc., Dated February 20, 2019*. *See* dkt. #443 (collectively the "Voting Report").

10.      Votes to accept and reject the Plan were solicited from creditors holding Claims in Classes 2A, 2B, 2C, 3A and 3B. Such votes were solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Order, and past and present practice before the Bankruptcy Court.

6

11.     As set forth in the Voting Report, Classes 2C and 3A voted to accept the Plan, pursuant to Section 1126(c) of the Bankruptcy Code. No votes were received for Class 3B. Pursuant to the Romspen Stipulation and the Bridge Stipulation, defined below, Classes 2A and 2B subsequently changed their vote to accept the Plan

12.     The Voting Report, when coupled with the subsequent affirmative votes in favor of Confirmation by the Holders of Claims in Classes 2A and 2B, establishes that each of Classes 2A, 2B, 2C, and 3A voted in favor of Confirmation.

**F.     Certain Objections Resolved and Withdrawn.**

13.     On February 22, 2019, the State of Hawaii, Department of Taxation ("DOT"), filed an objection to Confirmation (the "DOT Objection"). *See* Dkt. #392. The DOT Objection has been resolved and withdrawn on the record at the Confirmation Hearing based on the Debtor's having filed the requisite state tax returns with the DOT prior thereto.

14.     On February 27, 2019, Bridge filed an objection to Confirmation (the "Bridge Objection"), declarations in support of the Bridge Objection, and supporting documents and exhibits. *See* dkt. ##396-400. The Bridge Objection has been resolved and withdrawn per stipulation (the "Bridge Stipulation") between the Debtor and Bridge. *See* dkt. #454. Pursuant to the Bridge Stipulation (filed herein

7

on March 27, 2019), Bridge has withdrawn all of its objections to Confirmation and all declarations in support of Bridge's objections. Pursuant to the Bridge Stipulation, the Allowed Class 2B Secured Claim of Bridge shall be fixed in the amount of $20,000,000.00 as of the Effective Date. Bridge has changed its votes and voted in favor of Confirmation. As a result of the Bridge Stipulation, the Debtor's *Objection to Claim No. 28 filed by [Bridge]* (dkt. #431) is rendered moot and deemed withdrawn by the Debtor.

15.     On February 27, 2019, Libo Zhang filed an objection to Confirmation (the "Zhang Objection"), declarations in support of the Zhang Objection, and supporting documents and exhibits. *See* dkt. ##401-404. The Zhang Objection has been resolved and withdrawn pursuant to agreement (the "Zhang Stipulation") between the Debtor and Zhang, which was filed on March 6, 2019. *See* dkt. #417. Pursuant to the Zhang Stipulation, Zhang has withdrawn all of its objections to Confirmation and all declarations in support of Zhang's objections. Pursuant to the Zhang Stipulation, the Allowed Class 2C Secured Claim of Zhang shall be fixed in the amount of $6,493,995.24 as of the Effective Date. Zhang has changed her vote and voted in favor of Confirmation.

16.     On February 27, 2019, Romspen Investment Corporation filed an objection to Confirmation (the "Romspen Objection"), declarations in support of the

Romspen Objection, and supporting documents and exhibits. *See* dkt. ##405-412. The Romspen Objection has been resolved and withdrawn pursuant to stipulation between the Debtor and Romspen (the "Romspen Stipulation"). *See* dkt. #461. Pursuant to the Romspen Stipulation (filed herein on April 8, 2019), Romspen has withdrawn all of its objections to Confirmation and all declarations in support of Romspen's objections. Pursuant to the Romspen Stipulation, the Allowed Class 2A Secured Claim of Romspen shall be fixed in the aggregate amount of $13,300,000.00 as of the Effective Date (provided however that the parties have agreed that payment to Romspen in the amount of $12,700,000.00 on or before November 30, 2019 shall satisfy the Allowed Class 2A Secured Claim in full). Romspen has changed its vote and voted in favor of Confirmation.

17. The Debtor filed memoranda and declarations in support of Confirmation, along with supporting documents and exhibits, including but not limited to its: (a) *Memorandum in Support of Confirmation of Debtor's First Amended Chapter 11 Plan of Reorganization Dated February 20, 2019* and *Omnibus Reply to Objections to Confirmation of Debtor's First Amended Plan dated as of February 20, 2019*, filed on March 6, 2019 and supporting declarations (collectively, the "Confirmation Evidence"), which Confirmation Evidence has been admitted into

9

evidence. *See* dkt. ##370-381, 387, 416, 418-420, 422-427, 429, 432, 433, 435, 436, 442, 443.

## G. **All Other Objections Overruled.**

18.  On February 26, 2019, Melvin Lau of Capital Asia Group (HK) Limited, on behalf of certain beneficiaries of the Land Trusts, filed a letter objection to Confirmation. *See* dkt. #394. On February 26, 2019, Tam Hung Yuk, a beneficiary of Land Trust One, filed a letter objection to Confirmation. *See* dkt. #395. On March 8, 2019, the Bankruptcy Court entered a "Notice of Deficient Filing by another beneficiary of a Land Trust, So Wing Yuen, concerning an Opposition dated March 4, 2018." *See* dkt. #439. The foregoing objectors, collectively, are hereinafter referred to as the "Objecting Beneficiaries."

19.  The "Holder of the Power of Direction" of the Land Trusts is Capital Asia Group Management Pte Ltd. ("CAGM"). Winston Yau, CAGM's president and managing director instructed the trustee of the Land Trusts to "abide by the terms of the Bankruptcy Court Approved Disclosure Statement and the Bankruptcy Court Order entered on January 2, 2019." (Wessels Decl., dkt. #382-1, at 2). Notably, neither CAGM nor the Land Trusts objected to Confirmation. Also, the objecting beneficiaries of the Land Trust only represent approximately 30 of 592 beneficiaries of Land Trust One and 22 of 153 beneficiaries of Land Trust Two. The total amount

10

invested by these 51 Objecting Beneficiaries represents only approximately five percent (5%) of the $43.9 million in invested capital in the Land Trusts.

20.     All parties have had a full and fair opportunity to be heard on all issues raised by objections to Confirmation. All unresolved objections, statements, informal objections, and reservations of rights, if any, related to the Plan, the Disclosure Statement, the Solicitation Procedures Order, or Confirmation are OVERRULED on the merits.

**H.     The Land Use Action Plan.**

21.     The Debtor's primary asset is real property located on the Kohala Coast in the Waikoloa area on the Island of Hawaii, which the Debtor intends to continue development into a residential master planned community (the "Project"). Development of the Project was stalled by litigation, zoning, and environmental law challenges that resulted in impediments to development.

22.     In a letter dated May 16, 2017 (the "Stop-Work Notice") from the County, the Debtor was instructed to stop work on the Project until a Supplemental Environmental Impact Statement is accepted by the County. The letter further indicated that the County planned to initiate rezoning due to non-compliance with conditions of Ordinance 96-153 (the "Ordinance").

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 11 of 145

23.     The Debtor developed a path to resolution of the various land use issues facing it based on numerous communications with the County of Hawaii. This path is formally reflected in a letter from the Debtor to the County dated February 7, 2019 (the "Land Use Action Plan"). A copy of the Land Use Action Plan is attached hereto as **Exhibit B**.

24.     Pursuant to the Land Use Action Plan, Debtor intends to (i) submit a new Environmental Impact Statement ("EIS") that will address the cumulative/supplementary impacts of the use of approximately 1,900 acres of adjacent land, as currently zoned, and (ii) obtain new zoning conditions for the Project through a "Project District" zoning ordinance and housekeeping amendment to the Ordinance. The Land Use Action Plan provides a framework for resolving the land use issues and is intended to be a flexible plan that allows the Reorganized Debtor to take any action that may be necessary or desirable in furtherance of the Project's development.

25.     In a letter to the Debtor dated March 5, 2019 (the "County Acceptance Letter," a copy of which is attached hereto as **Exhibit C**), with knowledge that the Bankruptcy Court would be expected to receive this letter into evidence at the Confirmation Hearing, the County of Hawaii Planning Department formally advised the Debtor that the Land Use Action Plan is acceptable, subject to certain

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 12 of 145

modifications and conditions that are attainable by and not objectionable to the Debtor.

## I.  <u>Plan Modification.</u>

26.    On December 27, 2018, the Debtor filed the *Chapter 11 Plan of Reorganization of Aina Leʻa, Inc., Dated December 27, 2018* (the "<u>Original Plan</u>"). *See* dkt. #316.

27.    On February 20, 2019, the Debtor filed the *First Amended Chapter 11 Plan of Reorganization of Aina Leʻa, Inc., dated February 20, 2019* (dkt. #372), as corrected by the *Errata* filed as dkt. #388.

28.    On April 29, 2019, the Debtor filed the *First Amended Chapter 11 Plan of Reorganization of Aina Leʻa, Inc., dated April 29, 2019*, for purposes of incorporating the Bridge Stipulation, the Zhang Stipulation, the Romspen Stipulation, and other technical, non-material changes to the Debtor's chapter 11 reorganization plan (the "<u>Final Confirmed Plan</u>" or the "<u>Plan</u>"). A true and correct copy of the Final Confirmed Plan is attached hereto as **<u>Exhibit A</u>** and represents the version of the Debtor's chapter 11 plan of reorganization as to which these findings of fact, conclusions of law, and orders apply.

29.    As set forth in the *Certificate of Service* dated April 29, 2019 (dkt. ## 467, 468), on April 29, 2019, notice of the Debtor's filing of its First Amended Plan

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 13 of 145

of Reorganization of Aina Leʻa, Inc., dated April 29, 2019 (the "Final Confirmed Plan"), along with a redline version of the Final Confirmed Plan compared to the Original Plan (dated December 27, 2018), were served by email through the Bankruptcy Court's ECF noticing system or through first-class mail on counsel for the U.S. Trustee, counsel for Creditors' Committee, all parties-in-interest that filed an appearance of record in the Bankruptcy Case, and all parties that filed an objection to the Plan whose objections had not been subsequently withdrawn.

**J.    Good Faith, Best Interests, Fair and Equitable**

30.    Consummation of the Final Confirmed Plan will enable the Debtor to emerge from chapter 11 with a significantly improved balance sheet and cash and liquidity with which to operate. The Plan was proposed in good faith and the consummation of the Final Confirmed Plan is in the best interests of all stakeholders and is fair and equitable.

## CONCLUSIONS OF LAW

**A.    Jurisdiction, Venue, Core Proceeding.**

31.    The Bankruptcy Court has jurisdiction over the Bankruptcy Case pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b). Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Bankruptcy Court has the power to enter a Final Order under the United States Constitution determining that the Plan

14

complies with the applicable provisions of the Bankruptcy Code and applicable law and should be confirmed and approved. Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. § 1408.

**B.**     **Burden of Proof.**

32.     The Debtor, as proponent of the Final Confirmed Plan, has met its burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

**C.**     **Plan Compliance with the Bankruptcy Code (11 U.S.C. §1129(a)(1)).**

33.     The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code:

> (a)     <u>Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1))</u>. As required by section 1123(a)(1), in addition to Administrative Claims, Professional Fee Claims, Secured Tax Claims, and Priority Tax Claims, which need not be classified, the Plan designates 9 Classes of Claims and Interests. As required by section 1122(a) of the Bankruptcy Code, the Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as applicable, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between Holders of Claims and Interests. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code. Class 3A consists of General Unsecured Claims against the Debtor, which are classified separately because such Claims are distinct in legal and factual ways from Claims in other Classes, including Class 3B. Class 3A

15

consists largely of unsecured claims asserted (or assertible) by the Debtor's various trade creditors and contract counterparties. Given the differing nature, amount, and priority position of these Claims from those in Class 3B (which do not arise out of trade or vendor relationships but instead by operation of law), the Claims in Class 3B were appropriately separately classified under the Plan.

(b)     Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). The Plan specifies that Classes 1, 2D, and 4 are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c)     Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). The Plan specifies that Classes 2A, 2B, 2C, 3A, 3B, and 5 are Impaired under the Plan, and that Class 5 is not entitled to vote on the Plan. The Plan specifies the treatment of each of these Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(d)     No Discrimination (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment by the Debtor for each Claim or Interest in each respective Class except to the extent that a Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(e)     Implementation of the Plan (11 U.S.C. § 1123(a)(5)). The Plan and the various documents filed with the Bankruptcy Court or entered into in connection with the Plan provide adequate and proper means for implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code, including, without limitation: (i) the transfers of all ownership interests of Land Trust Two and the Debtor in Parcel D-1-B-1 to a wholly-owned subsidiary of the Reorganized Debtor and the issuance to

16

Land Trust Two, in exchange, of 155,428 shares of Preferred Stock and 78,260 shares of Common Stock; (ii) the transfers of all ownership interests of Land Trust One and the Debtor in Parcel D-1-B-2 to a wholly-owned subsidiary of the Debtor and the issuance to Land Trust One, in exchange, of 1,033,212 shares of Preferred Stock and 597,488 shares of Common Stock; (iii) the contemplated DIP/Exit Facility to be approved by separate Order of this Bankruptcy Court, on the terms and conditions set forth therein; (iv) the vesting of assets in the Reorganized Debtor; (v) the satisfaction of all Governmental Development Conditions through implementation of the Land Use Action Plan; and (vi) the obtaining of construction financing post-confirmation through the New LG Construction Loan (Summit) and the New LG HUD-Guaranteed Loan (Bellwether). In addition, in its sole discretion, the Reorganized Debtor is authorized hereunder and under the Plan to cause the transfers of all ownership interests of the Debtor in Parcel B-1-A and in Parcel D-1-A to wholly-owned subsidiaries of the Reorganized Debtor, respectively.

(f)     Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)). Section 1123(a)(6) is satisfied because the Debtor has no authorized shares in its charter that allow for the issuance of non-voting securities.

(g)     Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)). The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. The Plan discloses the individuals who will serve as Debtor's executive officers and as members of the Debtor's board of directors. The Plan is consistent with the interests of the creditors and equity security holders and with public policy with respect to the manner of selection of the Debtor's executive officers and as members of the Debtor's board of directors. Accordingly, the Debtor has satisfied section 1123(a)(7) of the Bankruptcy Code.

17

(h) <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>. The additional provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code and, therefore, are consistent with section 1123(b) of the Bankruptcy Code.

(i) <u>Impairment/Unimpairment of Any Class of Claims or Interests (11 U.S.C. § 1123(b)(1))</u>. As contemplated by section 1123(b)(1) of the Bankruptcy Code, pursuant to the Plan, Classes 1, 2D and 4 are Unimpaired, Classes 2A, 2B, 2C, 3A, and 3B are Impaired, and Class 5 is deemed to have rejected the Plan.

(j) <u>Assumption and Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2))</u>. The Plan provides that all Executory Contracts and Unexpired Leases not otherwise assumed or rejected will be deemed rejected as of the Effective Date.

(k) <u>Compromise and Settlement (11 U.S.C. § 1123(b)(3)(A))</u>. In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good-faith compromise of all Claims and Interests that all Holders of Claims or Interests may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made on account of such Allowed Claim or Allowed Interest. The compromise and settlement of such Claims and Interests embodied in the Plan are in the best interests of the Debtor, the Estate, and all Holders of Claims and Interests, and are fair, equitable, and reasonable.

(l) <u>Retention of Claims (11 U.S.C. § 1123(b)(3)(B))</u>. In accordance with section 1123(b)(3)(B) of the Bankruptcy Code, the Plan provides that the Debtor shall retain and

18

may enforce all rights to commence, prosecute, pursue, and settle any and all Causes of Action, except as otherwise released, settled, or compromised by any agreement or under the Plan.

(m)     Other Appropriate Provisions (11 U.S.C. § 1123(b)(5)-(6)). The Plan's other provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for (1) distributions to Holders of Claims and Interests, including Holders of Secured Claims, (2) resolution of Disputed Claims and Interests, (3) allowance of certain Claims, (4) releases by the Debtor of certain parties, (5) exculpation of certain parties, (6) the limited injunction of certain actions in order to implement Plan, and (7) retention of this Bankruptcy Court's jurisdiction, thereby satisfying the requirements of sections 1123(b)(5) and (9) of the Bankruptcy Code.

## D.    **Plan Compliance with the Bankruptcy Code (11 U.S.C. §1129(a)(2)).**

34.    The Debtor has complied with the applicable provisions of the Bankruptcy Code, as required by section 1129(a)(2) of the Bankruptcy Code. Specifically:

(a)     the Debtor is an eligible debtor under section 109 of the Bankruptcy Code and is a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code;

(b)     the Debtor has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

(c)     the Debtor has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Solicitation Procedures Order in (i)

19

transmitting the Disclosure Statement, the Original Plan, and related notices, and (ii) soliciting and tabulating the votes on the Plan.

35. Adequate and sufficient notice of the modifications to the Original Plan have been given, and no other further notice, or re-solicitation of votes on the Plan is required. None of the modifications incorporated in the Final Confirmed Plan adversely affects the treatment of any Claim or Interest thereunder. The filing with the Bankruptcy Court of the Final Confirmed Plan constitutes due and sufficient notice thereof.

36. Pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, none of these modifications require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that Holders of Claims be afforded an opportunity to change previously cast votes in respect of Plan Confirmation. Accordingly, the Final Confirmed Plan, as attached hereto, constitutes the "Plan" submitted for Confirmation by the Bankruptcy Court.

37. All modifications to the Plan filed or announced prior to the conclusion of the Confirmation Hearing constitute technical changes and/or changes that have either been consented to by affected constituents or which do not require additional disclosure under Bankruptcy Code sections 1125 or 1127(a), or re-solicitation of

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 20 of 145

votes under Bankruptcy Code section 1126, nor do they require that holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan. The modification does not adversely change the treatment for the accepting Classes. Therefore, the acceptances of the accepting Classes are deemed to apply to the modification. Additional notice under Bankruptcy Rule 3019(a) is not required.

38.    In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims and Interests who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are presumed to have accepted the modifications contained in the Final Confirmed Plan. No Holder of a Claim or Interest shall be permitted to change its vote as a consequence of any such modifications.

**E.    Good Faith Proposal of the Plan (11 U.S.C. § 1129(a)(3)).**

39.    A plan complies with section 1129(a)(3) when it is intended to achieve a result consistent with the objectives of Chapter 11 and in light of the Code's purpose to provide the debtor with a fresh start. *In re Corey*, 892 F.2d 829, 835 (9th Cir. 1989) (plan proposed in good faith in part because represented fair, well-reasoned effort to end years of litigation surrounding debtors' bankruptcies); *In re Boulders on the River, Inc.*, 164 B.R. 99, 103 (Bankr. 9th Cir. 1994) (good faith

21

"requires the plan to achieve a result consistent with the objectives and purposes of the Bankruptcy Code"). Good faith in proposing a plan of reorganization is assessed by the Bankruptcy Court and viewed under the totality of the circumstances. *Boulders,* 164 B.R. at 104.

40.     The Bankruptcy Court overrules the objections of the Objecting Beneficiaries. None of the Objecting Beneficiaries is a "party-in-interest" under Section 1109(b) of the Bankruptcy Code since none of them has a direct legal or financial stake in the outcome of the Bankruptcy Case. Rather, they hold beneficial interests in the Land Trusts, which constitute personal property interests under Hawaiian law. Those personal property interests are not sufficient to confer standing on these Objecting Beneficiaries, as a matter of law, since the Land Trust agreements and other ancillary documents signed by each of the Objecting Beneficiaries provides: "Only the Holder of the Power of Direction can instruct the trustee of the . . . Land Trusts." (Wessels Rebuttal Decl., ¶ 19, Exs. 4-5 thereto); *cf. Hofheimer v. Gold (In re South State St. Bldg. Corp.),* 140 F.2d 363, 366-67 (6th Cir. 1943), *cert. denied,* 322 U.S. 761 (1944) (stockholder of a parent corporation, who was not a stockholder or creditor of the debtor subsidiary, was not a "party in interest" and thus was not entitled to be heard in a reorganization proceeding); *Blair v. Ing*, 95 Hawaii 247, 21 P.3d 452 (Haw. 2001) (trust beneficiary lacked standing to bring

22

accountant malpractice); *In re Renegade Holdings Inc.*, No. 09-50140C-11W, 2014 WL 5304640 at *1 (Bankr. M.D.N.C. 2014) (one cannot "ignore the separate existence" of an entity to "claim standing"). The Objecting Beneficiaries have had a full and fair opportunity to be heard on all issues raised in their objections to Confirmation. These objections of the Objecting Beneficiaries, and all other unresolved objections, statements, informal objections, and reservations of rights, if any, related to the Plan, the Disclosure Statement, the Solicitation Procedures Order, or Confirmation, are hereby OVERRULED on the merits.

41.    In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Bankruptcy Case and the formulation of the Plan. The Debtor proposed the Plan in good faith, after negotiations with Creditors, Governmental Units, and others, and not by any means that are forbidden by law. The Plan was proposed with the purpose of maximizing the value of the Debtor's Estate for the benefit of Creditors and other parties-in-interest. Confirmation of the Plan is also consistent with the important public policy of providing affordable housing to the lower income population. The Debtor solicited acceptances of the Plan only after approval of the Disclosure Statement. Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 23 of 145

**F.**     **Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**

42.     Payments made or to be made by the Debtor for services or for costs and expenses in or in connection with the Bankruptcy Case, or in connection with the Plan and incident to the Bankruptcy Case, including all Professional Fee Claims and Administrative Claims have been approved by, or are subject to the approval of, the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

**G.**     **Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).**

43.     The Debtor has disclosed the identity and affiliations of all persons proposed to serve as Debtor's officers and directors. The Plan complies with section 1129(a)(5)(A)(ii) of the Bankruptcy Code because the appointment of such persons is consistent with the interests of the creditors and equity security holders and with public policy. Accordingly, the Debtor has satisfied section 1129(a)(5) of the Bankruptcy Code.

**H.**     **No Rate Changes (11 U.S.C. § 1129(a)(6)).**

44.     Section 1129(a)(6) of the Bankruptcy Code is not applicable to the Bankruptcy Case. The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

## I. Best Interests of Holders of Claims and Interests (11 U.S.C. § 1129(a)(7)).

45.     Each Holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date.

46.     The liquidation analysis attached as <u>Exhibit D</u> to the Disclosure Statement (the "<u>Liquidation Analysis</u>") and any other evidence related thereto in support of the Plan that was proffered or adduced at or prior to the Confirmation Hearing establish that Holders of Allowed Claims and Allowed Interests in every Class will recover as much or more under the Plan on account of such Claim or Interest, as of the Effective Date, than the amount such Holder would receive if the Debtor was liquidated under chapter 7 of the Bankruptcy Code. Accordingly, the Plan satisfies the "best interest of creditors" test under section 1129(a)(7) of the Bankruptcy Code.

## J. Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).

47.     Classes 1, 2D, and 4 are Unimpaired by the Plan pursuant to section 1124 of the Bankruptcy Code and, accordingly, Holders of Claims and Interests in such Classes are conclusively presumed to have accepted the Plan pursuant to

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 25 of 145

section 1126(f) of the Bankruptcy Code. As reflected in the Voting Report, the Romspen Stipulation, and the Bridge Stipulation, Classes 2A, 2B, 2C, and 3A have voted to accept the Plan pursuant to section 1126(c) of the Bankruptcy Code. No Holder of a Class 3B Claim voted to accept or reject the Plan. Class 5 is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. The Plan satisfies the requirements of section 1129(a)(8) of the Bankruptcy Code as to all Classes except for Class 5.

**K.** **Treatment of Administrative Claims, Professional Fee Claims, Secured Tax Claims, Priority Tax Claims, and Other Priority Unsecured Claims (11 U.S.C. § 1129(a)(9)).**

48.     The treatment of Administrative Claims, Professional Fee Claims, Secured Tax Claims, Priority Tax Claims, and Other Priority Unsecured Claims pursuant to the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code. Accordingly, the Debtor has satisfied the requirements of section 1129(a)(9) of the Bankruptcy Code.

**L.** **Acceptance By at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10)).**

49.     Claims in Classes 2A, 2B, 2C, and 3A are Impaired and entitled to vote under the Plan. Each of these Classes has voted to accept the Plan, as established by the Voting Report, the Romspen Stipulation, and the Bridge Stipulation.

26

Accordingly, at least one Class of Impaired Claims has accepted the Plan as to the Debtor, and as such the Plan satisfies section 1129(a)(10) of the Bankruptcy Code.

**M.** **Plan Feasibility (11 U.S.C. § 1129(a)(11)).**

50.     Section 1129(a)(11) of the Bankruptcy Code requires that the Bankruptcy Court find that confirmation of the plan is not likely to be followed by the liquidation or need for further financial reorganization of the debtor unless such liquidation is provided for in the plan. 11 U.S.C. § 1129(a)(11). This requirement, commonly referred to as the feasibility requirement, is satisfied by a showing that the Plan has a "reasonable probability of success." *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 787 F.2d 1352, 1364 (9th Cir. 1986). "The Code does not require the debtor to prove that success is inevitable or assured and a relatively low threshold of proof will satisfy § 1129(a)(11) so long as adequate evidence supports a finding of feasibility." *Computer Task Group, Inc. v. Brotby (In re Brotby)*, 303 B.R. 177, 191 (9th Cir. BAP 2003). Further, "[t]he prospect of financial uncertainty does not defeat plan confirmation on feasibility grounds since a guarantee of the future is not required [and] the mere potential for failure of the plan is insufficient to disprove feasibility." *Mut. Life Ins. Co. v. Patrician St. Joseph Partners, Ltd. P'ship (In re Patrician St. Joseph Partners Ltd. P'ship)*, 169 B.R. 669, 674 (D. Ariz. 1994) (citation omitted).

27

51.     The evidence establishes the requirements of 11 U.S.C. § 1129(a)(11) have been satisfied. Exhibit E to the Disclosure Statement sets forth the Debtor's projections in support of the Plan. The Bankruptcy Court further finds that the Debtor's cash flow projections are reasonable and establish that confirmation of the Plan is not likely to be followed by the liquidation or need for further financial reorganization. Upon approval of the DIP/Exit Financing that satisfies the condition to effectiveness in Section 13.1(c) of the Plan, the Debtor will have sufficient funds, together with the projected New LG Loans, to implement the Plan and make all distributions contemplated by the Plan.

**N.      Payment of Statutory Fees (11 U.S.C. § 1129(a)(12)).**

52.     As set forth in the Plan, all fees payable pursuant to section 1930(a) of title 28 of the United States Codes prior to the Effective Date shall be paid by the Debtor. On and after the Effective Date, the Debtor shall pay any and all such fees when due and payable and shall file with the Bankruptcy Court reports in a form reasonably acceptable to the United States Trustee. The Debtor shall remain obligated to pay the United States Trustee Fees until the earliest of the Bankruptcy Case being closed or dismissed. Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

28

**O.  Non-Applicability of Certain Sections (11 U.S.C. § 1129(a)(13), (14), (15) and (16)).**

53.    Sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Bankruptcy Case. The Debtor owes no retiree benefits or domestic support obligations. The Debtor also is not an individual. All applicable transfers under the Plan are being effectuated by a corporation or trust that is a moneyed, business, or commercial corporation or trust.

**P.  Confirmation Over Non-Acceptance of Impaired Classes (11 U.S.C. § 1129(b)).**

54.    The Plan may be confirmed as to Class 5 (the "Deemed Rejecting Class") pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding that the requirements of section 1129(a)(8) have not been met with respect to the Deemed Rejecting Class, because the Debtor has demonstrated by a preponderance of evidence that the Plan (i) satisfies all of the other requirements of section 1129(a) of the Bankruptcy Code and (ii) does not "discriminate unfairly" and is "fair and equitable" with respect to the Holders of Interests in the Deemed Rejecting Class.

55.    The Plan does not "discriminate unfairly" against any Holders of Interests in the Deemed Rejecting Class. The treatment of such Holders is proper because all similarly situated Holders of Interests will receive substantially similar

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 29 of 145

treatment, and the Debtor has a valid rationale for the Plan's classification scheme and the treatment provided for different Classes.

56.     The Plan is also "fair and equitable" with respect to the Deemed Rejecting Class. Specifically, no holder of any Interest is receiving a distribution under the Plan, and no Class of Claims senior to Class 5 Interests is receiving more than full recovery on account of its Claims or Interests. The Plan therefore satisfies the requirements of section 1129(b) of the Bankruptcy Code and may be confirmed despite the fact that the Rejecting Classes are deemed to reject the Plan.

**Q.     Only One Plan (11 U.S.C. § 1129(c)).**

57.     The Plan is the only reorganization plan filed in the Chapter 11 Bankruptcy Case. There is no competing plan. Accordingly, section 1129(c) of the Bankruptcy Code is satisfied.

**R.     Principal Purpose of the Plan (11 U.S.C. § 1129(d)).**

58.     The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, and there has been no filing by any Governmental Unit asserting any such attempted avoidance. The Plan, therefore, satisfies section 1129(d) of the Bankruptcy Code.

30

**S.**     **Not a Small Business Bankruptcy Case (11 U.S.C. § 1129(e)).**

59.     The Bankruptcy Case is not a small business case, as that term is defined in the Bankruptcy Code, and accordingly, section 1129(e) of the Bankruptcy Code is inapplicable in the Bankruptcy Case.

**T.**     **Binding and Enforceable.**

60.     The Plan has been negotiated in good faith and at arm's length and, subject to the occurrence of the Effective Date, shall bind any Holder of a Claim or Interest and such Holder's respective successors and assigns, whether or not the Claim or Interest is Impaired under the Plan, whether or not such Holder has accepted the Plan, and whether or not such Holder is entitled to a distribution under the Plan. The Plan constitutes legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with its terms to the fullest extent provided in sections 1141(a)-(c) of the Bankruptcy Code.

**U.**     **Vesting of Assets.**

61.     Except as otherwise provided in the Plan or any agreement, instrument, or other document executed in connection therewith, on the Effective Date, all property in the Estate, all Causes of Action, all Executory Contracts and Unexpired Leases assumed by the Debtor, and any property acquired by the Debtor,

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed   05/24/19   Page 31 of 145

including interests held by the Debtor in non-Debtor subsidiaries, shall, pursuant to the Plan, vest in the Reorganized Debtor as set forth in the Plan.

**V.     <u>Executory Contracts and Unexpired Leases.</u>**

62.     The Debtor has exercised sound business judgment in determining whether to reject, assume, or assume and assign each of its Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code.

**W.     <u>Release, Exculpation, and Injunction Provisions.</u>**

63.     The Bankruptcy Court has core jurisdiction under sections 157(a) and (b) and 1334(a) and (b) of title 28 of the United States Code to approve the exculpations and injunctions set forth herein and in the Plan. Sections 105(a) and 1123(b) of the Bankruptcy Code permit the issuance of the injunctions and approval of the exculpations and injunctions set forth herein and in the Plan. Based upon the record of the Bankruptcy Case and the evidence proffered or adduced at the Confirmation Hearing, the Bankruptcy Court finds that the exculpations and injunctions set forth herein and in the Plan are consistent with the Bankruptcy Code and applicable law. Further, the exculpations and injunctions contained herein and in the Plan are integral components of the Plan. The exculpations and injunctions set forth herein and in the Plan are hereby approved and authorized in their entirety.

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed   05/24/19   Page 32 of 145

**X.**  **Debtor's Release.**

64.     The releases of Claims and Rights of Action by the Debtor described herein and in the Plan, in accordance with section 1123(b) of the Bankruptcy Code (the "Debtor's Release"), represent a valid exercise of the Debtor's business judgment under Bankruptcy Rule 9019. The Debtor's pursuit of any such Claims against the Released Parties is not in the best interest of the Estate's various constituencies because the costs involved would likely outweigh any potential benefit from pursuing such Claims. The Debtor's Release is fair and equitable and complies with the absolute priority rule.

**Y.**  **Exculpation.**

65.     The exculpation provisions set forth herein and in the Plan were proposed in good faith and are essential to the Plan. The record in the Bankruptcy Case fully supports the exculpation provisions, and such provisions are appropriately tailored to protect the Exculpated Parties from inappropriate litigation and to exclude actions determined by Final Order to have constituted actual fraud, gross negligence or willful misconduct.

**Z.**  **Injunction.**

66.     The injunction provisions set forth herein and in the Plan: (i) are essential to the Plan; (ii) are necessary to preserve and enforce the Debtor's release,

U.S. Bankruptcy Court - Hawaii  #17-00611  Dkt # 474  Filed  05/24/19  Page 33 of 145

the exculpation provisions in the Plan, and the compromises and settlements implemented under the Plan; and (iii) are appropriately tailored to achieve that purpose.

67. In addition, the injunction provisions set forth herein and in the Plan: (i) are within the core jurisdiction of this Bankruptcy Court under 28 U.S.C. §§ 157(a)-(b), 1334(a)-(b), and 1334(d); (ii) are an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) confer material benefits on, and are in the best interests of, the Debtor, the Estate, and its creditors, and other stakeholders; (iv) is important to the overall objectives of the Plan; and (v) are consistent with sections 105, 1123, and 1129 of the Bankruptcy Code, other provisions of the Bankruptcy Code, and other applicable law.

**AA.  Retention of Jurisdiction.**

68. Except as otherwise provided in the Plan or this Confirmation Order, the Bankruptcy Court shall retain jurisdiction over the Bankruptcy Case and all matters arising out of, or related to, the Bankruptcy Case and the Plan, including, but not limited to, the matters set forth in Article XII of the Plan.

34

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 34 of 145

**BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

**A.** **Headings.**

69.    Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

**B.** **Plan Confirmation and Implementation.**

70.    The Final Confirmed Plan, attached hereto as **Exhibit A**, including all exhibits thereto, is approved in its entirety and confirmed under section 1129 of the Bankruptcy Code. The terms of the Plan and the Debtor's entry into the agreements or transfers contemplated therein, and the administration of the same, are hereby approved and authorized, including without limitation: (i) the transfers of ownership interests of Land Trust Two and the Debtor in Parcel D-1-B-1 to a wholly-owned subsidiary of the Reorganized Debtor and the issuance to Land Trust Two, in exchange, of 155,428 shares of Preferred Stock and 78,260 shares of Common Stock; (ii) the transfers of ownership interests of Land Trust One and the Debtor in Parcel D-1-B-2 to a wholly-owned subsidiary of the Debtor and the issuance to Land Trust One, in exchange, of 1,033,212 shares of Preferred Stock and 597,488 shares of Common Stock; (iii) the contemplated DIP/Exit Facility to be approved by separate Order of this Bankruptcy Court, on the terms and conditions set forth therein; (iv) the vesting of assets in the Reorganized Debtor;

35

(v) the satisfaction of all Governmental Development Conditions through implementation of the Land Use Action Plan; and (vi) the obtaining of construction financing post-confirmation through the New LG Construction Loan (Summit) and the New LG HUD-Guaranteed Loan (Bellwether).

71. The Debtor and the Reorganized Debtor are authorized, without the need for further authorization, to take all actions necessary or appropriate to enter into, implement, effectuate, and consummate the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, including consummating the transfers of ownership interests of the Land Trusts in Parcels D-1-B-1 and D-1-B-2 to wholly-owned subsidiaries of the Reorganized Debtor on the terms set forth in the Plan; provided, however, that the DIP/Exit Facility shall be subject to subsequent approval by separate Order of the Bankruptcy Court.

72. The Trustee of the Land Trust is authorized and directed, without the need for further authorization by any Person or Governmental Unit, to take all actions necessary or appropriate to consummate the transfers of ownership interests of the Land Trusts in Parcels D-1-B-1 and D-1-B-2 to wholly-owned subsidiaries of the Reorganized Debtor on the terms set forth in the Plan.

36

## C.    Implementation of Land Use Action Plan Ordered.

73.    The Land Use Action Plan, a copy of which is attached hereto as **Exhibit B**, is hereby approved in its entirety and shall be implemented by the Debtor and other interested parties in accordance with the terms of the County Acceptance Letter, a copy of which is attached hereto as **Exhibit C**; provided, however, that in so implementing the Land Use Action Plan, the Reorganized Debtor is authorized to modify, amend, deviate from, or otherwise take any action, whether or not mentioned in or contrary to, the actions specified in the Land Use Action Plan, as may be necessary or desirable to resolve existing and future land use and development issues that may arise in the course of the Reorganized Debtor's work or communications with the County or any other Governmental Unit (including, without limitation, the authority to petition, apply or appeal to, seek approvals, permits, and/or authorizations from, enter into contracts with, or otherwise engage in discussions and/or negotiations with any pertinent authority, administration, entity, division, department or agency as necessary or desirable to address issues arising from and/or implement the Land Use Action Plan).

74.    At its option, the Reorganized Debtor may take all actions necessary or appropriate to cause the properties of the Reorganized Debtor or its wholly-owned subsidiaries to be annexed into the PUC District of West Hawaii Water

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 37 of 145

Company on such terms and conditions the Reorganized Debtor or its wholly-owned subsidiaries deem desirable or appropriate.

75.     At its option, the Reorganized Debtor may take all actions necessary, desirable, or appropriate to cause the properties of the Reorganized Debtor or its wholly-owned subsidiaries, which are currently zoned as one property under Ordinance No. 96-153 of the County of Hawaii with certain adjoining lands not owned by the Debtor, to be formally separated from such adjoining properties through a Project District application or other County-approved action or other Governmental Unit action.

**D.      Objections.**

76.     All objections, responses, reservations, statements, and comments in opposition to the Plan, other than those resolved, adjourned, or withdrawn with prejudice prior to, or on the record at, the Confirmation Hearing, are overruled on the merits in all respects, including for the reasons stated by the Bankruptcy Court in its bench ruling at the Confirmation Hearing. All withdrawn objections, if any, are deemed withdrawn with prejudice.

**E.      Omission of Reference to Particular Plan Provisions.**

77.     References in this Confirmation Order to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not

38

intended to be a part of or to affect the interpretation of the Plan. The failure to specifically include or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by this reference, and all other agreements, instruments or other documents filed in connection with the Plan, and/or executed or to be executed in connection with the transactions contemplated by the Plan and all amendments and modifications of any of the foregoing made pursuant to the provisions of the Plan governing such amendments and modifications are approved in their entirety; provided, however, that the DIP/Exit Facility shall be subject to subsequent approval by separate Order of the Bankruptcy Court.

**F.     Binding Effect.**

78.     Effective as of entry of this Confirmation Order, but subject to the occurrence of the Effective Date and subsequent approval of the DIP/Exit Facility by separate Order of the Bankruptcy Court, the Plan and this Confirmation Order shall be effective, enforceable and binding upon (i) the Debtor and (ii) any Holder of a Claim or Interest (and such Holder's respective successors and assigns). The Plan and this Confirmation Order constitute legal, valid, binding, and authorized

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 39 of 145

obligations of the respective parties thereto and shall be enforceable in accordance with their terms. Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and this Confirmation Order shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

## G. **Classifications.**

79.     The terms of the Plan shall govern the classification of Claims and Interests for purposes of the distributions to be made thereunder. The classifications set forth on the Ballots tendered to or returned by the holders of Claims in connection with voting on the Plan: (i) were set forth thereon solely for purposes of voting to accept or reject the Plan; (ii) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; (iii) may not be relied upon by any holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (iv) shall not be binding on the Debtor except for voting purposes.

## H. **General Settlement of Claims and Interests.**

80.     Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 (as applicable), and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the

40

provisions of the Plan shall constitute a good faith compromise and settlement of Claims and Interests and controversies resolved pursuant to the Plan. Distributions made to Holders of Allowed Claims in any Class are intended to be, and shall be, final.

**I.    Distributions.**

81.    Any and all distributions pursuant to the Plan shall be made in accordance with Article VII of the Plan, and such methods of distribution are approved. The Reorganized Debtor shall have no duty or obligation to make distributions to any Holder of an Allowed Claim unless and until such Holder executes and delivers, in a form reasonably acceptable to the Reorganized Debtor, any and all documents applicable to such distributions under the Plan.

**J.    Treatment of Executory Contracts and Unexpired Leases.**

82.    The assumption and rejection of Executory Contracts and Unexpired Leases as set forth in Article VIII of the Plan is hereby authorized. Assumption of any Executory Contract and Unexpired Lease identified in the Plan is hereby authorized.

83.    Proofs of Claim with respect to Claims against the Debtor arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Bankruptcy Court within thirty (30) days after the Effective Date. Any Claims

41

arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time will be disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtor, the Estate, the Reorganized Debtor, or property of the foregoing parties, without the need for any objection by the Debtor or the Reorganized Debtor, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court. Claims arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases shall be classified as Class 3B Claims under the Plan.

**K.      Issuance of Common Stock; Registration Exemption.**

84.      The Common Stock in the Reorganized Debtor issued pursuant to the Plan to the Land Trusts or any other Person shall be exempt from any registration requirements under any securities laws to the fullest extent permitted by section 4(a)(2) of the Securities Act and Rule 506 of Regulation D promulgated thereunder and by section 1145 of the Bankruptcy Code.

85.      Under section 1145 of the Bankruptcy Code, the Common Stock shall be freely tradeable by the recipients thereof, subject to: (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act; (ii) compliance with rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any

42

future transfer of such securities or instruments; (iii) the restrictions, if any, on the transferability of such securities and instruments; and (iv) applicable regulatory approval, if any.

**L.    Change of Domicile Authorized.**

86.    On or after the Effective Date, the Reorganized Debtor shall convert from a Delaware corporation to a Nevada corporation pursuant to Sections 266 and 303 of the Delaware General Corporation Law, and Nevada Revised Statutes Section 92A.205. The Reorganized Debtor shall have the unilateral right to file or record such documents deemed necessary to effect such conversion by the Reorganized Debtor in its sole discretion.

**M.    Exemption from Certain Transfer Taxes and Recording Fees.**

87.    The Plan and the Confirmation Order provide for one or more of the following: (i) the issuance, transfer or exchange of notes, debt instruments and equity securities under or in connection with the Plan; (ii) the creation, assignment, recordation or perfection of any lien, pledge, other security interest or other instruments of transfer; (iii) the making or assignment of any lease; (iv) the creation, execution and delivery of any agreements or other documents creating or evidencing the formation of the Reorganized Debtor or the issuance or ownership of any interest in the Reorganized Debtor; or (v) the making or delivery of any deed

43

or other instrument of transfer under the Plan in connection with the vesting of the Debtor's assets in the Reorganized Debtor pursuant to or in connection with the Plan. Pursuant to section 1146 of the Bankruptcy Code and the Plan, any such act described or contemplated herein will not be subject to any stamp tax, transfer tax, conveyance tax, filing or recording tax, or other similar tax or assessment by any Governmental Unit in any of the United States (collectively, a "Stamp or Similar Tax").

88.     This Confirmation Order directs the appropriate federal, state or local officials or agents or taxing authority of any Governmental Unit to forgo the collection of any such Stamp or Similar Tax and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such Stamp or Similar Tax. Such exemption specifically applies, without limitation, to (i) all actions, agreements and documents necessary to evidence and implement the provisions of and the distributions to be made under the Plan; (ii) the transfers of ownership interests of Land Trust Two and the Debtor in Parcel D-1-B-1 to a wholly-owned subsidiary of the Reorganized Debtor; (iii) the transfers of ownership interests of Land Trust One and the Debtor in Parcel D-1-B-2 to a wholly-owned subsidiary of the Reorganized Debtor; and (iv) any recordings required pursuant to the DIP/Exit Facility.

44

**N.** **Governmental Approvals Not Required.**

89. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any Governmental Unit with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement, including the DIP/Exit Facility.

**O.** **Directors and Officers of the Reorganized Debtor.**

90. The directors and officers of the Reorganized Debtor will initially consist of directors and officers who have been identified in Section 6.2 of the Plan, and such directors and officers shall be deemed elected or appointed, as applicable, and authorized to serve as directors and officers of the Reorganized Debtor. Such appointment and designation is hereby approved and ratified as being in the best interests of the Debtor and other interested parties and consistent with public policy, and such directors and officers hereby are deemed elected and appointed, as applicable, to serve in their respective capacities as of the Effective Date without further action of the Bankruptcy Court, the Reorganized Debtor, or Holders of Common Stock as of the Effective Date. The Board of Directors of the Reorganized Debtor shall have the authority, without the need for approval by the Bankruptcy

45

Court or Holders of Common Stock, to authorize the Reorganized Debtor to enter into employment agreements and/or other compensatory arrangements with directors and officers of the Reorganized Debtor.

**P.    Releases, Injunction, Exculpation, and Related Plan Provisions.**

91.    The releases, injunctions, exculpations, and related provisions set forth in Article XI of the Plan are incorporated herein in their entirety, are hereby approved and authorized in all respects, are so ordered, and shall be immediately effective on the Effective Date without further order or action on the part of this Bankruptcy Court or any other party.

92.    Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in the Bankruptcy Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the date upon which the Bankruptcy Court enters the Confirmation Order on its docket in the Bankruptcy Case (the "Confirmation Date") (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 46 of 145

**Q.**     **Conditions to the Effective Date.**

93.     Notwithstanding anything to the contrary in the Plan, the Plan shall not become effective unless and until (i) the conditions to Confirmation set forth in Sections 13.1 and 13.2 of the Plan have been satisfied or waived, (ii) the Bankruptcy Court shall have entered the Confirmation Order, and (iii) the Reorganized Debtor shall have drawn down at least $5 million under the approved DIP/Exit Facility on the Effective Date, which Effective Date in no event shall be later than the 60th Business Day following the entry of the Confirmation Order and which drawdown may be used by the Reorganized Debtor to pay all Allowed Administrative Claims and Professional Fees of the Estate, and all fees, charges, prepaid interest, and other costs and expenses payable under the terms of the approved DIP/Exit Facility.

**R.**     **No Waiver.**

94.     The failure to specifically include any particular provision of the Plan in this Confirmation Order will not diminish the effectiveness of such Plan provision nor constitute a waiver thereof, it being the intent of this Bankruptcy Court that the Plan is confirmed in its entirety.

**S.**     **Authorization to Consummate; Substantial Consummation.**

95.     The Debtor is authorized to consummate and implement the Plan at any time after the entry of this Confirmation Order subject to satisfaction or waiver

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 47 of 145

(by the required parties) of the conditions precedent to consummation set forth in Sections 13.1 and 13.2 of the Plan; provided, however, that the DIP/Exit Facility shall be subject to subsequent approval by separate Order of the Bankruptcy Court.

96.     On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101(2) and 1127(b) of the Bankruptcy Code.

**T.     Effectiveness of All Actions.**

97.     During the period from entry of this Confirmation Order through and until the Effective Date, the Debtor shall continue to operate its business as a debtor-in- possession, subject to the oversight of the Bankruptcy Court as provided under the Bankruptcy Code, the Bankruptcy Rules, and this Confirmation Order and any order of the Bankruptcy Court that is in full force and effect. During such period, the Debtor is authorized to execute such documents, agreements, or filings that are contemplated by the Plan without any further order of the Bankruptcy Court or corporate action, and to take any actions necessary or advisable or appropriate to implement the documents, agreements, or filings that are contemplated by the Plan.

98.     This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or

48

modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Disclosure Statement, the approved DIP/Exit Facility, and any documents, instruments, securities, or agreements, entered into in connection therewith, and any amendments or modifications thereto.

**U.** **Documents, Mortgages, and Instruments; Recording.**

99.    Each Governmental Unit is authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the Plan and this Confirmation Order.

100.   The Debtor and the Reorganized Debtor hereby are authorized to deliver a notice or short form of this Confirmation Order, with the Plan attached (in a form complying with any applicable non-bankruptcy rules or regulations), to any state or local recording officer of any Governmental Unit, and such officer must accept for filing such documents or instruments without charging any stamp tax, recording tax, personal property transfer tax, mortgage, or other similar tax. Such notice (i) shall have the effect of an order of this Bankruptcy Court and (ii) shall constitute sufficient notice of the entry of this Confirmation Order to such filing and recording officers. The Bankruptcy Court specifically retains jurisdiction to enforce the foregoing direction, by contempt or otherwise.

49

## V.    **Dissolution of the Committee.**

101.    On the Effective Date, the Committee and any other statutory committee formed in connection with the Bankruptcy Case shall dissolve automatically and all members thereof shall be released and discharged from all rights, duties and responsibilities arising from, or related to, the Bankruptcy Case; *provided, however*, that the Committee's Professionals may prosecute any remaining interim and/or final applications for payment of Professional Fee Claims. Upon dissolution of the Committee, Case Lombardi & Pettit, a law corporation, may provide legal services directly to the Reorganized Debtor pursuant to agreement between the parties.

## W.    **Administrative Claims Bar Date.**

102.    Except as otherwise provided herein or in the Plan, unless previously filed or paid, requests for payment of Administrative Claims (other than those arising in the ordinary course) must be filed and served on the Debtor no later than forty-five (45) days after the Effective Date (the "Administrative Claims Bar Date"); provided, however, that the Administrative Claims Bar Date may be extended from time to time upon the mutual agreement of the Reorganized Debtor and the applicable Holder of an Administrative Claim, or pursuant to an order of the Bankruptcy Court.

50

103. Holders of Administrative Claims that are required to file a request for payment of such Administrative Claims and that do not file such a request by the Administrative Claims Bar Date will be forever barred from asserting such Administrative Claims against the Debtor, and such Administrative Claims will be deemed discharged as of the Effective Date.

## X. **Inconsistency.**

104. In the event of any inconsistency between the Plan, the Disclosure Statement, and any other instrument or document created or executed pursuant to the Plan, except for the DIP/Exit Facility, the express terms of the Plan shall control. The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each; provided, however, that if there is determined to be any inconsistency between any provision of the Plan and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern, and any such provisions of this Confirmation Order shall be deemed a permitted modification of the Plan. Notwithstanding any of the foregoing, in the event of any inconsistency between the provisions of this Confirmation Order and any of the provisions of the separate order by the

51

Bankruptcy Court approving the DIP/Exit Facility, the provisions of the order approving the DIP/Exit Facility shall govern.

**Y.    Severability.**

105.    Each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (i) valid and enforceable in accordance with its terms, (ii) integral to the Plan and may not be deleted or modified except in accordance with Section 13.9 of the Plan, and (iii) non-severable and mutually dependent.

**Z.    Post-Confirmation Notices.**

106.    In accordance with Bankruptcy Rules 2002 and 3020(c), within five (5) business days following the Effective Date, the Debtor shall cause a notice of Confirmation and occurrence of the Effective Date (the "Notice of Confirmation and Effective Date") to be served by United States mail, first-class postage prepaid, by hand, or by overnight courier service to all parties served with the notice of the Confirmation Hearing, as such list may have been amended by the Reorganized Debtor. Mailing of the notice described in this paragraph in the time and manner set forth in this paragraph will be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c). The Notice of Confirmation and Effective Date shall

52

provide notice of the Administrative Claims Bar Date and other deadlines for action in the Plan for parties other than the Debtor or the Reorganized Debtor.

107. From and after the Effective Date, any person seeking relief from the Bankruptcy Court in the Bankruptcy Case shall be required to provide notice only to the Reorganized Debtor and the United States Trustee (and their respective counsel); any person whose rights are directly affected by the relief sought, and to other parties in interest who, after entry of the Confirmation Order, file a request for such notice with the clerk of the Bankruptcy Court and serve a copy of such notice on counsel to the Reorganized Debtor. No further notice is necessary.

## AA. <u>Retention of Jurisdiction.</u>

108. Notwithstanding the entry of this Confirmation Order, from and after the Effective Date, this Bankruptcy Court shall, to the fullest extent legally permissible, retain exclusive jurisdiction over the Bankruptcy Case and all matters arising under, arising out of, or related to, the Bankruptcy Case, including all matters listed in <u>Article XII</u> of the Plan. To the extent it is not legally permissible for the Bankruptcy Court to have exclusive jurisdiction over any of the foregoing matters, the Bankruptcy Court shall have non-exclusive jurisdiction over such matters to the fullest extent legally permissible.

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 53 of 145

**BB.** **Waiver of 14-Day Stay.**

109.    Notwithstanding any Bankruptcy Rule (including, without limitation, Bankruptcy Rules 3020(e), 6004(h), 6006(d), and 7062), this Confirmation Order is effective immediately and not subject to any stay, sufficient cause having been shown.

**CC.** **Post-Confirmation Modification of Plan.**

110.    The Debtor is hereby authorized to amend or modify the Plan at any time prior to the substantial consummation of the Plan, but only in accordance with section 1127 of the Bankruptcy Code and Section13.9 of the Plan, without further order of this Bankruptcy Court.

**DD.** **Final Order.**

111.    This Confirmation Order is a Final Order and the period in which an appeal must be filed will commence upon entry of this Confirmation Order.

112.    This Confirmation Order shall supersede any order of the Bankruptcy Court issued prior to the Confirmation Date that expressly conflicts with this Confirmation Order.

**EE.** **Reversal.**

113.    If any of the provisions of this Confirmation Order are hereafter reversed, modified, or vacated by a subsequent order of the Bankruptcy Court or any

54

other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under, or in connection with, the Plan prior to receipt of written notice of such order by the Debtor, including without limitation the payment of any Administrative Claims or Allowed Claims or the execution and implementation of the DIP/Exit Facility. Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such acts or obligations incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the Effective Date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order, the Plan, and all documents relating to the Plan.

**FF.** **Governing Law.**

114.   Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Hawaii, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, such as the DIP/Exit Facility, in which case the governing law of such agreement shall control).

55

APPROVED AS TO FORM:


/s/ Ted N. Pettit
TED N. PETTIT, ESQ.
Counsel for Official Committee of Unsecured Creditors


/s/ Bruce D. Voss
BRUCE D. VOSS, ESQ.
MATTHEW SHANNON, ESQ.
Counsel for Bridge Aina Leʻa, LLC


/s/ Francis P. Hogan
FRANCIS P. HOGAN, ESQ.
Counsel for Libo Zhang


/s/ Marguerite S.N. Fujie
MARGUERITE S. N. FUJIE, ESQ.
Counsel for Romspen Investment
Corporation

Submitted by:

CHOI & ITO
Attorneys at Law

CHUCK C. CHOI
ALLISON A. ITO
700 Bishop Street, Suite 1107
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Fax: (808) 566-6900
Email: cchoi@hibklaw.com
        aito@hibklaw.com


ROBBINS, SALOMON & PATT, LTD.
STEVE JAKUBOWSKI
180 N. La Salle Street, Ste. 3300
Chicago, Illinois 60601
Telephone: (312) 782-9000
Fax: (312) 782-6690
Email: SJakubowski@rsplaw.com

# EXHIBIT A

(First Amended Plan - April 29, 2019)

CHOI & ITO
Attorneys at Law

CHUCK C. CHOI
ALLISON A. ITO
700 Bishop Street, Suite 1107
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Fax: (808) 566-6900
Email: cchoi@hibklaw.com;
aito@hibklaw.com

ROBBINS, SALOMON & PATT, LTD
STEVE JAKUBOWSKI
180 N. La Salle Street, Ste. 3300
Chicago, Illinois 60601
Telephone: (312) 782-9000
Fax: (312) 782-6690
Email: SJakubowski@rsplaw.com

Attorneys for Debtor
and Debtor-in-Possession

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>AINA LEʻA, INC.,<br><br>Debtor and<br>Debtor-in-Possession. | BK. NO. 17-00611<br>(Chapter 11)<br><br>Confirmation Hearing: March 13, 2019<br>Time: 9:30 a.m.<br>Judge: Hon. Robert J. Faris |

## FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION OF AINA LEʻA, INC., DATED APRIL 29, 2019

# TABLE OF CONTENTS

ARTICLE I      SUMMARY OF THE PLAN ..................................................................1

ARTICLE II      DEFINITIONS, RULES OF INTERPRETATION,
AND CONSTRUCTION OF TERMS ........................................1

ARTICLE III      DESIGNATION OF CLAIMS AND INTERESTS ...............................2
3.1      Summary.........................................................................................2
3.2      Identification of Classes.................................................................3
3.3      Unimpaired Classes Deemed to Accept Plan.................................4
3.4      Impaired Classes Entitled to Vote.................................................4
3.5      Impaired Classes Deemed to Reject..............................................5
3.6      Elimination of Classes for Voting Purposes .................................5
3.7      Controversy Concerning Classification, Impairment or
Voting Rights .................................................................................5

ARTICLE IV      TREATMENT OF UNCLASSIFIED CLAIMS ................................5
4.1      Administrative Expense Claims.....................................................5
4.2      Ordinary Course Liabilities...........................................................6
4.3      Tax Claims.....................................................................................6

ARTICLE V      CLASSIFICATION AND TREATMENT OF CLASSIFIED
CLAIMS AND INTERESTS .......................................................7
5.1      Class 1: Other Priority Unsecured Claims ...................................7
5.2      Class 2A: Secured Claims of Romspen ........................................7
5.3      Class 2B: Secured Claims of Bridge............................................10
5.4      Class 2C: Secured Claims of Zhang .............................................13
5.5      Class 2D: Other Secured Claims ..................................................15
5.6      Class 3A: General Unsecured Claims ..........................................15
5.7      Class 3B: Other Unsecured Claims ..............................................16
5.8      Class 4: Common Stock Equity Interests .....................................16
5.9      Class 5: Other Interests ................................................................17

ARTICLE VI      MEANS FOR IMPLEMENTATION OF THE PLAN .......................17
6.1      Continued Corporate Existence.....................................................17
6.2      Management and Board of Directors.............................................17
6.3      Post-Effective Date Rights and Operations ..................................18
6.4      The Closing...................................................................................18
6.5      Preservation of Rights of Action ..................................................18
6.6      Cancellation and Surrender of Instruments, Securities, and Other
Documentation ..............................................................................19
6.7      Transfer of Ownership Interests of Land Trust One and
Land Trust Two for Preferred Stock .............................................19

U.S. Bankruptcy Court - Hawaii  #17-00611  Dkt # 474  Filed  05/24/19  Page 60 of 145

| | | |
|---|---|---|
| **ARTICLE VII** | **PROVISIONS GOVERNING RESOLUTION OF CLAIMS** | |
| | **AND EQUITY INTERESTS AND DISTRIBUTIONS OF** | |
| | **PROPERTY UNDER THE PLAN**........................20 | |
| **7.1** | **Right to Object to Claims**........................20 | |
| **7.2** | **Deadline for Responding to Claim Objections**........20 | |
| **7.3** | **Right to Request Estimation of Claims**................20 | |
| **7.4** | **Distribution Procedures Regarding Allowed Claims**........21 | |
| **7.5** | **Use of DIP/Exit Facility Loan Proceeds**................23 | |
| **7.6** | **No Interest on Claims**........................23 | |
| **7.7** | **Distributions Only On Timely-Filed, Allowed Claims**........23 | |
| **7.8** | **Record Date For Distributions**........................23 | |
| **7.9** | **Fractional Securities**........................24 | |
| | | |
| **ARTICLE VIII** | **EXECUTORY CONTRACTS**........................24 | |
| **8.1** | **Assumption of Executory Contracts**................24 | |
| **8.2** | **Rejection of Executory Contracts**................24 | |
| **8.3** | **Procedures Related to Assumption of Executory Contracts**........25 | |
| **8.4** | **Rejection Claim Bar Date**........................26 | |
| | | |
| **ARTICLE IX** | **EFFECT OF REJECTION BY ONE OR MORE CLASSES**........27 | |
| **9.1** | **Impaired Classes Entitled to Vote**................27 | |
| **9.2** | **Acceptance by Class**........................27 | |
| **9.3** | **Reservation of Cramdown Rights**................27 | |
| | | |
| **ARTICLE X** | **EFFECT OF CONFIRMATION**........................27 | |
| **10.1** | **Legally Binding Effect**........................27 | |
| **10.2** | **Vesting of Property of Debtor in Reorganized Debtor**........28 | |
| | | |
| **ARTICLE XI** | **INJUNCTIONS, RELEASES, AND DISCHARGE**........28 | |
| **11.1** | **Compromise and Settlement of Claims, Interests, and** | |
| | **Controversies**........................28 | |
| **11.2** | **Release of Liens**........................29 | |
| **11.3** | **Subordinated Claims**........................29 | |
| **11.4** | **Debtor Release**........................29 | |
| **11.5** | **Exculpation**........................31 | |
| **11.6** | **Injunction**........................31 | |
| **11.7** | **Waiver of Statutory Limitations on Releases**........34 | |
| **11.8** | **Setoffs**........................34 | |
| | | |
| **ARTICLE XII** | **RETENTION OF JURISDICTION**........................35 | |
| **12.1** | **Exclusive Bankruptcy Court Jurisdiction**................35 | |
| **12.2** | **Limitation on Jurisdiction**........................36 | |
| | | |
| **ARTICLE XIII** | **MISCELLANEOUS PROVISIONS**........................37 | |
| **13.1** | **Conditions to Confirmation**........................37 | |
| **13.2** | **Conditions to Plan Effectiveness**................37 | |
| **13.3** | **Waiver of Conditions**........................38 | |

| | | |
|---|---|---|
| 13.4 | Exemption from Transfer Taxes | 38 |
| 13.5 | Securities Exemption | 38 |
| 13.6 | Post-Effective Date Fees and Expenses | 39 |
| 13.7 | Post-Effective Date Notice Limited | 39 |
| 13.8 | Dissolution of Committee | 39 |
| 13.9 | Defects, Omissions and Amendments of the Plan | 39 |
| 13.10 | Withdrawal of Plan | 40 |
| 13.11 | Due Authorization By Holders of Claims and Interests | 40 |
| 13.12 | Filing of Additional Documentation | 40 |
| 13.13 | Governing Law | 40 |
| 13.14 | Successors and Assigns | 41 |
| 13.15 | Transfer of Claims | 41 |
| 13.16 | Notices | 41 |
| 13.17 | U.S. Trustee Fees | 43 |
| 13.18 | Implementation | 43 |
| 13.19 | No Admissions | 43 |
| **ARTICLE XIV** | **SUBSTANTIAL CONSUMMATION** | **43** |
| 14.1 | Substantial Consummation | 43 |
| 14.2 | Final Decree | 43 |

## EXHIBITS TO THE PLAN

Glossary of Defined Terms ................................................................. Exhibit A

Schedule of Assumed Contracts and Unexpired Leases ......................... Exhibit B

Retained Rights of Action ............................................................... Exhibit C

Form of Rights and Preferences for
Series A Convertible Preferred Stock ................................................. Exhibit D

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 62 of 145

Aina Le'a, Inc., the debtor and debtor-in-possession (the "Debtor") in the above-captioned Bankruptcy Case, proposes this First Amended Plan of Reorganization of the Debtor, dated April 29, 2019. Reference is made to the Disclosure Statement Pursuant to 11 U.S.C. § 1125 in Support of the Plan of Reorganization of the Debtor for a discussion of the Debtor's history, business, property and results of operations, and for a summary of the Plan and certain related matters. The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL CREDITORS OF AND HOLDERS OF INTERESTS IN THE DEBTOR ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019 AND THE PLAN, THE DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.

Capitalized terms used herein shall have the meanings set forth in Exhibit A hereto. All Exhibits to the Plan, including the documents included in any Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein.

## ARTICLE I
## SUMMARY OF THE PLAN

An overview of the Plan is set forth in the Disclosure Statement. Generally, the Plan contemplates that, prior to the Effective Date, the Debtor will raise not less than $2,500,000 through the DIP/Exit Facility. Following the Effective Date, the Debtor projects sufficient future cash flows generated from sales in the Lulana Gardens Development Project to be sufficient to pay in full all amounts owing by the Debtor under the Plan.

## ARTICLE II
## DEFINITIONS, RULES OF INTERPRETATION,
## AND CONSTRUCTION OF TERMS

All capitalized terms not defined elsewhere in the Plan shall have the meanings assigned to them in the Glossary of Defined Terms attached as Exhibit A hereto. Any capitalized term used in the Plan that is not defined herein has the meaning ascribed to that term in the Bankruptcy Code and/or Bankruptcy Rules.

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 63 of 145

For purposes of the Plan, any reference in the Plan to an existing document or exhibit filed or to be filed means that document or exhibit as it may have been or may be amended, supplemented, or otherwise modified.

The words "herein," "hereof" and "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan, unless the context requires otherwise. Whenever from the context it appears appropriate, each term stated in either the singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender include the masculine, feminine, and the neuter.

The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

Captions and headings to articles, sections and exhibits are inserted for convenience of reference only and are not intended to be part of or to affect the interpretation of the Plan.

The rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE III
## DESIGNATION OF CLAIMS AND INTERESTS

### 3.1   Summary

Pursuant to section 1122 of the Bankruptcy Code, a Claim or Interest is placed in a particular Class for purposes of voting on the Plan and receiving Distributions under the Plan only to the extent (i) the Claim or Interest qualifies within the description of that Class; (ii) the Claim or Interest is an Allowed Claim or Allowed Interest in that Class, and is classified in another Class or Classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other Class or Classes; and (iii) the Claim or Interest has not been paid, released, or otherwise compromised before the Effective Date. Notwithstanding anything to the contrary contained in the Plan, no Distribution shall be made on account of any Claim or Interest which is not an Allowed Claim or Allowed Interest until such Claim or Interest becomes an Allowed Claim or Allowed Interest pursuant to a Final Order. In accordance with section 1123(a)(1) of the Bankruptcy Code,

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 64 of 145

Administrative Claims, Professional Compensation Claims, and Priority Tax Claims are not classified under the Plan.

### 3.2 Identification of Classes

(a) <u>Classified Claims and Interests</u>: The following is a designation of the classes of Claims and Interests under the Plan:

| Class | Nature of Claim or Ownership / Interest | Status | Estimated Aggregate Claims / Interests | Percent Recovery |
|-------|------------------------------------------|--------|----------------------------------------|------------------|
| Class 1 | Other Priority Unsecured Claims | Unimpaired (Deemed Acceptance) | $51,400 | 100% |
| Class 2A | Secured Claims of Romspen | Impaired (Entitled to Vote) | $13,300,000 | 100% |
| Class 2B | Secured Claims of Bridge | Impaired (Entitled to Vote) | $20,103,722.55 | 100% |
| Class 2C | Secured Claims of Libo Zhang | Impaired (Entitled to Vote) | $6,493,995.24 | 100% |
| Class 2D | Other Secured Claims | Unimpaired (Deemed Acceptance) | -- | 100% |
| Class 3A | General Unsecured claims | Impaired (Entitled to Vote) | $13,200,000 | 100% |
| Class 3B | Other Unsecured Claims | Impaired (Entitled to Vote) | $0 | 100% |
| Class 4 | Common Stock Interests | Unimpaired (Deemed Acceptance) | 9,108,056 Common Shares | 100% |
| Class 5 | Other Interests | Impaired (Deemed Rejection) | -- | No |

(b) <u>Unclassified Claims and Interests</u>: In accordance with section 1123(a)(1) of the Bankruptcy Code, Allowed Administrative Expense Claims

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 65 of 145

(including Professional Fee Claims) and Allowed Tax Claims are not classified and are excluded from the Classes designated in this Article III of the Plan. The treatment accorded Allowed Administrative Expense Claims, Professional Fee Claims, and Allowed Priority Tax Claims is set forth in Article IV of the Plan.

| Unclassified Claims | Plan Treatment | Estimated Aggregate Claims | Percent Recovery |
|---|---|---|---|
| Administrative Claims | Unimpaired | $1,000,000 | 100% |
| Professional Fee Claims | Unimpaired | $1,575,000 | 100% |
| Secured and Franchise Tax Claims | Unimpaired | $750,000 | 100% |

### 3.3  Unimpaired Classes Deemed to Accept Plan

The Plan classifies the following unimpaired claims that are not entitled to vote on the Plan. Pursuant to section 1126(f) of the Bankruptcy Code, each Holder of a Claim in the following Classes is conclusively presumed to have accepted the Plan in respect of such Claims, and is not entitled to vote to accept or reject the Plan:

Class 1:       Other Priority Unsecured Claims

Class 2D:     Other Secured Claims

Class 4:       Common Stock Interests

### 3.4  Impaired Classes Entitled to Vote

The Plan classifies the following Classes as the only Impaired Classes that are entitled to vote to accept or reject the Plan:

Class 2A:     Secured Claims of Romspen

Class 2B:     Secured Claims of Bridge

Class 2C:     Secured Claims of Zhang

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 66 of 145

Class 3A:    General Unsecured Claims

Class 3B:    Other Unsecured Claims

**3.5    Impaired Classes Deemed to Reject**

The Plan classifies the following Class as an Impaired Class that is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

Class 5:    Allowed Other Interests

**3.6    Elimination of Classes for Voting Purposes**

Any Class of Claims or Interests that is not occupied as of the date of the commencement of the Confirmation Hearing by an Allowed Claim, an Allowed Interest, or a Claim or Interest temporarily allowed for voting on the Plan under Rule 3018 of the Bankruptcy Rules shall be deemed deleted from the Plan for purposes of voting on acceptance or rejection of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

**3.7    Controversy Concerning Classification, Impairment or Voting Rights**

Any controversy or dispute related to the classification, impairment or voting rights of any Creditor or Interest Holder under the Plan must be determined by the Bankruptcy Court after notice and a hearing prior to the Confirmation Hearing. Without limiting the foregoing, the Bankruptcy Court may estimate for voting purposes: (i) the amount of any contingent or unliquidated Claim, the fixing or liquidation of, as the case may be, would unduly delay the administration of the Bankruptcy Case; and (ii) any right to payment arising from an equitable remedy for breach of performance.

## ARTICLE IV
## TREATMENT OF UNCLASSIFIED CLAIMS

**4.1    Administrative Expense Claims**

(a)    <u>Generally</u>:  Except to the extent the Holder agrees to other, lesser treatment, each Holder of an Allowed Administrative Claim shall be paid cash in respect of such Claim equal to the unpaid portion of such Allowed Administrative Expense Claim.  The Allowed Administrative Expense Claim shall be payable within the later of: (i) ten (10) days after the Effective Date, or (ii) ten (10) days after the date on which such Claim becomes an Allowed Administrative Expense Claim.

U.S. Bankruptcy Court - Hawaii  #17-00611  Dkt # 474  Filed  05/24/19  Page 67 of 145

(b)  <u>Statutory Fees</u>:  All fees payable pursuant to 28 U.S.C. § 1930 shall be paid in cash when due. Post-Effective Date U.S. Trustee fees and post-confirmation reports shall be paid and filed as required by 28 U.S.C. § 1930 until the Bankruptcy Case is closed, converted or dismissed.

(c)  <u>Professionals</u>:  Except to the extent a Professional agrees to other, lesser treatment, all Professionals or other Persons requesting compensation or reimbursement of expenses from the Debtor pursuant to Sections 327, 328, 330, 331, 503(b) and 1102 of the Code (including any professional or entity requesting compensation for making a substantial contribution in the Bankruptcy Case), shall be paid cash, in respect of such Claim, equal to the unpaid portion of such Allowed Professional Fee and Expense Claim approved by the Bankruptcy Court.

The payment of an Allowed Administrative Expense Claim pursuant to this Section 4.1 shall be in full satisfaction, settlement release and discharge of, and in exchange for such Allowed Administrative Expense Claim.

## 4.2  Ordinary Course Liabilities

A Holder of an Ordinary Course Liability is not required to file or serve any request for payment of the Ordinary Course Liability.  Notwithstanding the provisions of Section 4.1(a) hereof, the Debtor shall continue to pay each Ordinary Course Liability accrued but not yet due and payable as of the Effective Date pursuant to the payment terms and conditions of the particular transaction giving rise to the Ordinary Course Liability.

## 4.3  Tax Claims

Each Holder of an Allowed Tax Claim, including Allowed Priority Tax Claims, shall receive deferred cash payments over a period not exceeding five years after the Petition Date, in an aggregate amount equal to the amount of such Allowed Tax Claim, plus interest from the Effective Date at the statutory rate on the unpaid portion thereof, without penalty of any kind.  The payment of each such Allowed Tax Claim shall be made in equal semi-annual installments, with the first installment due on the latest of (i) the first business day following the end of the first full fiscal quarter following the Effective Date, (ii) the first business day following the end of the first full fiscal quarter following the date on which an order Allowing such Tax Claim becomes a Final Order, and (iii) such other time or times as may be agreed with the Holder of such Allowed Tax Claim.  Each installment shall include simple interest on the unpaid balance of the Allowed Secured Tax Claim, without

6

penalty of any kind. Projected Allowed Tax Claims as of the Effective Date of $530,643 represent only the principal amount due and do not include Claims thereon for interest and penalties.

The payments provided hereunder in respect of Allowed Tax Claims shall be in full satisfaction, settlement, release and discharge of, and in exchange for, such Claims.

## ARTICLE V
## CLASSIFICATION AND TREATMENT
## OF CLASSIFIED CLAIMS AND INTERESTS

### 5.1    Class 1:  Other Priority Unsecured Claims

Each Holder of an Allowed Other Priority Unsecured Claim shall receive deferred cash payments over a period not exceeding five years after the Petition Date, in an aggregate amount equal to the amount of such Allowed Other Priority Unsecured Claim, plus interest from the Effective Date at the Federal Judgment Rate on the unpaid portion thereof, without penalty of any kind.  The payment of each such Allowed Other Priority Unsecured Claim shall be made in equal semi-annual installments, with the first installment due on the latest of (i) the first business day following the end of the first full fiscal quarter following the Effective Date, (ii) the first business day following the end of the first full fiscal quarter following the date on which an order Allowing such Other Priority Unsecured Claim becomes a Final Order, and (iii) such other time or times as may be agreed with the Holder of such Allowed Other Priority ax Claim.  Each installment shall include simple interest on the unpaid balance of the Allowed Other Priority Unsecured Claim, without penalty of any kind.

The payments provided hereunder in respect of Allowed Other Priority Unsecured Claims shall be in full satisfaction, settlement, release and discharge of, and in exchange for, such Claims.

### 5.2    Class 2A: Secured Claims of Romspen

(a)    <u>Classification</u>: Class 2A consists of all Allowed Secured Claims of Romspen..

(b)    <u>Treatment</u>: Pursuant to stipulation between the Debtor and Romspen (dkt. #461), the treatment of the Allowed Class 2A Secured Claims of Romspen shall be as follows

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 69 of 145

      (i)   <u>If Class 2A Votes to Accept the Plan:</u>

      (A)   The Class 2A Secured Claim shall be fixed and Allowed in the aggregate amount of $13,300,000.00 as of the Effective Date; provided, however, that if the Reorganized Debtor or its designee tenders $12,700,000 cash to the holder of the Class 2A Secured Claim on or before November 30, 2019, then the entirety of the Class 2A Secured Claim, including accrued interest thereon, shall be deemed paid in full.

      (B)   Interest shall accrue on the Allowed Class 2A Secured Claim at 12.5% per annum after the Effective Date. The Allowed Class 2A Secured Claim, plus accrued interest on the principal amount of the Allowed Class 2A Secured after the Effective Date, shall be paid in full within six (6) months following the satisfaction of all Governmental Development Conditions, but no later than two years following the Effective Date.

      (C)   Notwithstanding any other provision in the Plan, the Liens on Parcel D-1-B-2, which parcel secures the Allowed Class 2A Secured Claim shall continue to secure the Allowed Class 2A Secured Claim (including post-Effective Date payments due under this Section 5.2(b)(i) of the Plan) even after the transfer of that parcel on the Effective Date into a wholly-owned subsidiary of the Debtor.

      (D)   Nothing herein shall prevent the Holder of the Allowed Class 2A Secured Claim from pursuing all remedies available to it under state law, without the need for leave of the Bankruptcy Court, if the Reorganized Debtor shall not have paid the Allowed Class 2A Secured Claim in full on or before the second anniversary of the Effective Date, and Debtor shall execute and deposit with an independent escrow agent a binding agreement and stipulation ("<u>Stipulation and Order</u>") to provide for: (i) expedited processing of a state court foreclosure action on the mortgage lien against Lot D-1-B-2; and (ii) Debtor's binding agreement not to object to, restrain, impede, hinder, or impair in any manner whatsoever, Romspen's pursuit and completion of such state court foreclosure action, which Stipulation and Order shall be delivered to the Holder of the Allowed Class 2A Secured Claim for filing in the state court foreclosure action if full repayment is not made on or before the second anniversary of the Effective Date. ..

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 70 of 145

(E)     Upon payment of all amounts due and owing on account of the Allowed Class 2A Secured Claim, the Reorganized Debtor and its Related Parties shall be deemed released and discharged from all Claims or Rights of Action against the Reorganized Debtor and its Related Parties on account of such Allowed Class 2A Secured Claim. Excluding the Allowed Class 2A Claim of Romspen and the treatment of such Claim hereunder, the Debtor and Romspen shall provide mutual releases of all claims against one another and their respective Insiders, attorneys, and agents

(F)     The Reorganized Debtor shall timely pay all real property taxes assessed on 2A-Encumbered Property after the Effective Date.

(ii)    If Class 2A Votes to Reject the Plan:

(A)  If Class 2A votes to reject the Plan, then the Holder of Allowed Class 2A Secured Claims, including all interest accruing on the principal balance of said Claim after the Effective Date at 5.64% per annum, shall be paid in full no later than twenty-four (24) months following the satisfaction of all Governmental Development Conditions, but in no event later than five (5) years after the Effective Date.

(B)  Notwithstanding any other provision in the Plan, the Liens on Parcel D-1-B-2, which parcel secures the Allowed Class 2A Secured Claims shall continue to secure Allowed Class 2A Secured Claims (including post-Effective Date payments due under this Section 5.2(b)(ii) of the Plan) even after the transfer of that parcel on the Effective Date into a wholly-owned subsidiary of the Debtor; provided, that, if the Reorganized Debtor sells any sub-parcel of 2A Encumbered Property, then (x) the Net Sales Proceeds from such sale shall be applied 100% to any remaining unpaid balance due under the Plan on account of Allowed Class 2A Secured Claims, and (y) the Lien securing the Allowed Class 2A Secured Claims shall be released and discharged in respect of the 2A-Encumbered Property sold upon the receipt by the Holder of the Allowed Class 2A Secured Claims of said Net Sales Proceeds.

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 71 of 145

(C) Upon payment of all amounts due and owing on account of the Allowed Class 2A Secured Claims, the Reorganized Debtor and its Related Parties shall be deemed released and discharged from all Claims or Rights of Action against the Reorganized Debtor and its Related Parties on account of such Allowed Class 2A Secured Claims.

(D) The Reorganized Debtor shall timely pay all real property taxes assessed on 2A-Encumbered Property after the Effective Date.

(E) Upon payment of all amounts due and owing on account of the Allowed Class 2A Secured Claims, the Reorganized Debtor and its Related Parties shall be deemed released and discharged from all Claims or Rights of Action against the Reorganized Debtor and its Related Parties on account of such Allowed Class 2A Secured Claims.

### 5.3 Class 2B: Secured Claims of Bridge

(a) <u>Classification</u>: Class 2B consists of all Allowed Secured Claims of Bridge.

(b) <u>Treatment</u>: Pursuant to stipulation between the Debtor and Bridge (dkt. #454), the treatment of the Allowed Class 2B Secured Claims of Bridge shall depend on whether Bridge votes to accept or to reject the Plan.

(i) <u>If Class 2B Votes to Accept the Plan</u>:

(A) The Holder of the Class 2B Secured Claims shall be deemed to hold an Allowed Class 2B Secured Claim in the amount of $20,000,000.00. Interest shall accrue on said Allowed Class 2B Secured Claim after the Effective Date at 10.2% per annum.

(B) The Holder of Allowed Class 2B Secured Claims, including all accrued interest under Section 5.3(b)(i)(A) hereof, shall be paid a lump sum payment of all amounts remaining due and owing under the Plan on account of such Allowed Class 2B Secured Claim on the fifth anniversary following the Effective Date. Interim payments shall be paid on account of the Allowed Class 2B Secured Claim from Net Distributable Cash Flows, which shall be split, pro rata based on the Allowed amount of the respective Claims in each Class, among (A)

the Allowed Class 2B Secured Claim, (B) the Allowed Class 2C Secured Claim, and (C) the aggregate Allowed Class 3A General Unsecured Claims.

(C)     Notwithstanding any other provision in the Plan, the Liens on property securing the Allowed Class 2B Secured Claim shall continue to secure the Allowed Class 2B Secured Claim (including post-Effective Date payments due under this Section 5.3(b)(i) of the Plan); provided, that, if the Reorganized Debtor sells any portion (each, a "sub-parcel") of the property encumbered by the Liens securing the Allowed Class 2B Secured Claim (the "2B-Encumbered Property"), then unless the Allowed Class 2B Secured Claim has been paid in full or will be paid in full from the proceeds of such sale: (i) the gross sale price of such sub-parcel shall be greater than or equal to the product of (x) the number of acres represented by such sub-parcel divided by 1,011 and (y) $40,800,000; (ii) the Net Sales Proceeds from such sale shall be applied 80% to any remaining unpaid balance due under the Plan on account of the Allowed Class 2B Secured Claim and 20% shall be retained by the Reorganized Debtor; and (iii) the Lien securing the Allowed Class 2B Secured Claim shall be released and discharged in respect of the 2B-Encumbered Property sold upon the receipt by the Holder of the Allowed Class 2B Secured Claim of 80% of said Net Sales Proceeds.

(D)     Upon payment of all amounts due and owing on account of the Allowed Class 2B Secured Claim, the Reorganized Debtor and its Related Parties shall be deemed released and discharged from all Claims or Rights of Action against the Reorganized Debtor and its Related Parties on account of such Allowed Class 2B Secured Claim.

(E)     All Claims that were or could have been asserted by the Debtor against Bridge at any time prior to the Effective Date shall be deemed released on the Effective Date.

(F)     Except as provided in this Section 5.3(b), all Claims that were or could have been asserted by Bridge against the Debtor at any time prior to the Effective Date shall be deemed released on the Effective Date.

(G)    The $2 million in proceeds held by Old Republic Title Company pursuant to the Road/Intersection Escrow Agreement shall remain in escrow and shall be used for payment of intersection construction costs permitted under that agreement.

(H)    The Reorganized Debtor shall timely pay all real property taxes assessed on 2B-Encumbered Property after the Effective Date.

(I)    The Reorganized Debtor shall reimburse Bridge within thirty (30) days after the Effective Date in the amount of $103,722.55 on account of real property taxes paid by Bridge in respect of the properties that secure the Allowed Class 2B Secured Claim.

(ii)    <u>If Class 2B Votes to Reject the Plan:</u>

(A)    If Class 2B votes to reject the Plan, then the Holder of the Allowed Class 2B Secured Claims, including all interest accruing on the principal balance of said Claim after the Effective Date at 5.64% per annum, shall be paid a lump sum payment of all remaining amounts due and owing under the Plan on account of such Allowed Class 2B Secured Claims on the fifth anniversary of the Effective Date.

(B)    Notwithstanding any other provision in the Plan, the Liens on property securing the Allowed Class 2B Secured Claims shall continue to secure Allowed Class 2B Secured Claims (including post-Effective Date payments due under this Section 5.3(b)(ii) of the Plan); provided, that, if the Reorganized Debtor sells any sub-parcel of 2B Encumbered Property, then (x) the Net Sales Proceeds from such sale shall be applied 100% to any remaining unpaid balance due under the Plan on account of Allowed Class 2B Secured Claims, and (y) the Lien securing the Allowed Class 2B Secured Claims shall be released and discharged in respect of the 2B-Encumbered Property sold upon the receipt by the Holder of the Allowed Class 2B Secured Claims of said Net Sales Proceeds.

(C)    Upon payment of all amounts due and owing on account of the Allowed Class 2B Secured Claims, the Reorganized Debtor and its Related Parties shall be deemed released and discharged from all Claims or Rights of Action against the Reorganized Debtor and its Related Parties on account of such Allowed Class 2B Secured Claims.

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 74 of 145

(D)    The Reorganized Debtor shall timely pay all real property taxes assessed on 2B-Encumbered Property after the Effective Date.

### 5.4    Class 2C: Secured Claims of Zhang

(a)    <u>Classification</u>: Class 2C consists of all Allowed Secured Claims of Zhang.

(b)    <u>Treatment</u>:  Pursuant to stipulation between the Debtor and Zhang (dkt. #417), the treatment of the Allowed Class 2C Secured Claims of Zhang shall depend on whether Zhang votes to accept or to reject the Plan.

(i)    <u>If Class 2C Votes to Accept the Plan</u>:

(A)    The Holder of the Class 2C Secured Claims shall be deemed to hold a fully-secured Allowed Secured Claim in the amount of $6,493,995.24.

(B)    The Holder of Allowed Class 2C Secured Claims, including all interest accruing on the principal balance of said Claims after the Petition Date at 12% per annum, shall be paid by a lump sum payment of all amounts remaining due and owing under the Plan on account of such Allowed Class 2C Secured Claims not later than the fifth anniversary following the Effective Date. Interim payments from Net Distributable Cash Flows shall be split, pro rata based on the Allowed amount of the respective Claims in each Class, among (A) Class 2B Allowed Secured Claims, (B) Class 2C Allowed Secured Claims, and (C) Class 3A Allowed General Unsecured Claims.

(C)    Notwithstanding any other provision in the Plan, the Liens on Parcel D-1-B-1, which parcel secures the Allowed Class 2C Secured Claims, shall continue to secure Allowed Class 2C Secured Claims (including post-Effective Date payments due under this Section 5.4(b)(i) of the Plan) even after the transfer of that parcel on the Effective Date into a wholly-owned subsidiary of the Debtor.

(D)    In the event that the Reorganized Debtor or any Related Party obtains a construction loan (including any loan to finance the subdivision, construction of infrastructure, lot pads or residences, for the development of Parcel D-1-B-1, all amounts outstanding on the Allowed Class 2C Secured Claims, including all accrued interest, shall

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 75 of 145

be paid from the first draw or initial disbursement of such loan. No sale of any sub-parcel of Parcel D-1-B-1 shall be permitted until all amounts owing with respect to the Allowed Class 2C Secured Claims have been paid in full.

(E)     In the event that the Allowed Class 2C Secured Claims have not been paid in full by the Fifth Anniversary of the Effective Date, or in the event the Reorganized Debtor or any Related Party breaches its obligations under subparagraph 5.4(b)(i)(D) above, the Holder of the Allowed Class 2C Claims shall be permitted to exercise any and all remedies available to such Holder under the Zhang Agreements.

(F)     Upon payment of all amounts due and owing on account of the Allowed Class 2C Secured Claims, the Reorganized Debtor and its Related Parties shall be deemed released and discharged from all Claims or Rights of Action against the Reorganized Debtor and its Related Parties on account of such Allowed Class 2C Secured Claims.

(G)     Notwithstanding anything in Section 7.1 of the First Amended Plan of Reorganization, the Class 2C Secured Claim shall not be subject to objection by the Reorganized Debtor as to its allowance, priority, amount or classification, or to estimation by the Bankruptcy Court pursuant to 11U.S.C. §502(c).

(H)     The Reorganized Debtor shall timely pay all real property taxes assessed on the 2C-Encumbered Property after the Effective Date.

(ii)     If Class 2C Votes to Reject the Plan:

(A)     If Class 2C either votes to reject the Plan, then the Holder of Allowed Class 2C Secured Claims, including all interest accruing on the principal balance of said Claim after the Effective Date at 9.98% per annum, shall be paid a lump sum payment of all remaining amounts due and owing under the Plan on account of such Allowed Class 2C Secured Claims on the fifth anniversary of the Effective Date.

(B)     Notwithstanding any other provision in the Plan, the Liens on Parcel D-1-B-1, which parcel secures the Allowed Class 2C

14

Secured Claims shall continue to secure Allowed Class 2C Secured Claims (including post-Effective Date payments due under this Section 5.4(b)(ii) of the Plan) even after the transfer of that parcel on the Effective Date into a wholly-owned subsidiary of the Debtor; provided, that, if the Reorganized Debtor sells any sub-parcel of 2C Encumbered Property, then (x) the Net Sales Proceeds from such sale shall be applied 100% to any remaining unpaid balance due under the Plan on account of Allowed Class 2C Secured Claims, and (y) the Lien securing the Allowed Class 2C Secured Claims shall be released and discharged in respect of the 2C-Encumbered Property sold upon the receipt by the Holder of the Allowed Class 2C Secured Claims of said Net Sales Proceeds.

(C)    Upon payment of all amounts due and owing on account of the Allowed Class 2C Secured Claims, the Reorganized Debtor and its Related Parties shall be deemed released and discharged from all Claims or Rights of Action against the Reorganized Debtor and its Related Parties on account of such Allowed Class 2C Secured Claims.

(D)    The Reorganized Debtor shall timely pay all real property taxes assessed on 2C-Encumbered Property after the Effective Date.

### 5.5    Class 2D: Other Secured Claims

(a)    <u>Classification</u>: Class 2D consists of all Allowed Other Secured Claims, with each such Claim being designated in its own separate subclass within Class 2D.

(b)    <u>Treatment</u>: Class 2D Other Allowed Secured Claims are not Impaired. Claims of creditors holding perfected and unavoidable first priority liens on specific items of collateral by virtue of a purchase money security interest or financing lease will, in full and final satisfaction of such Allowed Other Secured Claim, be treated in a manner to leave it not Impaired under section 1124 of the Code.

### 5.6    Class 3A: General Unsecured Claims

(a)    <u>Classification</u>: Class 3A consists of all General Unsecured Claims arising or deemed by law or under the Bankruptcy Code to have arisen on or before the Petition Date and owing on account of the Holders thereof having (i) provide goods or services to the Debtor in the ordinary course of business or (ii) advanced credit to the Debtor on an unsecured basis.

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 77 of 145

(b)  Treatment:  Class 3A Allowed General Unsecured Claims, including all interest accruing on the principal balance after the Effective Date at 6% per annum, shall be paid on the tenth anniversary of the Effective Date.  Interim payments from Net Distributable Cash Flows shall be split, pro rata based on the Allowed amount of the respective Claims in each Class, among (i) Class 2B Allowed Secured Claims, (ii) Class 2C Allowed Secured Claims, and (iii) Class 3A Allowed General Unsecured Claims.

### 5.7  Class 3B:  Other Unsecured Claims

(a)  Classification: Class 3B consists of Other Unsecured Claims arising or deemed by law or under the Bankruptcy Code to have arisen on or before the Petition Date that are not cured, paid, released, or waived pursuant to the Plan, assumed by the Reorganized Debtor pursuant to the Plan or agreements incorporated in the Plan, or classified in any other Class of Claims, including, without limitation, (i) Claims based upon guarantees of performance or payment of the obligations or duties of any Person, (ii) Claims for contribution, reimbursement, or indemnity, including Claims arising under Bankruptcy Code section 502(e), (iii) Claims for fines, penalties, or assessments, (iv) Claims for tort liability, (v) Claims arising from the rejection of executory contracts and unexpired leases, including claims under Bankruptcy Code section 502(g), (vi) Claims arising for environmental or bio-hazardous remediation at locations that are not included in the assets vesting in the Reorganized Debtor on the Effective Date, and (vii) claims arising under Bankruptcy Code section 502(h) or from avoidance of transfers or obligations under Bankruptcy Code sections 544, 547, 548, or 549.

(b)  Treatment:  Class 3B Other Unsecured Claims shall be paid in full on the tenth anniversary of the Effective Date, with interest thereon accruing at the Federal Judgment Rate commencing on the date the 3B Other Unsecured Claim is Allowed pursuant to Final Order.

### 5.8  Class 4:  Common Stock Equity Interests

(a)  Classification: Class 4 consists of all Common Stock Equity Interests in the Debtor.

(b)  Treatment: Class 4 Common Stock Interests are not Impaired and Holders thereof shall retain their Common Stock Equity Interests.

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 78 of 145

**5.9    Class 5:  Other Interests**

(a)    <u>Classification</u>: Class 5 consists of all Other Interests in the Debtor, specifically all Interests in the Debtor, except for Allowed Class 5 Common Stock Interests, evidenced by any share certificate or other instrument, whether or not transferable or denominated "stock" (including, without limitation, interests denominated as common stock or preferred stock), or similar security, and any warrant or right (including a right to convert) to purchase or subscribe to any such ownership interest, and any right of redemption.  Class 5 includes all Allowed Claims arising under section 510(b) of the Code, all Allowed Claims arising from the rejection of agreements granting such Class 5 Other Interests (to the extent, if any, that they constitute executory contracts), and any Allowed Claims based on indemnification rights.

(b)    <u>Treatment</u>: Class 5 Other Interests are not Impaired.  Holders of Allowed Class 5 Other Interests shall receive or retain no property or distributions on account of such Allowed Claims or Allowed Other Interests.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

**6.1    Continued Corporate Existence**

Except as otherwise provided in the Plan, the Reorganized Debtor will continue to exist after the Effective Date as a corporate entity, with all of the powers of a corporation under applicable law in the jurisdiction in which the Debtor is incorporated and pursuant to its certificate of incorporation and bylaws or other organizational documents in effect before the Effective Date, as such documents are amended by or pursuant to the Plan.

**6.2    Management and Board of Directors**

The Reorganized Debtor shall have the following board members on the Effective Date:  Robert J. Wessels, Richard P. Bernstein, Zheng Wu, and Jeffrey B. Berger.  Robert J. Wessels shall be designated by the Debtor as Chief Executive Officer and Chairman of the Reorganized Debtor.  Richard P. Bernstein, Esq. shall be designated by the Debtor as the General Counsel, Secretary, and Director of the Reorganized Debtor.

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 79 of 145

### 6.3 Post-Effective Date Rights and Operations

The Reorganized Debtor, among other things, may: (a) sell, lease, license, and/or dispose of any of the assets in the ordinary course of business (other than the Rights of Action); (b) institute, prosecute, settle, compromise, abandon or release all Rights of Action; (c) prosecute objections to claims filed against the Debtors (subject to Section 6.5 hereof); (d) make distributions to the Holders of allowed Claims in accordance with the Plan; (e) perform administrative services related to the implementation of the Plan, including filing or recording such documents as are necessary or in furtherance of the release of any Lien to the extent such Lien is released or deemed released in or under the Plan; and (f) employ attorneys and other professionals, to assist in fulfilling the Reorganized Debtor's obligations under the Plan and Code.

### 6.4 The Closing

The Closing of any transactions required and contemplated under the Plan shall take place on the Effective Date at the Law Offices of Richard P. Bernstein, 1860 Howe Avenue, Suite 210, Sacramento, California 95825, or at such other place identified in a notice provided to those parties listed in Section 13.16 of the Plan. The Debtor may reschedule the Closing by making an announcement at the originally scheduled Closing of the new date for the Closing. A notice of the rescheduled Closing shall be filed with the Bankruptcy Court and served on the parties identified in Section 13.16 of the Plan within two (2) days after the originally scheduled Closing. All documents to be executed and delivered by any party as provided in this Article VI and all actions to be taken by any party to implement the Plan as provided herein shall be in form and substance reasonably satisfactory to the Debtor and the Reorganized Debtor.

### 6.5 Preservation of Rights of Action

The Reorganized Debtor shall retain and shall have the exclusive right to enforce any and all Rights of Action. Unless any Claims against a Person are expressly waived, relinquished, exculpated, released, compromised, transferred or settled in the Plan or by a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue any and all Retained Rights of Action, whether arising before or after the Petition Date, and the Reorganized Debtor's rights to commence, prosecute or settle such Rights of Action shall be preserved notwithstanding the occurrence of the Effective Date, including, without limitation, those Retained Rights of Action identified in the Disclosure Statement or in Exhibit D to the Plan.

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 80 of 145

**6.6    Cancellation and Surrender of Instruments, Securities, and Other Documentation**

On the Effective Date, except as otherwise expressly provided in the Plan, all instruments, securities, and other documentation or agreements representing or giving rise to Claims against or Interests in the Debtor (including any rights to acquire Interests in the Debtor) shall be deemed canceled and of no further force or effect, without any further action on the part of the Bankruptcy Court or any Person.  The Holders of such canceled instruments, securities, and other documentation shall have no rights arising from or relating to such instruments, securities, or other documentation.

**6.7    Transfer of Ownership Interests of Land Trust One and Land Trust Two for Preferred Stock**

(a)    On the Effective Date, and pursuant to section 1123(a)(5)(J) of the Bankruptcy Code, all ownership interests of Land Trust One and the Debtor in Parcel D-1-B-2 shall be deemed transferred to Lulana Gardens, LLC, a wholly-owned subsidiary of the Reorganized Debtor whose sole purpose will be to hold and develop Parcel D-1-B-2 consistent with the Land Use Action Plan, in exchange for the issuance to Land Trust One of (i) 1,033,212 shares of Preferred Stock having a net liquidation preference and value of $25,830.300.00, which liquidation preference shall be senior to all other Equity Interests in the Reorganized Debtor (except that it shall be pari passu with the Preferred Stock issued under Section 6.7(b) hereof), and (ii) 597,488 shares of Common Stock.  The Reorganized Debtor shall have the unilateral right to file or record such documents of transfer necessary to record the transfers provided for hereunder in the official records of the State and the County, including any quitclaim deeds or other documents of transfer deemed necessary by the Reorganized Debtor in its sole discretion.  Within sixty (60) days after receipt, the Trustee of the Land Trusts shall cause the Preferred Stock and Common Stock issued under this Section 6.7(a) to be distributed pro rata to the beneficiaries of Land Trust One.  The Trustee of the Land Trusts shall cause Land Trust One to be dissolved or revoked following the completion of distributions hereunder to the beneficiaries of Land Trust One.

(b)    On the Effective Date, and pursuant to section 1123(a)(5)(J) of the Bankruptcy Code, all ownership interests of Land Trust Two and the Debtor in Parcel D-1-B-1 shall be deemed transferred to a newly-formed, wholly-owned subsidiary of the Reorganized Debtor in exchange for the issuance to Land Trust Two of (i) 155,428 shares of Preferred Stock having a net liquidation preference and value of $3,885,700, which liquidation preference shall be senior to all other Equity

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 81 of 145

Interests in the Reorganized Debtor (except that it shall be pari passu with the Preferred Stock issued under Section 6.7(a) hereof), and (ii) 78,260 shares of Common Stock. The Reorganized Debtor shall have the unilateral right to file or record such documents of transfer necessary to record the transfers provided for hereunder in the official records of the State and the County, including any quitclaim deeds or other documents of transfer deemed necessary by the Reorganized Debtor in its sole discretion. Within sixty (60) days after receipt, the Trustee of the Land Trusts shall cause the Preferred Stock and Common Stock issued under this Section 6.7(b) to be distributed pro rata to the beneficiaries of Land Trust Two. The Trustee of the Land Trusts shall cause Land Trust Two to be dissolved or revoked following the completion of distributions hereunder to the beneficiaries of Land Trust Two.

## ARTICLE VII
## PROVISIONS GOVERNING RESOLUTION OF CLAIMS AND EQUITY INTERESTS AND DISTRIBUTIONS OF PROPERTY UNDER THE PLAN

### 7.1 Right to Object to Claims

The Reorganized Debtor shall examine all Claims and will have the right, authority, power and discretion to: (i) file objections to the allowance, priority and classification of all Claims; (ii) litigate to judgment, settle or withdraw objections to Claims without any notice or approval of any other party or the Bankruptcy Court; and (iii) request that the Bankruptcy Court estimate any claim pursuant to 11 U.S.C. § 502(c). The deadline to file objections to Claims shall be one hundred and twenty (120) days after the Effective Date, which date may be extended by the Reorganized Debtor with order of the Bankruptcy Court.

### 7.2 Deadline for Responding to Claim Objections

Within thirty (30) days after service of an objection, or such other date as is indicated on such objection or the accompanying notice thereof, the Creditor whose Claim was objected to must file a written response to the objection with the Bankruptcy Court and serve a copy on the Reorganized Debtor. Failure to file a written response within the 30-day time period shall constitute a waiver and release of that portion of the subject Claim that was subject to the objection and shall cause the Bankruptcy Court to enter a default judgment against the non-responding Creditor or granting the relief requested in the claim objection.

### 7.3 Right to Request Estimation of Claims

The Debtor or the Reorganized Debtor may at any time request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed   05/24/19   Page 82 of 145

Bankruptcy Code or other applicable law regardless of whether the Debtor or the Reorganized Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during the pendency of litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Disputed Claim, such estimated amount shall constitute either (a) the Allowed amount of such Claim, (b) the amount on which a reserve is to be calculated for purposes of any reserve requirement to this Plan, or (c) a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor or the Reorganized Debtor may pursue supplementary proceedings to object to the allowance of such Claim. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

### 7.4     Distribution Procedures Regarding Allowed Claims

(a)     In General

The Reorganized Debtor shall make all Distributions required to be made under the Plan. Distributions will be made through the operations of the Reorganized Debtor, through funding via the DIP/Exit Facility and the New LG Loan Agreements.

(b)     Distributions on Allowed Claims Only

Distributions shall be made only to the Holders of Allowed Claims. Until a Disputed Claim becomes an Allowed Claim, the Holder of that Disputed Claim shall not receive a Distribution.

Payments owing under the Plan from Net Distributable Cash Flows shall be made annually on the last business day of the month of March. If Net Distributable Cash Flows are payable under the Plan on account of Allowed Claims of a Class that have been paid in full under the Plan, then the Net Distributable Cash Flows payable on account of such Allowed Claims shall be retained by the Reorganized Debtor and not shared with any other Class that is entitled to a share of Net Distributable Cash Flows.

(c)     Place and Manner of Payments of Distributions

Except as otherwise specified in the Plan, Distributions shall be made by mailing such Distribution to the Creditor at the address listed in any proof of claim

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 83 of 145

filed by the Creditor or at such other address as such Creditor shall have specified for payment purposes in a written notice received by the Debtor or the Reorganized Debtor at least twenty (20) days before a Distribution Date. If a Creditor has not filed a proof of claim or interest or sent the Debtor or the Reorganized Debtor a written notice of payment address, then the Distribution(s) for such Creditor will be mailed to the address identified in the Schedules of Assets and Liabilities. The Debtor or the Reorganized Debtor shall distribute any Cash by wire, check, or such other method as it deems appropriate under the circumstances. Before receiving any Distributions, all Creditors, at the request of the Debtor or the Reorganized Debtor, must provide written notification of their respective Federal Tax Identification Numbers or Social Security Numbers to the Debtor or the Reorganized Debtor; otherwise, the Debtor or the Reorganized Debtor may suspend Distributions to any Creditors who have not provided their Federal Tax Identification Numbers or Social Security Numbers.

(d)    Undeliverable Distributions

If a Distribution made to any Creditor is returned as undeliverable, the Debtor or the Reorganized Debtor shall use reasonable efforts to determine such Creditor's then current address. If the Debtor or the Reorganized Debtor cannot determine, or is not notified of, a Creditor's then current address within six months after the Effective Date, the Distribution reserved for such Creditor shall be deemed an unclaimed Distribution, and Section 7.4(e) of the Plan shall be applicable thereto.

(e)    Unclaimed Distributions

If the current address for a Creditor entitled to a Distribution under the Plan has not been determined within six months after the Effective Date or such Creditor has otherwise not been located or submitted a valid Federal Tax Identification Number or Social Security Number to the Debtor or the Reorganized Debtor, then such Creditor (i) shall no longer be a Creditor and (ii) shall be deemed to have released such Claim.

(f)    Withholding

The Debtor or the Reorganized Debtor may at any time withhold from a Distribution to any Person (except the Internal Revenue Service) amounts sufficient to pay any tax or other charge that has been or may be imposed on such Person with respect to the amount distributable or to be distributed under the income tax laws of the United States or of any state or political subdivision or entity by reason of any Distribution provided for in the Plan, whenever such withholding is determined by

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 84 of 145

the Debtor or the Reorganized Debtor to be required by any law, regulation, rule, ruling, directive, or other governmental requirement. The Debtor or the Reorganized Debtor may enter into agreements with taxing or other authorities for the payment of such amounts that may be withheld in accordance with the provisions of this section.

### 7.5    Use of DIP/Exit Facility Loan Proceeds

Any proceeds drawn under the DIP/Exit Facility and unspent on the Effective Date may be used to pay Allowed Administrative Expenses, Allowed Professional Fees, and Ordinary Course Expenses contained in any DIP financing budget and which are past due or were not yet due and payable pursuant to the terms relating to such obligations.

### 7.6    No Interest on Claims

Except as set forth in the Plan or in a Final Order of the Bankruptcy Court entered in the Bankruptcy Case, no Holder of any Claim will be entitled to interest accruing after the Petition Date on such Claim, nor to fees, costs or charges provided under any agreement under which such Claim arose and that were incurred after the Petition Date. Unless otherwise specifically provided for in this Plan or as otherwise required by sections 506(b), 511 or 1129(a)(9)(C)-(D) of the Bankruptcy Code, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date of such Disputed Claim becomes an Allowed Claim.

### 7.7    Distributions Only On Timely-Filed, Allowed Claims

No payments of Cash or other consideration of any kind will be made on account of any Disputed Claim until such Claim becomes an Allowed Claim or is deemed to be such for purposes of distribution, and then only to the extent that the Claim becomes, or is deemed to be for distribution purposes, an Allowed Claim. Except as otherwise ordered by the Bankruptcy Court, no payments shall be made on account of Claims filed after the Claims Bar Date or any other applicable bar date for the Filing of Claims against the Debtor.

### 7.8    Record Date For Distributions

As of the close of business on the Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtor shall be deemed closed, and there shall be no further changes made to reflect any new record Holders of any Claims or Interests occurring on or after the Record Date. The Debtor

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 85 of 145

and the Reorganized Debtor shall have no obligation to recognize any transfer of any Claims or Interests occurring after the Record Date.

### 7.9    Fractional Securities

Notwithstanding any other provision of the Plan, only whole numbers of shares of Common Stock or Preferred Stock shall be issued.  As a result, if the calculated distribution on account of Allowed Interests based upon the record holders thereof on the Record Date would otherwise result in the issuance to any Person of a number of shares of Common Stock or Preferred Stock that is not a whole number, then the actual distribution of such Common Stock or Preferred Stock shall be rounded down to the nearest lower number.  No consideration shall be provided in lieu of fractional shares of New Common Stock that are rounded down.  Any surplus of fractional shares of New Common Stock existing as a result of the rounding process shall be retained by the Reorganized Debtor as treasury stock.

## ARTICLE VIII
## EXECUTORY CONTRACTS

### 8.1    Assumption of Executory Contracts

On the Effective Date, all Executory Contracts identified on the Schedule of Assumed Contracts and Unexpired Leases, attached hereto as **Exhibit B**, shall be deemed assumed by the Reorganized Debtor in the exercise of its sound business judgment.   The Debtor may amend the Schedule of Assumed Contracts and Unexpired Leases through the deadline to file the Plan Supplement.  Entry of the Confirmation Order shall constitute approval of the assumption of such Executory Contracts under sections 365 and 1123 of the Bankruptcy Code.  Any reference to a "default," "event of default," or "material default" arising under or in connection with an Assumed Contract, which default is caused by a "default," "event of default," or "material default" arising under another contract or agreement that is not the Assumed Contract itself shall mean a "default," "event of default," or "material default" under that Assumed Contract alone and shall not include or be caused or triggered by any "default," "event of default," or "material default" under arising under another contract or agreement that is not the Assumed Contract itself.

### 8.2    Rejection of Executory Contracts

All Executory Contracts not identified on the Schedule of Assumed Contracts and Unexpired Leases attached hereto as Exhibit B (or assumed by the Debtor previously) shall be deemed rejected on the Effective Date.   Entry of the

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 86 of 145

Confirmation Order shall constitute approval of such rejections under sections 365 and 1123 of the Bankruptcy Code.

### 8.3 Procedures Related to Assumption of Executory Contracts

The Debtor will determine which Executory Contracts will be identified on the Schedule of Assumed Contracts and Unexpired Leases, attached hereto as Exhibit B (which schedule may be amended as set forth in any Plan Supplement), which shall be deemed assumed by the Reorganized Debtor.

(a)     Establishment of Cure Claim Amounts

The Cure Amounts associated with the assumption of the Executory Contracts pursuant to Section 8.1 of the Plan are specified in the Schedule of Assumed Contracts and Unexpired Leases.  Pursuant to the Notice of (I) Possible Assumption of Contracts and Leases, (II) Fixing of Cure Amounts, and (III) Deadline to Object Thereto served by the Debtor, counterparties to the Executory Contracts were required to file Objections to Cure Amount, if any, by the Cure Amount Objection Bar Date.

(b)     Objection to Disputed Cure Amounts

The Reorganized Debtor shall have the right to examine any Objection to Cure Amount filed by any party and shall have the right to object to and contest the Disputed Cure Amount asserted therein.

If an objection to a Disputed Cure Amount has not been resolved by the Bankruptcy Court or agreement of the parties by the Effective Date, the Executory Contract related to such Disputed Cure Amount shall be deemed assumed by the Reorganized Debtor effective on the Effective Date; provided, however, the Reorganized Debtor may revoke an assumption of any such Executory Contract within ten (10) business days after entry of an order by the Bankruptcy Court adjudicating the objection to the Disputed Cure Amount related to the Executory Contract by filing a notice of such revocation with the Bankruptcy Court and serving a copy on the party(ies) whose Executory Contract is rejected.  Any Executory Contract identified in a revocation notice shall be deemed rejected retroactively to the Effective Date.

(c)     Payment of Cure Amounts

Within ten (10) Business Days after the Effective Date, the Reorganized Debtor shall pay, in Cash, all Cure Amounts related to Executory Contracts listed on

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 87 of 145

the Schedule of Assumed Contracts and Unexpired Leases, other than Disputed Cure Amounts. Subject to the revocation rights described in Section 8.3(b) above, the Reorganized Debtor shall pay all Cure Amounts that are subject to an objection on the Effective Date within ten (10) days after entry of an order by the Bankruptcy Court resolving the objection or approving an agreement between the parties concerning the Cure Amount.

(d)    No Admission of Liability

Neither the inclusion nor exclusion of any Executory Contract on the Schedule of Assumed Contracts and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtor or any other party that any such contract or unexpired lease is in fact an Executory Contract or that the Debtor has any liability thereunder.

(e)    Reservation of Rights

Nothing in the Plan shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Rights of Action, or other rights of the Debtor under any executory or non-executory contract or any unexpired or expired lease, nor shall any provision of the Plan increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtor under any such contract or lease.

### 8.4    Rejection Claim Bar Date

Each Claim resulting from the rejection of an Executory Contract pursuant to Section 8.2 of the Plan shall be filed with the Bankruptcy Court no later than the Rejection Claim Bar Date; provided, however, any party whose Executory Contract is rejected pursuant to a rejection notice pursuant to Section 8.3 above may file a rejection damage Claim arising out of such rejection within thirty (30) days after the filing of the revocation notice with the Bankruptcy Court. Any Claim resulting from the rejection of an Executory Contract not Filed by the applicable deadline shall be discharged and forever barred and shall not be entitled to any Distributions under the Plan. The Reorganized Debtor shall have the right to object to any rejection damage Claim.

Any Allowed Claims arising from rejection of executory contracts and unexpired leases will be treated and paid as Class 3B Other Unsecured Claims.

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 88 of 145

## ARTICLE IX
## EFFECT OF REJECTION BY ONE OR MORE CLASSES

### 9.1    Impaired Classes Entitled to Vote

Unless such Class is deemed to have accepted or rejected the Plan, each Impaired Class shall be entitled to vote separately to accept or reject the Plan.  A Holder of a Disputed Claim which has not been temporarily allowed for purposes of voting on the Plan may vote only such Disputed Claim in an amount equal to the portion, if any, of such Claim or Interest shown as fixed, liquidated, and undisputed in the Debtor's Schedules of Assets and Liabilities.

### 9.2    Acceptance by Class

A Class of Claims shall have accepted the Plan if the Plan is accepted by at least two thirds (2/3) in amount and more than one half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan.

A Class of Interests shall have accepted the Plan if the Plan is accepted by Holders of such Interests that hold at least two-thirds (2/3) in amount of the Allowed Interests of such Class that have voted to accept or reject the Plan.

### 9.3    Reservation of Cramdown Rights

In the event that any Impaired Class shall fail to accept the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with the provisions of the section 1129(b) of the Bankruptcy Code.

## ARTICLE X
## EFFECT OF CONFIRMATION

### 10.1   Legally Binding Effect

On the Effective Date, the provisions of the Plan shall bind all Holders of Claims and Interests, whether or not they accept the Plan and wherever located.  On and after the Effective Date, all Holders of Claims and Interests shall be precluded and enjoined from asserting any Claim or Interest against the Debtor or its assets or properties based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under the Plan.

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 89 of 145

## 10.2    Vesting of Property of Debtor in Reorganized Debtor

On the Effective Date, except as otherwise expressly provided in the Plan or Confirmation Order, all Estate Property, including any "net operating losses" or similar tax attributes, shall vest in the Reorganized Debtor free and clear of all Liens, Claims, and encumbrances of any kind.

## ARTICLE XI
## INJUNCTIONS, RELEASES, AND DISCHARGE

### 11.1    Compromise and Settlement of Claims, Interests, and Controversies

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits and consideration provided by the Debtor pursuant to the Plan, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete settlement, compromise, and release, effective as of the Effective Date, of Claims, Interests, and Rights of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, including, but not limited to, all known or unknown liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Rights of Action that arose before the Effective Date, any liability to the extent such Claims or Interests relate to services performed by employees of the Debtor before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a proof of Claim or proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted the Plan. Any default by the Debtor with respect to any Claim or Interest that existed immediately before or on account of the filing of the Bankruptcy Case shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the settlement, compromise, and release of all Claims and Interests, subject to the Effective Date occurring.

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 90 of 145

### 11.2 Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan (except, in the case of an Allowed Secured Claim, upon satisfaction in full of the Allowed Secured Claim through payments required thereon under Article V of the Plan), all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate or the Reorganized Debtor, or arising under any Assumed Executory Contracts, shall be fully released, settled, and compromised and all rights, titles, and interests of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall revert to the Debtor and the Reorganized Debtor, as applicable, and their successors and assigns.

### 11.3 Subordinated Claims

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtor reserves the right for the Debtor or the Reorganized Debtor, as applicable, to re-classify any Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### 11.4 Debtor Release

ON THE EFFECTIVE DATE OF THE PLAN AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, THE RELEASED PARTIES AND THEIR RESPECTIVE PROPERTY WILL BE EXPRESSLY, UNCONDITIONALLY, GENERALLY AND INDIVIDUALLY AND COLLECTIVELY RELEASED, ACQUITTED AND DISCHARGED BY THE DEBTOR ON BEHALF OF ITSELF, ITS ESTATE, AND THE REORGANIZED DEBTOR (SUCH THAT THE REORGANIZED DEBTOR WILL NOT HOLD ANY CLAIMS OR RIGHTS OF ACTION RELEASED PURSUANT TO THIS SECTION 11.4), FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, FROM ANY AND ALL ACTIONS, CLAIMS, DEBTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES,

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 91 of 145

RIGHTS OF ACTION, REMEDIES AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTOR OR ITS ESTATE, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT OR OTHERWISE, BY STATUTE, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS OR OTHERWISE, BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, OR OTHER OCCURRENCE OR CIRCUMSTANCES EXISTING OR TAKING PLACE PRIOR TO OR ON THE EFFECTIVE DATE ARISING FROM OR RELATED IN ANY WAY TO THE DEBTOR, ANY OF THE DEBTOR'S PRESENT OR FORMER ASSETS, THE RELEASED PARTIES' INTERESTS IN OR MANAGEMENT OF THE DEBTOR, THE PLAN, THE DISCLOSURE STATEMENT, THIS BANKRUPTCY CASE, OR ANY RESTRUCTURING OF CLAIMS OR INTERESTS UNDERTAKEN PRIOR TO THE EFFECTIVE DATE, INCLUDING THOSE THAT THE DEBTOR OR THE REORGANIZED DEBTOR WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT OR THAT ANY HOLDER OF A CLAIM AGAINST OR INTEREST IN THE DEBTOR OR ANY OTHER ENTITY COULD HAVE BEEN LEGALLY ENTITLED TO ASSERT DERIVATIVELY OR ON BEHALF OF THE DEBTOR OR ITS ESTATE; PROVIDED, HOWEVER, THAT THE FOREGOING "DEBTOR RELEASE" SHALL NOT OPERATE TO WAIVE OR RELEASE ANY CLAIMS OR RIGHTS OF ACTION OF THE DEBTOR OR ITS ESTATE AGAINST A RELEASED PARTY ARISING UNDER ANY CONTRACTUAL OBLIGATION OWED TO THE DEBTOR THAT IS ENTERED INTO OR ASSUMED PURSUANT TO THE PLAN, OR FOR FRAUD, THEFT, CONVERSION, OR MISAPPROPRIATION OF CORPORATE ASSETS.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE DEBTOR RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN AND SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASE IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (2) A GOOD-FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTOR RELEASE;

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 92 of 145

(3) IN THE BEST INTERESTS OF THE DEBTOR'S ESTATE AND ALL HOLDERS OF CLAIMS AND INTERESTS; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR AGAINST ANY OF THE DEBTOR'S ESTATE OR THE REORGANIZED DEBTOR ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

### 11.5   Exculpation

The Exculpated Parties shall neither have, nor incur any liability to any entity for any prepetition or postpetition act taken or omitted to be taken in connection with the Bankruptcy Case, or related to formulating, negotiating, soliciting, preparing, disseminating, confirming, or implementing the Plan or consummating the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring or liquidation of the Debtor.  Without limiting the foregoing "Exculpation" provided under this Section 11.5, the rights of any Holder of a Claim or Interest to enforce rights arising under the Plan shall be preserved, including the right to compel payment of distributions in accordance with the Plan; provided, that the foregoing "Exculpation" shall have no effect on the liability of any entity solely to the extent resulting from any such act or omission that is determined in a final order to have constituted gross negligence or willful misconduct; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her, or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement.

### 11.6   Injunction

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, INTERESTS, LIENS, RIGHTS OF ACTION, OR LIABILITIES THAT (1) ARE SUBJECT TO COMPROMISE, SETTLEMENT, OR RELEASE PURSUANT TO THE TERMS OF THE PLAN, (2) HAVE BEEN RELEASED PURSUANT TO SECTION 11.4 HEREOF, (3) ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE SECTION 11.5 HEREOF, OR (4) ARE OTHERWISE STAYED OR TERMINATED PURSUANT TO THE TERMS

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 93 of 145

OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM:

(A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, INCLUDING ON ACCOUNT OF ANY CLAIMS, INTERESTS, RIGHTS OF ACTION, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTOR OR THE REORGANIZED DEBTOR, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY, DIRECTLY OR INDIRECTLY, SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, RIGHTS OF ACTION, OR LIABILITIES;

(B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTOR OR THE REORGANIZED DEBTOR, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTOR OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, LIENS, RIGHTS OF ACTION, OR LIABILITIES;

(C) CREATING, PERFECTING, OR ENFORCING ANY LIEN, CLAIM, OR ENCUMBRANCE OF ANY KIND AGAINST THE DEBTOR OR THE REORGANIZED DEBTOR, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTOR OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, RIGHTS OF ACTION, OR LIABILITIES;

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 94 of 145

(D) ASSERTING ANY RIGHT OF SETOFF OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTOR OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTOR OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, RIGHTS OF ACTION, OR LIABILITIES UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF OR SUBROGATION RIGHT PRIOR TO CONFIRMATION IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF OR SUBROGATION; AND

(E) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTOR OR THE REORGANIZED DEBTOR, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTOR OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, RIGHTS OF ACTION, OR LIABILITIES RELEASED, SETTLED, OR COMPROMISED PURSUANT TO THE PLAN;

*PROVIDED THAT* NOTHING CONTAINED IN THE PLAN SHALL PRECLUDE AN ENTITY FROM OBTAINING BENEFITS DIRECTLY AND EXPRESSLY PROVIDED TO SUCH ENTITY PURSUANT TO THE TERMS OF THE PLAN; AND

*PROVIDED*, *FURTHER*, *THAT* NOTHING CONTAINED IN THE PLAN SHALL BE CONSTRUED TO PREVENT ANY ENTITY FROM DEFENDING AGAINST CLAIMS OBJECTIONS OR COLLECTION ACTIONS WHETHER BY ASSERTING A RIGHT OF SETOFF OR OTHERWISE TO THE EXTENT PERMITTED BY LAW.

U.S. Bankruptcy Court - Hawaii #17-00611 Dkt # 474 Filed 05/24/19 Page 95 of 145

### 11.7 Waiver of Statutory Limitations on Releases

EACH RELEASING PARTY IN EACH OF THE RELEASES CONTAINED IN THE PLAN (INCLUDING UNDER THIS ARTICLE XI) EXPRESSLY ACKNOWLEDGES THAT ALTHOUGH ORDINARILY A GENERAL RELEASE MAY NOT EXTEND TO CLAIMS WHICH THE RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE PARTY RELEASED, THEY HAVE CAREFULLY CONSIDERED AND TAKEN INTO ACCOUNT IN DETERMINING TO ENTER INTO THE ABOVE RELEASES THE POSSIBLE EXISTENCE OF SUCH UNKNOWN LOSSES OR CLAIMS. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EACH RELEASING PARTY EXPRESSLY WAIVES ANY AND ALL RIGHTS CONFERRED UPON IT BY ANY STATUTE OR RULE OF LAW WHICH PROVIDES THAT A RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CLAIMANT DOES NOT KNOW OR SUSPECT TO EXIST IN ITS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE RELEASED PARTY. THE RELEASES CONTAINED IN THIS ARTICLE XI ARE EFFECTIVE REGARDLESS OF WHETHER THOSE RELEASED MATTERS ARE PRESENTLY KNOWN, UNKNOWN, SUSPECTED OR UNSUSPECTED, FORESEEN OR UNFORESEEN.

### 11.8 Setoffs

Except as otherwise provided in the Plan, prior to the Effective Date, the Debtor, and on and after the Effective Date, the Reorganized Debtor, pursuant to the Bankruptcy Code (including sections 553 and 558 of the Bankruptcy Code), applicable nonbankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, may set off against any Allowed Claim or Interest on account of any proof of Claim or proof of Interest or other pleading Filed with respect thereto prior to the combined hearing and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Interest (before any distribution is made on account of such Allowed Claim or Interest), any claims, rights, and Rights of Action of any nature that the Debtor's Estate may hold against the Holder of such Allowed Claim or Interest, to the extent such claims, rights, or Rights of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided that neither the failure to effect

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 96 of 145

such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any such claims, rights, and Rights of Action that the Debtor's Estate may possess against such Holder. In no event shall any Holder of Claims or Interests be entitled to set off any Claim or Interest against any claim, right, or Cause of Action of the Debtor's Estate unless such Holder has timely Filed a proof of Claim (including any proof of Claim timely Filed by the Governmental Bar Date) with the Bankruptcy Court expressly preserving such setoff; provided that nothing in the Plan shall prejudice or be deemed to have prejudiced the Debtor's or the Reorganized Debtor's right to assert that any Holder's setoff rights were required to have been asserted by motion or pleading filed with the Bankruptcy Court prior to the Effective Date.

## ARTICLE XII
## RETENTION OF JURISDICTION

### 12.1  Exclusive Bankruptcy Court Jurisdiction

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain and have such jurisdiction over the Bankruptcy Case to the maximum extent as is legally permissible, including, without limitation, for the following purposes:

(a)    To allow, disallow, determine, liquidate, classify or establish the priority or secured or unsecured status of, or estimate any Right of Action, Claim, or Interest, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Interests;

(b)    To ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(c)    To determine any and all applications or motions pending before the Bankruptcy Court on the Effective Date of the Plan, including without limitation any motions for the rejection, assumption, or assumption and assignment of any Executory Contract;

(d)    To consider and approve any modification of the Plan, remedy any defect or omission, or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order;

(e)    To determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan or

35

any Plan Documents or any Person's obligations in connection with the Plan or any Plan Documents, including in respect of any defaults by the Debtor or any other Person under the Plan, or to defend any of the rights, benefits, Estate Property transferred, created, or otherwise provided or confirmed by the Plan or the Confirmation Order or to recover damages or other relief for violations thereof;

(f)     To consider and act on the compromise and settlement of any claim or cause of action by or against the Debtor or the Reorganized Debtor;

(g)     To decide or resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters, or grant or deny any applications involving the Debtor that may be pending on the Effective Date or that may be brought by the Reorganized Debtor, including claims arising under Chapter 5 of the Bankruptcy Code, or any other related proceedings by the Reorganized Debtor, and to enter and enforce any default judgment on any of the foregoing;

(h)     To issue orders in aid of execution and implementation of the Plan or any Plan Documents to the extent authorized by section 1142 of the Bankruptcy Code or provided by the terms of the Plan;

(i)     To decide issues concerning the federal or state tax liability of the Debtor which may arise in connection with the confirmation or consummation of the Plan or any Plan Documents;

(j)     To interpret and enforce any orders entered by the Bankruptcy Court in the Bankruptcy Case; and

(k)     To enter an order closing this Bankruptcy Case.

**12.2   Limitation on Jurisdiction**

In no event shall the provisions of the Plan be deemed to confer in the Bankruptcy Court jurisdiction greater than that established by the provisions of 28 U.S.C. §§ 157 and 1334, as well as the applicable circumstances that continue jurisdiction for defense and enforcement of the Plan and Plan Documents.  For the avoidance of doubt, however, such jurisdiction shall be deemed, by the entry of the Confirmation Order, to:

(a)     Permit entry of a final judgment by the Bankruptcy Court in any core proceeding referenced in 28 U.S.C. § 157(b) and to hear and resolve such proceedings in accordance with 28 U.S.C. § 157(c) and any and all related

36

proceedings, including, without limitation, (i) all proceedings concerning disputes with, or Rights of Action or Claims against, any Person that the Debtor or the Reorganized Debtor or its successors or assigns, may have, and (ii) any and all Rights of Action or other Claims against any Person for harm to or with respect to (x) any Estate Property, including any infringement of IP or conversion of Estate Property, or (y) any Estate Property liened in favor of, or transferred by the Debtor to any other Person;

(b)  Include jurisdiction over the recovery of any Estate Property (or property transferred by the Debtor with Bankruptcy Court approval) from any Person wrongly asserting ownership, possession or control of the same, whether pursuant to sections 542, 543, 549, 550 of the Bankruptcy Code or otherwise, as well as to punish any violation of the automatic stay under section 362 of the Bankruptcy Code or any other legal rights of the Debtor under or related to the Bankruptcy Code;

(c)  Permit the taking of any default judgment against any Person who has submitted himself or herself to the jurisdiction of the Bankruptcy Court; and

(d)  Estop each Person bound by the Plan from asserting arguments that the Bankruptcy Court lacks exclusive jurisdiction over the matters set forth in Section 12.1 hereof.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

### 13.1  Conditions to Confirmation

The Confirmation Order will not be effective unless (a) the Confirmation Order shall be in form and substance acceptable to the Debtor, (b) the final version of the Plan, Plan Supplement, Disclosure Statement and any other related documents, or schedules thereto, shall have been filed in form and substance acceptable to the Debtor in its reasonable discretion, and (c) the Debtor shall have secured at least $2.5 million in cash or irrevocable commitments to fund the DIP/Exit Facility.

### 13.2  Conditions to Plan Effectiveness

The Plan will not be effective unless (a) the conditions to confirmation above have been either satisfied, or waived, and (b) the Confirmation Order has been entered by the Bankruptcy Court and is a Final Order, and (c) all conditions to

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 99 of 145

effectiveness of the DIP/Exit Facility shall have been satisfied and at least $2.5 million shall have been borrowed thereunder on or before the Effective Date.

### 13.3   Waiver of Conditions

Each of the conditions set forth in Sections 13.1 and 13.2, except for the condition set forth in Section 13.2(c), may be waived in whole or in part by Debtor without any notice to other parties in interest or the Bankruptcy Court and without a hearing.

### 13.4   Exemption from Transfer Taxes

The Plan and the Confirmation Order provide for one or more of the following: (a) the issuance, transfer or exchange of notes, debt instruments and equity securities under or in connection with the Plan; (b) the creation, assignment, recordation or perfection of any lien, pledge, other security interest or other instruments of transfer; (c) the making or assignment of any lease; (d) the creation, execution and delivery of any agreements or other documents creating or evidencing the formation of the Reorganized Debtor or the issuance or ownership of any interest in the Reorganized Debtor; or (e) the making or delivery of any deed or other instrument of transfer under the Plan in connection with the vesting of the Debtor's assets in the Reorganized Debtor pursuant to or in connection with the Plan, including, without limitation, merger agreements, stock purchase agreement, agreements of consolidation, restructuring, disposition, liquidation or dissolution, and transfers of tangible property.  Pursuant to section 1146 of the Bankruptcy Code and the Plan, any such act described or contemplated herein will not be subject to any stamp tax, transfer tax, filing or recording tax, or other similar tax.

### 13.5   Securities Exemption

Any Interests and rights issued under, pursuant to or in effecting the Plan, and the offering and issuance thereof by any party, including without limitation the Debtor or the Estate, shall be exempt from Section 5 of the Securities Act of 1933, if applicable, and from any state or federal securities laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all exemptions available for Distributions of securities under a plan of reorganization in accordance with all applicable law, including without limitation section 1145 of the Bankruptcy Code. If the issuance of any equity under the Plan does not qualify for an exemption under section 1145 of the Bankruptcy Code, then any such equity shall be issued in a manner which qualifies for any other available exemption from registration, whether

as a private placement under Rule 506 of the Securities Act, Section 4(2) of the Securities Act, and/or the safe harbor provisions promulgated thereunder.

### 13.6  Post-Effective Date Fees and Expenses

From and after the Effective Date, the Reorganized Debtor shall, in the ordinary course of business and without the necessity for Bankruptcy Court approval, pay the reasonable fees and expenses of Professionals retained by the Reorganized Debtor and incurred after the Effective Date, including, without limitation, fees and expenses incurred in connection with the implementation and consummation of the Plan.  Any professionals retained by the Reorganized Debtor can have served as an estate Professional in this Bankruptcy Case.

### 13.7  Post-Effective Date Notice Limited

From and after the Effective Date, any person seeking relief from the Bankruptcy Court in the Bankruptcy Case shall be required to provide notice only to the Reorganized Debtor and the United States Trustee (and their respective counsel); any person whose rights are directly affected by the relief sought, and to other parties in interest who, after entry of the Confirmation Order, file a request for such notice with the clerk of the Bankruptcy Court and serve a copy of such notice on counsel to the Reorganized Debtor.

### 13.8  Dissolution of Committee

On the Effective Date, the Committee shall be automatically dissolved, and all of its members, Professionals and agents shall be deemed released of their duties, responsibilities and obligations, and shall be without further duties, responsibilities and authority in connection with the Debtor, the Bankruptcy Case, the Plan or its implementation.

### 13.9  Defects, Omissions and Amendments of the Plan

The Debtor or the Reorganized Debtor may, with the approval of the Bankruptcy Court and without notice to Holders of Claims and Interests, insofar as it does not materially and adversely affect Holders of Claims and Interests, correct any defect, omission, or inconsistency in the Plan in such a manner and to such extent necessary or desirable to expedite the execution of the Plan.  The Debtor may propose amendments or alterations to the Plan before the Confirmation Hearing as provided in section 1127 of the Bankruptcy Code if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interests of Holders of Claims, so long as the Plan, as modified, complies with sections 1122

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 101 of 145

and 1123 of the Bankruptcy Code and the Debtor has complied with section 1125 of the Bankruptcy Code. The Debtor may propose amendments or alterations to the Plan after the Confirmation Date but prior to substantial consummation, in a manner that, in the opinion of the Bankruptcy Court, does not materially and adversely affect Holders of Claims, so long as the Plan, as modified, complies with sections 1122 and 1123 of the Bankruptcy Code, the Debtor has complied with section 1125 of the Bankruptcy Code, and after notice and a hearing, the Bankruptcy Court confirms such Plan, as modified, under section 1129 of the Bankruptcy Code.

### 13.10 Withdrawal of Plan

The Debtor reserves the right to withdraw the Plan at any time prior to the Confirmation Date. If the Debtor withdraws the Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute an admission, waiver or release of any claims by or against the Debtor or any other person, or to prejudice in any manner the rights of the Debtor, the Debtor's Estate, or any person in any further proceedings involving the Debtor.

### 13.11 Due Authorization By Holders of Claims and Interests

Each and every Holder of a Claim or Interest who elects to participate in the Distributions provided for herein warrants that it is authorized to accept in consideration of its Claim against or Interest in the Debtor the Distributions provided for in the Plan, and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by the Creditor under the Plan.

### 13.12 Filing of Additional Documentation

Within 21 days of the Confirmation Hearing, the Debtor may file with the Bankruptcy Court a Plan Supplement and such other agreements or documents as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan or any Plan Document, which shall also constitute Plan Documents.

### 13.13 Governing Law

Except to the extent that the Code or other provisions of federal law are applicable, the rights and obligations arising under the Plan and any documents, agreements and instruments executed in connection with the Plan (except to the extent such documents, agreements and instruments designate otherwise) shall be

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 102 of 145

governed by, and construed and enforced in accordance with, the internal laws of the State of Hawaii (without reference to such state's law governing choice of law or forum).

### 13.14 Successors and Assigns

The rights, benefits and obligations of any entity named or referred to in the Plan or any Plan Document shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

### 13.15 Transfer of Claims

Commencing as of the Record Date, any transfer of a claim shall be in accordance with Bankruptcy Rule 3001(e) and the terms of this Section 13.15. Notice of any such transfer shall be forwarded to the Reorganized Debtor by registered or certified mail, as set forth in Section 13.16 hereof. Both the transferee and transferor shall execute any notice, and the signatures of the parties shall be acknowledged before a notary public. The notice must clearly describe the interest in the claim to be transferred. No transfer of a partial interest shall be allowed. All transfers must be of one hundred percent (100%) of the transferor's interest in the claim.

### 13.16 Notices

Any notice required to be given under the Plan or any Plan Document shall be in writing. Any notice that is allowed or required hereunder except for a notice of change of address shall be considered complete on the earlier of (a) three (3) days following the date the notice is sent by United States mail, postage prepaid, or by overnight courier service, or in the case of mailing to a non-United States address, air mail, postage prepaid, or personally delivered; (b) the date the notice is actually received by the Persons on the Post-Confirmation Service List by facsimile or computer transmission; or (c) three (3) days following the date the notice is sent to those Persons on the Post-Confirmation Service List as it is adopted by the Bankruptcy Court at the hearing on confirmation of the Plan, as such list may be amended from time-to-time by written notice from the Persons on the Post-Confirmation Service List.

41

(a)    If to the Debtor, at:

ROBBINS, SALOMON & PATT, LTD.
Steve Jakubowski, Esq.
180 North LaSalle Street, Suite 3300
Chicago, Illinois 60601
Fax:  312.782.6690
Email: sjakubowski@rsplaw.com

-and-

CHOI & ITO
Chuck C. Choi, Esq.
Allison A. Ito, Esq.
700 Bishop Street, Suite 107
Honolulu, Hawaii 96813
Fax: 808.566.6900
Email: cchoi@hibklaw.com; aito@hibklaw.com

(b)    If to the Committee:

CASE LOMBARDI & PETTIT
Ted N. Pettit, Esq.
Ellen A. Swick
737 Bishop Street, Suite 2600
Honolulu, Hawaii 96813
Fax: 808.523-1888
Email: tnp@caselombardi.com; eas@caselombardi.com

(c)    If to the U.S. Trustee, at:

Office of the United States Trustee
c/o Curtis B. Ching, Esq.
1132 Bishop Street, Suite 602
Honolulu, Hawaii 96813-2830
Fax: 808.522.8156
Email: Curtis.B.Ching@usdoj.gov

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 104 of 145

### 13.17 U.S. Trustee Fees

The Debtor will pay pre-confirmation fees owed to the U.S. Trustee on or before the Effective Date of the Plan. After confirmation, the Reorganized Debtor will file with the court and serve on the U.S. Trustee quarterly financial reports in a format prescribed by the U.S. Trustee, and the Reorganized Debtor will pay post-confirmation quarterly fees to the U.S. Trustee until a final decree is entered or the Bankruptcy Case is converted or dismissed as provided in 28 U.S.C. § 1930(a)(6).

### 13.18 Implementation

The Debtor and the Reorganized Debtor shall be authorized to perform all reasonable, necessary and authorized acts to consummate the terms and conditions of the Plan and the Plan Documents.

### 13.19 No Admissions

Notwithstanding anything herein to the contrary, nothing contained in the Plan, the Disclosure Statement, or any ancillary materials Filed in connection therewith shall be deemed an admission by the Debtor with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety of the classification of any Claim or Interest.

**ARTICLE XIV**
**SUBSTANTIAL CONSUMMATION**

### 14.1 Substantial Consummation

The Plan shall be deemed substantially consummated on the Effective Date.

### 14.2 Final Decree

On full consummation and performance of the Plan and Plan Documents, the Reorganized Debtor may request the Bankruptcy Court to enter a final decree closing the Bankruptcy Case and such other orders that may be necessary and appropriate.

*[Remainder of Page Intentionally Left Blank]*

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 105 of 145

## CONFIRMATION REQUEST

      The Debtor hereby requests confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

Dated:  April 29, 2019

**AINA LEʻA, INC.**

*/s/ Robert J. Wessels*
Robert J. Wessels
Chairman and Chief Executive Officer for the
Debtor and Debtor-in-Possession


  Submitted by:
  /s/ Chuck C. Choi
  CHUCK C. CHOI
  ALLISON A. ITO
  STEVE JAKUBOWSKI
  Attorneys for Debtor and
  Debtor-in-Possession

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 106 of 145

<u>**EXHIBIT A**</u>
**Glossary of Defined Terms**

"<u>Administrative Bar Date Order</u>" means the order entered by the Bankruptcy Court establishing the Administrative Bar Date.

"<u>Administrative Claim</u>" means a Claim for the costs and expenses of administration of the Estate pursuant to section 503(b) and 507(a)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the businesses of the Debtor; (b) all fees and charges assessed against the Estate pursuant to chapter 123 of the Judicial Code, including the U.S. Trustee Fees; and (c) Professional Fee Claims.

"<u>Administrative Claims Bar Date</u>" means the deadline for filing requests for payment of Administrative Claims (other than (x) Professional Fee Claims and (y) Administrative Claims arising in the ordinary course of business), which shall be the first Business Day that is 30 days following the Effective Date, except as specifically set forth in the Plan or in a Final Order, or as agreed-to by the Reorganized Debtor.

"<u>Administrative Claims Objection Bar Date</u>" means the deadline for filing objections to requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims), which shall be the first Business Day that is 180 days following the Effective Date; <u>provided</u> that the Administrative Claims Objection Bar Date may be extended by the Bankruptcy Court after notice and a hearing.

"<u>Administrative Claimant</u>" means any Person entitled to payment of an Administrative Claim.

"<u>Affiliate</u>" means any Person that is an "affiliate" of the Debtor within the meaning of Bankruptcy Code section 101(2).

"<u>Allowance Date</u>" means the date that a Claim or Equity Interest becomes an Allowed Claim or Allowed Equity Interest.

"<u>Allowed</u>" means with respect to Claims:

(a) any Claim other than an Administrative Claim that is evidenced by a Proof of Claim which is or has been timely Filed by the applicable Claims Bar Date or that is not required to be evidenced

1

by a Filed Proof of Claim under the Bankruptcy Code or a Final Order;

(b) any Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed; or

(c) any Claim Allowed pursuant to Final Order;

provided that with respect to any Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed by a Final Order. Except as otherwise specified in the Plan or any Final Order, and except for any Claim that is Secured by property of a value greater than the principal amount of such Claim, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtor may hold against the Holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed by the applicable Claims Bar Date, is not considered Allowed and shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such entity pays in full the amount that it owes such Debtor or Reorganized Debtor, as the case may be. "Allow" and "Allowing" shall have correlative meanings.

"Assumed Contract" means an executory contract listed on the Schedule of Assumed Contracts and Unexpired Leases" that is assumed by the Debtor pursuant to the Confirmation Order.

"Avoidance Actions" means any and all avoidance, recovery, subordination, or similar remedies that may be brought by or on behalf of the Debtor or the Estate, including causes of action or defenses arising under chapter 5 of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

2

"Ballot" means the form of ballot distributed to certain Holders of Claims or Interests that are entitled to vote on the Plan by which such parties may indicate acceptance or rejection of the Plan.

"Bankruptcy Case" means *In re Aina Leʻa, Inc.*, Case No. 17-00611 in the United States Bankruptcy Court for the District of Hawaii.

"Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as now in effect or hereinafter amended, and the rules and regulations promulgated thereunder.

"Bankruptcy Court" means the United States Bankruptcy Court for the District of Hawaii having jurisdiction over the Bankruptcy Case, and, to the extent of the withdrawal of any reference under section 157 of the Judicial Code, the United States District Court for the District of Hawaii.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as applicable to the Bankruptcy Case, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, as now in effect or hereinafter amended, and the rules and regulations promulgated thereunder.

"Bridge" means Bridge Aina Leʻa, LLC, the present holder of all Class 2B Secured Claims.

"Bridge-Encumbered Land" means any real property interest of the Reorganized Debtor in which Bridge holds a perfected first priority mortgage under the Bridge Agreements.

"Bridge Agreements" means that certain "Promissory Note," Purchase-Money Mortgage, Security Agreement, and Financing Statement," "Road/Intersection Escrow Agreement," and "Agreement Regarding Easements and Utilities," all dated November 17, 2015, and all agreements related thereto, executed by the Debtor and Romspen, which agreements form the basis for the Class 2A Secured Claim.

"Business Day" means any day other than a Saturday, Sunday, or a "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

"Cash" or "$" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 109 of 145

"Causes of Action" means any claim, cause of action (including Avoidance Actions or rights arising under section 506(c) of the Bankruptcy Code), controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. Causes of Action also include: (a) all rights of setoff, counterclaim, cross-claim, or recoupment, and claims on contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) all claims and defenses set forth in section 558 of the Bankruptcy Code.

"Certificate of Incorporation" means the Debtor's Certificate of Incorporation, effective under the laws of the State of Delaware as of January 27, 2012.

"Claim" means any claim against the Debtor or the Estate, as defined in section 101(5) of the Bankruptcy Code, including: (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

"Claims Bar Date" means the deadline for filing a Proof of Claim established by Bankruptcy Court as November 2, 2017, except that the deadline for a Governmental Unit to have filed a Proof of Claim was established by the Bankruptcy Court as December 19, 2017.

"Claims Objection Deadline" means the first Business Day that is one hundred and eighty (180) days after the Effective Date, as such deadline may be extended by order of the Bankruptcy Court.

"Claims Register" means the official register of Claims maintained by the Bankruptcy Court.

4

"Class" means a category of Holders of Claims or Interests as set forth in Article III of the Plan in accordance with section 1122(a) of the Bankruptcy Code.

"Clerk" means the Clerk of the Bankruptcy Court.

"Closing" means the closing of a transaction contemplated under the Plan.

"Collateral" means any property or interest in property of the Estate that is subject to a valid and enforceable lien to secure the payment or performance of a Claim.

"Commercial Property Option" means that certain fixed price option granted to the Debtor to enable it to purchase, on or before November 17, 2018 for $23 million, approximately 27 acres of retail/commercial property known as Parcel C-1 that is owned by Bridge and is adjacent the Debtor's property represented by Parcel B-1-A.

"Committee" means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee on July 17, 2017 [dkt. # 39].

"Common Stock" means any Equity Interest in the Debtor represented by ownership of common stock of the Debtor.

"Confirmation" means the entry of the Confirmation Order on the docket of the Bankruptcy Court in the Bankruptcy Case, within the meaning of Bankruptcy Rules 5003 and 9021.

"Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on its docket in the Bankruptcy Case, within the meaning of Bankruptcy Rules 5003 and 9021.

"Confirmation Hearing" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

"Confirmation Objection Deadline" means February 13, 2019.

"Confirmation Order" means the Order of the Bankruptcy Court approving and confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 111 of 145

"Consummation" shall mean "substantial consummation" as defined in section 1101(2) of the Bankruptcy Code.

"Contract" means any agreement, contract, or lease between the Debtor and a third party, as may be supplemented or amended from time to time prior to the entry of the Confirmation Order.

"Creditor" means any Person that holds a Claim against the Debtor, including of the kind specified in sections 502(f), 502(g), 502(h) or 502(i) of the Bankruptcy Code.

"Cure Amount" means the amount of Cash required to cure any default under an Executory Contract under 11 U.S.C. § 365(b) listed in the Schedule of Assumed Contracts and Unexpired Leases, as determined by the Bankruptcy Court or pursuant to an agreement among the Reorganized Debtor and the other party(ies) to the Executory Contract.

"Cure Amount Objection Bar Date" means February 13, 2019.

"Debtor" means Aina Leʻa, Inc., a Delaware corporation and debtor-in-possession in the Bankruptcy Case.

"Debtor-in-Possession" means the Debtor in its capacity as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

"Deficiency Claim" means that portion of a Secured Claim that exceeds the value of the Lien on property securing that Claim.

"DIP/Exit Lender" means those certain Person(s) that will be advancing funds and entering into the DIP/Exit Loan Facility with the Debtor or the Reorganized Debtor.

"DIP/Exit Loan Facility" means those certain definitive agreements, to be included in the Plan Supplement, authorizing the Debtor or the Reorganized Debtor to borrow up to $5 million from the DIP/Exit Lender.

"Disclosure Statement" means the Disclosure Statement for the Plan of Reorganization of Aina Leʻa, Inc, dated December 27, 2018 (dkt. # 313) filed by the Debtor, as amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the

6

Bankruptcy Rules, and any other applicable law and approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

"Disputed" means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed.

"Disputed Cure Amount" means, with respect to an Executory Contract, the amount that the counterparty to such Executory Contract asserts is necessary to assume such Executory Contract under 11 U.S.C. § 365(b), to the extent different from the amount on the Executory Contract Schedule.

"Disputed Interest" means an Equity Interest as to which a proof of Equity Interest has been Filed or deemed Filed under applicable law, as to which an objection has been or may be timely Filed and which objection, if timely Filed, has not been withdrawn on or before any date fixed for Filing such objections by the Plan or Order of the Bankruptcy Court and has not been overruled or denied by a Final Order. Prior to the time that an objection has been or may be timely Filed, for the purposes of the Plan, an Equity Interest shall be considered a Disputed Interest to the extent that: (i) the amount of the Equity Interest specified in the proof of Equity Interest, if any, exceeds the amount of any corresponding Equity Interest in the Schedules of Assets and Liabilities to the extent of such excess; (ii) no corresponding Equity Interest has been scheduled in the Schedules of Assets and Liabilities; or (iii) the Equity Interest has been scheduled in the Schedules of Assets and Liabilities as (x) contingent, disputed, or unliquidated, or (y) in the amount of $0.

"Distribution" means, except as otherwise provided in the Plan, the property required by the Plan to be distributed to the holders of Allowed Claims.

"Distribution Date" means any date that a Distribution is made under the Plan.

"District Court" means the United States District Court for the District of Hawaii.

"Easement/Utilities Agreement" means that certain "Agreement Regarding Easements and Utilities" dated November 17, 2015 between Bridge and the Debtor.

"Effective Date" means the first Business Day after the Confirmation Date, but no later than the 60th Business Day following the Confirmation Date, on which

(a) no stay of the Confirmation Order is in effect and (b) all conditions precedent specified in Article 13.2 of the Plan have been satisfied or waived, which shall be the day Consummation occurs.

"Entity" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

"Equity Interest" means any Interest in the Debtor represented by ownership of common or preferred stock (no preferred stock or preferred equity in the Debtor has been issued, though the Debtor has the right to so issue under its Articles of Incorporation) including, to the extent provided by applicable law, any warrant, option or other security to acquire any of the foregoing.

"Estate" means the estate created upon the filing of the Bankruptcy Case pursuant to section 541 of the Bankruptcy Code, together with all rights, claims and interests appertaining thereto.

"Estate Property" means all right, title, and interest in and to any and all property of every kind or nature owned by the Debtor or its Estate on the Effective Date as defined by 11 U.S.C. § 541.

"Exculpated Parties" means, solely to the extent of the Exculpation, each of (i) the Debtor and its existing and prior directors, officers, employees, agents, professionals, representatives, predecessors, successors, subsidiaries and affiliates; (ii) the members of the Committee, including their directors, officers, employees, agents, professionals, successors subsidiaries and affiliates, in their capacity as members; and (iii) the Professionals retained in the Bankruptcy Case by the Debtor, and the Committee, and any Related Parties thereto.

"Exculpation" means the exculpation provision set forth in Section 11.5 of the Plan.

"Executory Contracts" means executory contracts and unexpired leases as such terms are used in 11 U.S.C. § 365, including all operating leases, capital leases, and contracts to which the Debtor is a party or beneficiary on the Confirmation Date.

"Existing Common Stock" means the issued and outstanding common stock of the Debtor prior to the Effective Date.

U.S. Bankruptcy Court - Hawaii  #17-00611  Dkt # 474  Filed  05/24/19  Page 114 of 145

"Federal Judgment Rate" means, as applied to any Allowed Claim, the federal judgment interest rate as of the date the Claim is Allowed, calculated as set forth in section 1961 of the Judicial Code.

"File," "Filed," or "Filing" means a request for relief encompassed within a pleading or other document is Filed when and on such date as such pleading or other document is entered on the docket of the Bankruptcy Court in this Bankruptcy Case. A Proof of Claim is Filed when and on such date such Proof of Claim is entered on the claims register in this Bankruptcy Case.

"Final Order" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter which has not been reversed, stayed, modified, or amended, as to which the time to appeal, petition for certiorari or move for reargument, reconsideration, or rehearing has expired and no appeal, petition for certiorari or motion for reargument, reconsideration, or rehearing has been timely filed, or as to which any appeal, petition for certiorari or motion for reargument, reconsideration, or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, reargument, reconsideration, or rehearing was sought; provided that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order.

"General Unsecured Claims" means those Claims arising or deemed by law or under the Bankruptcy Code to have arisen on or before the Petition Date owing to Creditors on account of their (i) providing goods or services to the Debtor in the ordinary course of business or (ii) advancing credit to the Debtor on an unsecured basis only.

"Governmental Development Conditions" means those certain conditions issued, promulgated, or ordered by the County of Hawaii, the State of Hawaii, or the Courts of Hawaii that prevent further construction activity at the Lulana Gardens Development Project site and on the remaining approximately 1,034 acres of adjacent parcels of Estate Property that comprise the Debtor's master conceptual plan for the "Town of Aina Le'a." (including, without limitation, the Tolling Order, the Stop Work Notice, and any other unsatisfied condition that prevents the Debtor from obtaining the New LG Loans).

"Governmental Unit" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

"Governmental Bar Date" means December 19, 2017, the deadline for Governmental Units to File proofs of claim in the Bankruptcy Case.

"Holder" means any Entity holding a Claim or an Interest.

"Indemnification Provisions" means the Debtor's indemnification or contribution provisions in place before or as of the Effective Date whether in the bylaws, certificates of incorporation, other formation documents, board resolutions, or employment contracts for the Debtor's current and former directors, members, trustees, officers, managers, employees, attorneys, other professionals, and agents of the Debtor and each of their respective Affiliates.

"Insider" has the meaning set forth in section 101(31) of the Bankruptcy Code.

"Interest" means any common stock, limited liability company interest, equity security (as defined in section 101(16) of the Bankruptcy Code), equity, ownership, profit interests, unit, or share in the Debtor (including all options, warrants, rights, or other securities or agreements to obtain such an interest or share in the Debtor), whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security, including any Section 510(b) Claims.

"Interest Holder" means any holder or owner of an Equity Interest.

"Internal Revenue Code" means title 26 of the United States Code, 26 U.S.C. §§ 1–9834, as now in effect or hereinafter amended, and the rules and regulations promulgated thereunder.

"IRS" means the Internal Revenue Service.

"Judicial Code" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as now in effect or hereinafter amended, and the rules and regulations promulgated thereunder.

"Land Trust One" means Aina Le'a Land Trust One, a Hawaii land trust, which owns approximately 95% of Parcel D-1-B-2 (a 38-acre parcel commonly known as Lulana Gardens), with the remaining approximately 5% interest in Parcel D-1-B-2 owned by the Debtor. The Debtor further owns approximately 46.9% of the interests in Land Trust One, giving the Debtor an approximately 49.6% beneficial ownership interest in Lulana Gardens.

"Land Trust Two" means Aina Leʻa Land Trust Two, a Hawaii land trust, which owns approximately 15.5367% of Parcel D-1-B-1 (a 23-acre parcel commonly known as Hoʻolei Village). The Debtor owns the remaining interests in Parcel D-1-B-1.

"Land Trusts" means, collectively, Aina Leʻa Land Trust One and Aina Leʻa Land Trust Two.

"Land Use Action Plan" means the plan of action described in detail in that certain letter dated October 30, 2018, as it may be amended from time to time thereafter, from the Debtor (through Land Use Counsel) to the County's Planning Department, a copy of which is attached as **Exhibit F** to the Disclosure Statement, for resolution of the land use issues that prevent further construction activity at the Lulana Gardens Development Project and the remainder of the Villages Project.

"Lien" means a charge against or interest in property to secure payment of a debt or performance of an obligation which has not been avoided or invalidated under any provision of the Bankruptcy Code or other applicable law.

"Liquidation Analysis" shall have the meaning set forth in the Disclosure Statement.

"Liquidation Value" means, with respect to any Class of Claims, the value of recoveries for such Class of Claims as shown in the Liquidation Analysis.

"Local Bankruptcy Rules" means the local rules, the general orders, and the chambers rules for the United States Bankruptcy Court for the District of Hawaii, as now in effect or hereinafter amended, and the rules and regulations promulgated thereunder.

"Lulana Gardens Development Project" means the project for development of the 38 acres on Parcel D-1-B-2 commonly known as Lulana Gardens through construction of 432 townhouse units thereon designed to meet local housing needs and earn the Debtor at least 385 affordable housing credits.

"Mauna Lani Litigation" means that certain action pending in the Circuit Court of the Third Circuit, State of Hawaii, Case No. 1-01-005K, captioned *Mauna Lani Resort Association v. County of Hawaii, et al.*

"Net Distributable Cash Flows" means (i) 50% of the first $5 million in cash flows from sales generated by the Lulana Gardens Development Project that are permitted to be retained by the Reorganized Debtor under the New LG Loans after

11

interest payments, cash reserves, and debt service and prepayment or Lien retirement requirements thereunder, and (ii) 80% of all cash flows from sales generated by the Lulana Gardens Development Project in excess of $5 million in the aggregate that are retained by the Reorganized Debtor under the New LG Loans after interest payments, cash reserves, and debt service and prepayment or Lien retirement requirements thereunder. Payments owing under the Plan from Net Distributable Cash Flows shall be made annually on the last business day of the month of March. To the extent that Net Distributable Cash Flows are payable under the Plan on account of Allowed Claims of a Class that have been paid in full under the Plan, then the Net Distributable Cash Flows payable on account of such Allowed Claims shall be retained by the Reorganized Debtor and not shared with any other Class that is entitled to a share of Net Distributable Cash Flows.

"Net Sales Proceeds" means the amount received by the Reorganized Debtor after all costs and expenses incurred by the Reorganized Debtor in connection with a land sale are deducted from the gross proceeds paid by the buyer in such sale.

"New LG Construction Loan" means the loans to the Company or its wholly-owned subsidiaries following the lifting of the Tolling Order and satisfaction of other Governmental Development Conditions to enable the Reorganized Debtor to borrow up to $45 million for purposes of funding the construction of the Lulana Gardens Development Project.

"New LG HUD-Guaranteed Loan" means the loans to the Company or its wholly-owned subsidiaries to enable the Reorganized Debtor to borrow up to $65 million for the construction of 160 of the 432 townhouses at the Lulana Gardens Development Project.

"New LG Loans" means, collectively, the LG Construction Loan and the LG HUD-Guaranteed Loan.

"Objection to Cure Amount" means the document filed in the Bankruptcy Court by a counterparty to an Executory Contract in the event that such counterparty disputes the Cure Amount identified in the Schedule of Assumed Contracts and Unexpired Leases.

"Ordinary Course Liability" means an Administrative Claim (other than a Professional Compensation Claim) based on liabilities incurred in the ordinary course of the Debtor's business operations.

12

"Other Priority Unsecured Claim" means any Claim (other than an Administrative Claim, a Professional Fee Claim, or a Priority Tax Claim) to the extent entitled to priority in payment under section 507(a) of the Bankruptcy Code.

"Other Secured Claim" means a Secured Claim that is not classified in Class 2A, Class 2B or Class 2C.

"Other Unsecured Claims" means those Claims arising or deemed by law or under the Bankruptcy Code to have arisen on or before the Petition Date that are not cured, paid, released, or waived pursuant to the Plan, assumed by the Reorganized Debtor pursuant to the Plan or agreements incorporated in the Plan, or classified in any other Class of Claims, including, without limitation, (i) Claims based upon guarantees of performance or payment of the obligations or duties of any Person, (ii) Claims for contribution, reimbursement, or indemnity, including Claims arising under Bankruptcy Code section 502(e), (iii) Claims for fines, penalties, or assessments, (iv) Claims for tort liability, (v) Claims arising from the rejection of executory contracts and unexpired leases, including claims under Bankruptcy Code section 502(g), (vi) Claims arising for environmental or bio-hazardous remediation at locations that are not included in the assets vesting in the Reorganized Debtor on the Effective Date, (vii) claims arising under Bankruptcy Code section 502(h) or from avoidance of transfers or obligations under Bankruptcy Code sections 544, 547, 548, or 549, and (viii) any Deficiency Claim.

"Ouli Wells Lease" means that certain "Ouli Wells Lease" by and between Bridge and the Debtor, dated November 17, 2015.

"Person" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

"Petition Date" means June 22, 2017, the date on which the Debtor filed its voluntary Chapter 11 petition commencing the Bankruptcy Case.

"Plan" means this First Amended Plan of Reorganization, dated April 29, 2019 of the Debtor, as it may be altered, amended, modified, or supplemented from time to time in accordance with the terms of the Plan, the Bankruptcy Code, or the Bankruptcy Rules, including all exhibits hereto and the Plan Supplement, which are incorporated herein by reference and made part of this Plan as if set forth herein.

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 119 of 145

"Plan Documents" means, collectively, those material documents executed or to be executed in order to consummate the transactions contemplated under the Plan and which will be included in the Plan Supplement.

"Plan Supplement" means, collectively, any supplement to (a) the proposed path for satisfaction of the Governmental Development Conditions that prevent the commencement or construction and development of the Lulana Gardens Development Project, satisfaction of which would result in the lifting of the Tolling Order, rescission of the Stop Work Notice, and otherwise not impede the ability of the Debtor to commence construction and development of, and to obtain financing in respect of, the Lulana Gardens Development Project, (b) the list of the Executory Contracts to be included on the Schedule of Assumed Contracts and Unexpired Leases, and the Cure Amount relating to each Executory Contract so identified, (c) the Causes of Action or Rights of Action to be retained by the Reorganized Debtor, (d) the liquidation analysis, (e) the feasibility analysis, (f) the Reorganized Debtor's certificate of incorporation and by-laws, and any related corporate documents attendant to the issuance of securities under the Plan, (g) the identity of any additional proposed members of the Reorganized Debtor's board and the proposed executive officers of the Reorganized Debtor, and (h) the identity of any other Insider that will be employed or retained by the Reorganized Debtor, and the nature of any compensation for such Insider.

"Post-Confirmation Service List" means the list of those parties who have notified the Reorganized Debtor in writing, at or following the Confirmation Hearing, of their desire to receive electronic notice of all pleadings filed by the Reorganized Debtor and have provided the e-mail address to which such notices shall be sent.

"Postpetition Secured Notes" means the obligations of the Debtor incurred pursuant to the orders of the Bankruptcy Court [dkt. ## 114, 195] authorizing the Debtor to incur secured postpetition indebtedness, and all promissory notes, security agreements, and other documents evidencing the same.

"Preferred Stock" means that certain Series A Convertible Preferred Stock currently authorized under the Debtor's Certificate of Incorporation, no shares of which were issued and outstanding as of the Petition Date, the rights and preferences for which are set forth in **Exhibit D** to the Plan.

"Priority Tax Claim" means any Claim held by a Governmental Unit entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

"Pro Rata" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in such Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

"Professional" means any professional employed in the Bankruptcy Case pursuant to sections 327, 363 or 1103 of the Bankruptcy Code or any Professional entitled to compensation pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

"Professional Fee Claims" means all Claims for accrued fees and expenses (including transaction or sale fees) for services rendered by a Professional through and including the Confirmation Date regardless of whether a monthly fee statement or interim fee application has been Filed for such fees and expenses. To the extent the Bankruptcy Court or any higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Professional's fees or expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

"Projections" means the financial projections for the Reorganized Debtor for the periods following the Effective Date, as set forth at **Exhibit E** to the Disclosure Statement and discussed generally in Section V of the Disclosure Statement.

"Proof of Claim" means a proof of Claim Filed against the Debtor in the Bankruptcy Case.

"Proof of Interest" means a proof of Interest Filed against the Debtor in the Bankruptcy Case.

"Pro Rata Share" means as to a particular holder of a particular Allowed Claim or Allowed Equity Interest, the ratio that the amount of such Allowed Claim or Allowed Equity Interest held by the holder of such Allowed Claim or Allowed Equity Interest bears to the aggregate amount of all Allowed Claims or Allowed Equity Interests in the particular Class, category, or allocation.

"Proponent" means the Debtor, in its capacity as proponent of the Plan.

"Record Date" means the date of entry of the order approving the Disclosure Statement.

"Reinstated" means (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim or Interest entitles the Holder of such Claim or Interest so as to leave such Claim or Interest not Impaired or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of a Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default: (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) expressly does not require to be cured; (ii) reinstating the maturity (to the extent such maturity has not otherwise accrued by the passage of time) of such Claim or Interest as such maturity existed before such default; (iii) compensating the Holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim or Interest arises from a failure to perform a nonmonetary obligation other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A), compensating the Holder of such Claim or Interest (other than the Debtor or an insider) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim or Interest entitles the Holder.

"Rejection Claim Bar Date" means either (as applicable) (i) in respect to Executory Contracts rejected pursuant to a rejection notice filed pursuant to Section 8.3(b) of the Plan, the date that is thirty (30) days after the filing of such rejection notice, or (ii) as to all other rejected Executory Contracts, the date that is thirty (30) days after the Effective Date.

"Related Parties" means, with respect to any person or entity, any past or present representative, controlling person, officer, director, agent, attorney, advisor, employee, subsidiary or affiliate, shareholder, partner (general or limited), executive committee member, member, manager, equity holder, trustee, executor, predecessor in interest, successor or assign of any such person or entity.

"Released Parties" means: (i) the Debtor and its existing and prior directors, officers, employees, agents, professionals, representatives, predecessors, successors, subsidiaries, affiliates, and Insiders; (ii) the members of the Committee in their capacities as such, including their directors, officers, employees, agents, professionals, successors subsidiaries and affiliates, in their capacity as members; (iii) the Professionals retained in the Bankruptcy Case by the Debtor and the Committee; and (iv) the Trustee of the Land Trusts.

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 122 of 145

"Releasing Parties" means: (a) the Released Parties, (b) each Holder of a Claim or Interest, and (c) each Person directly or indirectly receiving a distribution of Cash or Equity Interests under the Plan.

"Reorganized Debtor" means the Debtor as it exists after the Effective Date.

"Retained Rights of Action" means the Rights of Action identified on **Exhibit C** to the Plan.

"Rights of Action" means any and all claims, debts, demands, rights, defenses, actions, Causes of Action, suits, contracts, agreements, obligations, accounts, defenses, offsets, powers, privileges, licenses and franchises of any kind or character whatsoever, known or unknown, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract or in tort, at law or in equity, or under any other theory of law, of the Debtor or its Estate.

"Road/Intersection Escrow Agreement" means that certain "Road/Intersection Escrow Agreement" dated November 17, 2015 between by and among Bridge, the Debtor, and Old Republic Title & Escrow of Hawaii, Ltd.

"Romspen" means Romspen Investment Corporation, the present holder of all Class 2A Claims.

"Romspen Agreements" means that certain "Loan Agreement," "Promissory Note," and "Real Property Mortgage and Financing Statement," all dated July 24, 2015, and all agreements related thereto, executed by the Debtor and Romspen, which agreements form the basis for the Class 2A Secured Claim.

"Schedule of Assumed Contracts and Unexpired Leases" means the schedule identifying the Executory Contracts and Unexpired Leases to be assumed by the Reorganized Debtor under the Plan. The Schedule of Assumed Contracts and Unexpired Leases is attached as **Exhibit B** to the Plan, as the same may be amended, modified, or supplemented from time to time.

"Schedules" collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as they may be or may have been amended, modified, or supplemented from time to time.

"Section 510(b) Claims" means any Claim subject to subordination under section 510(b) of the Bankruptcy Code; underlined provided that a Section 510(b) Claim shall

not include any Claim subject to subordination under section 510(b) of the Bankruptcy Code arising from or related to an Interest.

"Secured Claim" means a Claim secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code..

"Secured Tax Claim" means a Claim of any taxing authority that is a Secured Claim and that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

"Solicitation Procedures Order" means the *Order (A) Approving the Solicitation Procedures and (B) Granting Related Relief* [dkt. # 321], entered by the Bankruptcy Court on January 2, 2019 approving the Disclosure Statement and establishing, among other things, the procedures for solicitation of votes to accept or reject the Plan.

"Stop-Work Notice" means that certain letter dated May 16, 2017 sent to the Debtor by the County Planning Department and ordering the Debtor to "immediately cease all work, including but not limited to ground disturbance . . . and construction on the subject properties."

"Tax Claim" means any Claim that is a Secured Tax Claim or a Priority Tax Claim. For avoidance of doubt, the franchise taxes assessed by the Debtor's state of incorporation shall not be Tax Claims under the Plan but shall be Class 3 General Unsecured Claims.

"Tolling Order" means that certain order entered on March 28, 2013 in the Mauna Lani Litigation that prevented the Debtor from further development on its real properties until the County had taken a "hard look, as required by Hawaii Revised Statutes chapter 343 and Hawaii Administrative Rules chapter 11-200, at either (1) whether the project proposed by the Debtor was a segment of a larger project or (2) whether there were cumulative impacts which were not fully analyzed."

"Treasury Regulations" means the regulations promulgated under the Internal Revenue Code by the Department of the Treasury of the United States.

"Trustee of the Land Trusts" means any present or former Trustee of any or all of the Land Trusts.

"Unexpired Lease" means an unexpired lease to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

"Unimpaired" " means a Claim or Equity Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

"U.S. Trustee" means the Office of the United States Trustee for Region 15.

"U.S. Trustee Fees" means fees arising under section 1930(a)(6) of the Judicial Code and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

"Villages Project" means the project area consists of (i) approximately 1,072 acres of land containing a mix of residential (RM-4, RM-7, RM-14.5, RA-1a), agricultural (A-5a), and commercial (CV-10) zonings in four separate parcels, TMK Nos. (3) 6-8-001:036, 069, 038, and 039, that Debtor owns in fee (the "Project Area"), and (ii) approximately 27 acres of commercial (CV-10) zoned land, TMK No. (3) 6-8-001:025, which Bridge owns, but for which Debtor has a recorded fixed price purchase option, expiring November 2018.

"Voting Agent" means Choi & Ito, Attorneys at Law, 700 Bishop Street, Suite 1107, Honolulu, Hawaii 96813.

"Voting Deadline" means February 13, 2019 at 4:00 p.m., Hawaii Standard Time.

"Voting Record Date" means December 27, 2019.

"Zhang" means that Libo Zhang, an individual, and the Holder of the Class 2C Secured Claim.

"Zhang Agreements" means that certain "Promissory Note" and "Mortgage, Security Agreement and Financing Statement," all dated November 17, 2015, and all agreements related thereto, executed by the Debtor and Zhang, which agreements form the basis for the Class 2C Secured Claim.

19

# EXHIBIT B

## Schedule of Assumed Contracts and Unexpired Leases

The Debtor, in the exercise of sound business judgment, has determined to assume the following executory contracts, effective as of the Effective Date. The Debtor reserves the right to add other Executory Contracts and Unexpired Leases to this Schedule through the conclusion of the Confirmation Hearing:

1. Temporary Water Purchase Agreement dated August 1, 2011 by and between Waikoloa Water Company, Inc., dba West Hawaii Water Company, and DW Aina Leʻa development, LLC ("DW") which agreement was assigned by DW to the Debtor.
   - Cure Amount: $0.00

2. Easement granted by Waikoloa Village Association, as Grantor, to Bridge Aina Leʻa, as Grantee, recorded State of Hawaii Bureau of Conveyances, on December 22, 2003 as Document NO. 2003- 281789, the rights under which were assigned to the Debtor.
   - Cure Amount: $0.00

3. Letter Agreement between Aina Leʻa, Inc. and Hawaii Electric Light Company Inc.("HELCO") dated July 13, 2013.
   - Cure Amount: $0.00

20

# EXHIBIT C
## Retained Causes of Action

1. All counterclaims or other Rights of Action that could have been asserted by the Debtor against any of the Plaintiffs identified in Part 3 of the Debtor's Statement of Financial Affairs (Dkt No. 44).

2. All counterclaims, objections, or other Rights of Action that were or could be asserted by the Debtor against any Creditor of the Debtor that has filed a Proof of Claim or against any Person or Entity whose Claim or Interest is listed on the Schedules or on any other list filed by the Debtor in this Case

3. All Rights of Action that were or could be asserted by the Debtor's predecessor-in-interest, DW Aina Le'a Development, LLC, against the Statement of Hawai'i, Land Use Commission, the State of Hawai'i, and Doe Governmental Units 1-10 in the Circuit Court of the First Circuit of the State of Hawaii, Case No. 17-1-0302-02-KTN, based on the decision and order by Defendants to reclassify the Debtor's land from urban classification to agricultural classification in violation of Plaintiff's constitutional and other rights.

4. All Rights of Action against: (A) McCorriston Miller Mukai MacKinnon LLP ("McCorriston") for breach of fiduciary duty, malpractice, breach of contract and potentially other legal theories relating to all actions undertaken by McCorriston in respect of its representation of Romspen in or in connection with the prepetition foreclosure action initiated by Romspen against the Debtor, the objections filed in the Bankruptcy Case by McCorriston as counsel to Romspen, and any other actions undertaken by McCorriston that were adverse to the interests of the Debtor, the former client of McCorriston; and (B) Romspen for aiding and abetting McCorriston's misconduct.

5. All Rights of Action based on: (A) avoidance under applicable federal and state law of the obligations incurred and/or Liens granted by the Debtor in favor of Bridge under that certain Purchase and Sale Agreement dated October 16, 2015 by and between the Debtor and Bridge, including those obligations arising under that certain $14 million promissory note executed by the Debtor in favor of Bridge and under any purported releases of any of the Debtor's Rights of Action against Bridge; (B) misrepresentation,

fraudulent inducement, breach of contract, and any other actions against Bridge in connection with or arising under that certain Purchase and Sale Agreement dated February 2009 and any agreement related or ancillary thereto or entered into or in connection therewith; (C) breach of contract, misrepresentation, tortious interference, or stay violation claims against Bridge related to (x) Bridge's to failure to comply with the LUC and County's requirements under Ordinance 96-153 and (y) Bridge's postpetition submission of an EIS-PN that specified an intention to seek a change in zoning from agricultural to rural for its approximately 1,900 adjacent acres of property; (D) avoidance, setoff, or recoupment based on double recovery to Bridge to the extent Bridge obtains a recovery in its takings action against the State of Hawaii or any other governmental instrumentality therein.

6. Unless otherwise released by the Plan or a separate written agreement executed by the Debtor, the Debtor expressly reserves all Rights of Action, including Avoidance Actions, against or related to any creditor or former creditor that owes or may in the future owe money to the Debtor.

7. Rights of Action the Debtor could assert against any Person or Entity under sections 544, 547, 548, or 549 of the Bankruptcy Code or other applicable law.

8. Statements 3b and 3c of the Statement of Financial Affairs filed by the Debtor in this Chapter 11 Cases are hereby incorporated by reference as if fully set forth herein

**EXHIBIT D**

**Form of Rights and Preferences**
**<u>for Series A Convertible Preferred Stock</u>**

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed  05/24/19   Page 129 of 145

# AINA LE'A, INC.

### Rights and Preferences
### Series A Convertible Preferred Stock

Aina Le'a, Inc. ("Aina Le'a," the "Company," or the "Debtor") is issuing this Series A Convertible Preferred Stock in accordance with the terms of its Plan of Reorganization ("Plan") filed in its Chapter 11 case pending in the United States Bankruptcy Court for the District of Hawaii, under case No. 17-0061. The Series A Stock is being distributed and issued by the Company as a Debtor in Possession without registration under the Securities Act of 1933, as amended (the "Securities Act")1, in reliance upon the exemption provided in Section 1145 of the Bankruptcy Code. None of the Stock being issued has been or will be registered under the Securities Act, nor any state or local law requiring registration for offer and sale of a security. Any capitalized term used in the Plan that is not defined herein has the meaning ascribed to that term in the Bankruptcy Code and/or Bankruptcy Rules.

1. <u>Designation and Rank</u>. The designation of such series of the Preferred Stock shall be the Series A Convertible Preferred Stock, par value $0.001 per share (the "<u>Series A Preferred Stock</u>"). The maximum number of shares of Series A Preferred Stock shall be Two million (2,000,000) shares. The Series A Preferred Stock shall rank senior to the Corporation's common stock, par value $0.001 per share (the "<u>Common Stock</u>"), and to all other classes and series of equity securities of the Corporation which by their terms do not rank senior to the Series A Preferred Stock ("<u>Junior Stock</u>"). The Series A Preferred Stock shall be subordinate and rank junior to all indebtedness of the Corporation now or hereafter outstanding.

2. <u>Dividends</u>.

(a) Holders of Series A Preferred Stock shall be entitled to receive, when and as declared by the Board of Directors, either out of funds legally available therefor or through the issuance of shares of the Company's Common Stock, and the Company shall accrue, quarterly in arrears on March 31, June 30, September 30, and December 31 of each year, commencing on the Original Issue Date, cumulative dividends on the Series A Preferred Stock at the amount per share (as a percentage of the original issue price per share) equal to $1.00 per annum, payable in cash or shares of Common Stock at the sole discretion of the Company. If a dividend is paid in shares of Common Stock of the Company, the number of shares to be issued shall be based on the average per share market price of the Common Stock for the 14-day period immediately preceding the applicable accrual date (i.e., March 31, June 30, September 30, or December 31, as the case may be). Dividends hereunder shall be paid quarterly, no later than the thirtieth (30th) day following the end of the accrual period. The Company may pay, at its option, accrued dividends at any time while the Series A Preferred Stock remains outstanding. The Company shall pay all accrued and unpaid dividends within thirty (30) days following either (a) the conversion of all of the Series A Preferred Stock or (b) the redemption by the Company of all of the remaining outstanding shares of Series A Preferred Stock. Dividends on the Series A Preferred Stock shall be calculated on the basis of a 360-day year, shall accrue daily commencing on the date of issuance of the underlying shares of Series A Preferred Stock, and shall be deemed to accrue on such date whether or not earned or declared and whether or not there are profits, surplus or other funds of the Company legally available for the payment of dividends. The person holding the Series A Preferred Stock on an applicable record date for any dividend payment will be entitled to receive such dividend payment and any other accrued and unpaid dividends which accrued prior to such dividend payment date, without regard to any sale or disposition of such Series A Preferred Stock subsequent to the applicable record date but prior to the applicable dividend payment date. Except as otherwise provided herein, if at any time the Company pays less than the total amount of dividends then accrued on account of the Series A Preferred Stock, such payment shall be distributed ratably among the Holders of the Series A Preferred Stock based upon the number of shares then held by each Holder in proportion to the total number of shares of Series A Preferred Stock then outstanding.

(b) Notwithstanding anything to the contrary contained herein, the Company may not issue shares of Common Stock in payment of dividends on the Series A Preferred Stock (and must deliver cash in respect thereof) if: (i) the number of shares of Common Stock at the time authorized, unissued and unreserved for all purposes, or held as treasury stock, is either insufficient to issue such dividends in shares of Common Stock or the Company has not duly reserved for issuance in respect of such dividends a sufficient number of shares of Common Stock, or (ii) the Company shall have failed to timely satisfy its obligations pursuant to any Conversion Notice.

3. <u>Voting Rights</u>. Except as otherwise required by Delaware law and in <u>Section 6</u> hereof, the Series A Preferred stock shall vote with the Common Stock on an as-converted basis. The Common Stock into which the shares of Series A Preferred Stock are convertible shall, upon issuance, have all the same voting rights as other issued and outstanding shares of Common

Stock of the Corporation.

4. <u>Liquidation Preference</u>.

(a) Upon any liquidation, dissolution or winding up of the Corporation, whether voluntary or involuntary, before any distribution or payment shall be made to the holders of the Common Stock, the holders of Series A Preferred Stock shall be entitled to be paid out of the assets of the Corporation their "<u>Liquidation Preference</u>". Liquidation Preference means, with respect to a share of Series A Preferred Stock, an amount equal to Twenty Five Dollars ($25.00) (as adjusted for any stock dividends, combinations, splits, recapitalizations and the like with respect to such shares) plus all accrued but unpaid dividends thereon (whether or not such dividends are declared). If, upon any such liquidation, dissolution or winding up, the assets of the Corporation shall be insufficient to make payment in full to all holders of Series A Preferred Stock of the Liquidation Preference set forth in this Section 4(a), then such assets shall be distributed among the holders of Series A Preferred Stock at the time outstanding, ratably in proportion to the full amounts to which they would otherwise be respectively entitled.

(b) After the payment of the full Liquidation Preference of the Series A Preferred Stock as set forth in Section 4(a) above, the assets of the Corporation legally available for distribution, if any, shall be distributed ratably to the holders of the Common Stock.

5. <u>Conversion</u>. The Holders of Series A Preferred Stock shall have the following conversion rights (the "<u>Conversion Rights</u>"):

(a) <u>Optional Conversion</u>. Subject to compliance with the provisions of this Section 5, any shares of Series A Preferred Stock may, at the option of the Holder, be converted into fully-paid and nonassessable shares of Common Stock. The number of shares of Common Stock to which a Holder of Series A Preferred Stock shall be entitled upon conversion shall initially be one (1) share of Common Stock for one (1) share of Series A Preferred Stock converted, subject to adjustment as provided in this Section 5 ("<u>Conversion Basis</u>").

(b) <u>Mechanics of Conversion</u>. Each Holder of Series A Preferred Stock who desires to convert the same into shares of Common Stock pursuant to this Section 5 shall surrender the certificate or certificates therefore, duly endorsed, at the office of the Corporation or any authorized transfer agent of the Corporation for the Series A Preferred Stock, and shall give written notice to the Corporation at such office that such Holder elects to convert the same. Such notice shall state the number of shares of Series A Preferred Stock being converted. Thereupon, the Corporation or its transfer agent shall promptly issue and deliver at such office to such Holder a certificate or certificates for the number of shares of Common Stock to which such Holder is entitled and shall promptly pay in cash (at the Common Stock's fair market value determined by the Board of Directors as of the date of conversion) the value of any fractional share of Common Stock otherwise issuable to any Holder of Series A Preferred Stock. Such conversion shall be deemed to have been made at the close of business on the date of such surrender of the certificates representing the shares of Series A Preferred Stock to be converted, and the person entitled to receive the shares of Common Stock issuable upon such conversion shall be treated for all purposes as the record Holder of such shares of Common Stock on such date. The Corporation or its transfer agent shall not be obligated to issue certificates evidencing the shares of Common Stock issuable upon such conversion unless the certificates evidencing such shares of Series A Preferred Stock are either delivered to the Corporation or its transfer agent as provided above, or the Holder notifies the Corporation or its transfer agent that such certificates have been lost, stolen or destroyed and executes an agreement satisfactory to the Corporation to indemnify the Corporation from any loss incurred by it in connection with such certificates.

(c) <u>Adjustment for Stock Splits and Combinations</u>. If the Corporation shall at any time or from time to time after the date that the first share of Series A Preferred Stock is issued (the "<u>Original Issue Date</u>") effect a subdivision of the outstanding Common Stock without a corresponding subdivision of the Preferred Stock, the Series A Preferred Stock Conversion Basis in effect immediately before that subdivision shall be proportionately decreased. Conversely, if the Corporation shall at any time or from time to time after the Original Issue Date combine the outstanding shares of Common Stock into a smaller number of shares without a corresponding combination of the Preferred Stock, the Series A Preferred Stock Conversion Basis in effect immediately before the combination shall be proportionately increased. Any adjustment under this Section 5(c) shall become effective at the close of business on the date the subdivision or combination becomes effective.

(d) <u>Adjustment for Common Stock Dividends and Distributions</u>. If the Corporation at any time or from time to time after the Original Issue Date makes, or fixes a record date for the determination of Holders of Common Stock entitled to receive, a dividend or other distribution payable in additional shares of Common Stock, in each such event the Series A Preferred Stock Conversion Basis that is then in effect shall be proportionately increased as of the time of such issuance or, in

the event such record date is fixed, as of the close of business on such record date, by multiplying the Series A Preferred Stock Conversion Basis then in effect by a fraction (i) the numerator of which is the total number of shares of Common Stock issued and outstanding immediately prior to the time of such issuance or the close of business on such record date, and (ii) the denominator of which is the total number of shares of Common Stock issued and outstanding immediately prior to the time of such issuance or the close of business on such record date plus the number of shares of Common Stock issuable in payment of such dividend or distribution; *provided, however*, that if such record date is fixed and such dividend is not fully paid or if such distribution is not fully made on the date fixed therefore, the Series A Preferred Stock Conversion Price shall be recomputed accordingly as of the close of business on such record date and thereafter the Series A Preferred Stock Conversion Basis shall be adjusted pursuant to this Section 5(d) to reflect the actual payment of such dividend or distribution.

(e) <u>Adjustment for Reclassification, Exchange and Substitution</u>. If at any time or from time to time after the Original Issue Date, the Common Stock issuable upon the conversion of the Series A Preferred Stock is changed into the same or a different number of shares of any class or classes of stock, whether by recapitalization, reclassification or otherwise (other than an Acquisition as defined in Section 4(c) or a subdivision or combination of shares or stock dividend or a reorganization, merger, consolidation or sale of assets provided for elsewhere in this Section 5), each Holder of Series A Preferred Stock shall have the right thereafter to convert such stock into the kind and amount of stock and other securities and property receivable upon such recapitalization, reclassification or other change by Holders of the maximum number of shares of Common Stock into which such shares of Series A Preferred Stock could have been converted immediately prior to such recapitalization, reclassification or change, all subject to further adjustment as provided herein or with respect to such other securities or property by the terms thereof.

(f) <u>Reorganizations, Mergers or Consolidations</u>. If at any time or from time to time after the Original Issue Date, there is a capital reorganization of the Common Stock or the merger or consolidation of the Corporation with or into another corporation or another entity or person (other than an Acquisition as defined in Section 4(c) or a recapitalization, subdivision, combination, reclassification, exchange or substitution of shares provided for elsewhere in this Section 5), as a part of such capital reorganization, provision shall be made so that the Holders of the Series A Preferred Stock shall thereafter be entitled to receive upon conversion of the Series A Preferred Stock the number of shares of stock or other securities or property of the Corporation to which a Holder of the number of shares of Common Stock deliverable upon conversion would have been entitled on such capital reorganization, subject to adjustment in respect of such stock or securities by the terms thereof. In any such case, appropriate adjustment shall be made in the application of the provisions of this Section 5 with respect to the rights of the Holders of Series A Preferred Stock after the capital reorganization to the end that the provisions of this Section 5 (including adjustment of the Series A Preferred Stock Conversion Basis then in effect and the number of shares issuable upon conversion of the Series A Preferred Stock) shall be applicable after that event and be as nearly equivalent as practicable.

(g) <u>Certificate of Adjustment</u>. In each case of an adjustment or readjustment of the Series A Preferred Stock Conversion Basis for the number of shares of Common Stock or other securities issuable upon conversion of the Series A Preferred Stock, if the Series A Preferred Stock is then convertible pursuant to this Section 5, the Corporation, at its expense, shall compute such adjustment or readjustment in accordance with the provisions hereof and prepare a certificate showing such adjustment or readjustment, and shall mail such certificate, by first class mail, postage prepaid, to each registered Holder of Series A Preferred Stock at the Holder's address as shown in the Corporation's books. The certificate shall set forth such adjustment or readjustment, showing in detail the facts upon which such adjustment or readjustment is based, including a statement of (i) the consideration received or deemed to be received by the Corporation for any additional shares of Common Stock issued or sold or deemed to have been issued or sold, (ii) the Series A Preferred Stock Conversion Basis at the time in effect, (iii) the number of additional shares of Common Stock and (iv) the type and amount, if any, of other property which at the time would be received upon conversion of the Series A Preferred Stock.

(h) <u>Notices of Record Date</u>. Upon (i) any taking by the Corporation of a record of the Holders of any class of securities for the purpose of determining the Holders thereof who are entitled to receive any dividend or other distribution, or (ii) any Acquisition (as defined in Section 4(c)) or other capital reorganization of the Corporation, any reclassification or recapitalization of the capital stock of the Corporation, any merger or consolidation of the Corporation with or into any other corporation, or any voluntary or involuntary dissolution, liquidation or winding up of the Corporation, the Corporation shall mail to each Holder of Series A Preferred Stock at least ten (10) days prior to the record date specified therein (or such shorter period approved by the Holders of at least a majority of the then outstanding shares of Series A Preferred Stock) a notice specifying (A) the date on which any such record is to be taken for the purpose of such dividend or distribution and a description of such dividend or distribution; (B) the date on which any such Acquisition, reorganization, reclassification, transfer, consolidation, merger, dissolution, liquidation or winding up is expected to become effective; and (C) the date, if any, that is to be fixed as to when the Holders of record of Common Stock (or other securities) shall be entitled to exchange their shares of Common Stock (or other securities) for securities or other property deliverable upon such Acquisition, reorganization, reclassification, transfer, consolidation, merger, dissolution, liquidation or winding up.

(i) <u>Fractional Shares</u>. No fractional shares of Common Stock shall be issued upon conversion of Series A Preferred Stock. All shares of Common Stock (including fractions thereof) issuable upon conversion of more than one share of Series A Preferred Stock by a Holder thereof shall be aggregated for purposes of determining whether the conversion would result in the issuance of any fractional share. If, after the aforementioned aggregation, the conversion would result in the issuance of any fractional share, the Corporation shall, in lieu of issuing any fractional share, pay cash equal to the product of such fraction multiplied by the Common Stock's fair market value (as determined by the Board of Directors) on the date of conversion.

(j) <u>Reservation of Stock Issuable Upon Conversion</u>. The Corporation shall at all times reserve and keep available out of its authorized but unissued shares of Common Stock, solely for the purpose of effecting the conversion of the shares of the Series A Preferred Stock, such number of its shares of Common Stock as shall from time to time be sufficient to effect the conversion of all outstanding shares of the Series A Preferred Stock. If at any time the number of authorized but unissued shares of Common Stock shall not be sufficient to effect the conversion of all then outstanding shares of the Series A Preferred Stock, the Corporation will take such corporate action as may, in the opinion of its counsel, be necessary to increase its authorized but unissued shares of Common Stock to such number of shares as shall be sufficient for such purpose.

(k) <u>Notices</u>. Any notice required by the provisions of this Section 5 shall be in writing and shall be deemed effectively given: (i) upon personal delivery to the party to be notified, (ii) when sent by confirmed electronic mail or facsimile if sent during normal business hours of the recipient, and if not, then on the next Business Day, (iii) five (5) calendar days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (iv) one (1) Business Day after deposit with a nationally recognized overnight courier, specifying next Business Day delivery, with verification of receipt. All notices shall be addressed to each Holder of record at the address of such Holder appearing on the books of the Corporation. For purposes of this Certificate, "<u>Business Day</u>" shall mean a day on which banks are open for business in the State of Hawaii or such other state in which the principal executive offices of the Corporation are then located.

(l) <u>Payment of Taxes</u>. The Corporation will pay all taxes (other than taxes based upon income) and other governmental charges that may be imposed with respect to the issue or delivery of shares of Common Stock upon conversion of shares of Series A Preferred Stock, excluding any tax or other charge imposed in connection with any transfer involved in the issue and delivery of shares of Common Stock in a name other than that in which the shares of Series A Preferred Stock so converted were registered.

6. <u>Amendments</u>.

(a) The affirmative vote at a meeting duly called and held for such purpose or the written consent without a meeting, of the holders of not less than a majority of the then outstanding shares of Series A Preferred Stock (in addition to any other corporate approvals then required to effect such action), shall be required (i) for any change to this Certificate of Designation or the Corporation's Articles of Incorporation which would amend, alter, change or repeal any of the powers, designations, preferences and rights of the Series A Preferred Stock, or (ii) for the Corporation to authorize, create, issue or increase the authorized or issued amount of any class or series of stock, which shares rank senior to, or have preference, privilege or priority to, the Series A Preferred Stock. Notwithstanding the foregoing to the contrary, no such affirmative vote or written consent pursuant to this <u>Section 6</u> shall be required for the events set forth in this <u>Section 6(a)</u> in the event of a closing of a liquidation, dissolution, or winding up of the Corporation which would result in payment to the holders of Series A Preferred Stock of the Series A Liquidation Preference Amount.

(b) Any of the designations, powers, preferences, rights, privileges or provisions of this Certificate of Designation may be waived by the Board of Directors of the Corporation and the affirmative vote at a meeting duly called and held for such purpose or the written consent without a meeting, of the holders of not less than a majority of the then outstanding shares of Series A Preferred Stock.

7. <u>No Preemptive Rights</u>. Except as provided in Section 5 hereof, no Holder of the Series A Preferred Stock shall be entitled to rights to subscribe for, purchase or receive any part of any new or additional shares of any class, whether now or hereinafter authorized, or of bonds or debentures, or other evidences of indebtedness convertible into or exchangeable for shares of any class, but all such new or additional shares of any class, or any bond, debentures or other evidences of indebtedness convertible into or exchangeable for shares, may be issued and disposed of by the Board of Directors on such terms and for such consideration (to the extent permitted by law), and to such person or persons as the Board of Directors in their absolute discretion may deem advisable.

8. <u>Redemption</u>. At any time, or from time to time, after three (3) years from issuance, the Corporation may redeem all

or a portion of the Series A Preferred Stock outstanding upon fifteen (15) days prior written notice (the "Corporation's Redemption Notice") at a price per share of Series A Preferred Stock equal to the Liquidation Preference (the "Company's Redemption Price"); provided, that if a Holder has delivered a Conversion Notice to the Corporation or delivers a Conversion Notice prior to the Corporation's Redemption Date (as defined below), all of the shares of Series A Preferred Stock designated to be redeemed may be converted by such Holder. The Corporation's Redemption Notice shall state the date of redemption, which date shall not be earlier than the sixteenth day after the Corporation had delivered the Corporation's Redemption Notice (the "Corporation's Redemption Date"), the Corporation's Redemption Price and the number of shares to be redeemed by the Corporation. The Corporation shall not send a Corporation's Redemption Notice unless it has good and clear funds for a minimum of the amount it intends to redeem in a bank account controlled by the Corporation. The Corporation shall deliver the Corporation's Redemption Price to the Holder(s) on the Corporation's Redemption Date; provided, that if a Holder delivers a Conversion Notice before the Corporation's Redemption Date, then the portion of the Corporation's Redemption Price which would be paid to redeem the shares of Series A Preferred Stock covered by such Conversion Notice shall be returned to the Corporation upon delivery of the Common Stock issuable in connection with such Conversion Notice to such Holder. On the Corporation's Redemption Date, the Corporation shall pay the Corporation's Redemption Price, subject to any adjustment pursuant to the immediately preceding sentence, to the Holder(s) on a pro rata basis. If the Corporation fails to pay the Corporation's Redemption Price by the Corporation's Redemption Date, the redemption will be declared null and void and the Corporation shall lose its right to serve a Corporations' Redemption Notice in the future.

9. Lost or Stolen Certificates. Upon receipt by the Corporation of evidence satisfactory to the Corporation of the loss, theft, destruction or mutilation of any Series A Preferred Stock Certificate representing the shares of Series A Preferred Stock, and, in the case of loss, theft or destruction, of any indemnification undertaking by the Holder to the Corporation and, in the case of mutilation, upon surrender and cancellation of the Series A Preferred Stock Certificate, the Corporation shall execute and deliver new preferred stock certificate(s) of like tenor and date; provided, however, that the Corporation shall not be obligated to re-issue Series A Preferred Stock Certificates if the Holder contemporaneously requests the Corporation to convert such shares of Series A Preferred Stock into Common Stock.

10. Remedies, Characterizations, Other Obligations, Breaches and Injunctive Relief. The remedies provided in this Certificate of Designation shall be cumulative and in addition to all other remedies available under this Certificate of Designation, at law or in equity (including a decree of specific performance and/or other injunctive relief), no remedy contained herein shall be deemed a waiver of compliance with the provisions giving rise to such remedy and nothing herein shall limit a Holder's right to pursue actual damages for any failure by the Corporation to comply with the terms of this Certificate of Designation. Amounts set forth or provided for herein with respect to payments, conversion and the like (and the computation thereof) shall be the amounts to be received by the Holder thereof and shall not, except as expressly provided herein, be subject to any other obligation of the Corporation (or the performance thereof). The Corporation acknowledges that a breach by it of its obligations hereunder will cause irreparable harm to the Holders of the Series A Preferred Stock and that the remedy at law for any such breach may be inadequate.

11. Specific Shall Not Limit General; Construction. No specific provision contained in this Certificate of Designation shall limit or modify any more general provision contained herein. This Certificate of Designation shall be deemed to be jointly drafted by the Corporation and all initial purchasers of the Series A Preferred Stock and shall not be construed against any person as the drafter hereof.

12. Failure or Indulgence Not Waiver. No failure or delay on the part of a Holder of Series A Preferred Stock in the exercise of any power, right or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such power, right or privilege preclude other or further exercise thereof or of any other right, power or privilege.

[*The remainder of this page is intentionally left blank.*]

EXHIBIT I

**AINA LE'A, INC.**
**CONVERSION NOTICE**

Reference is made to the Certificate of Designation of the Relative Rights and Preferences of the Series A Preferred Stock of Aina Le'a, Inc. (the "Certificate of Designation"). In accordance with and pursuant to the Certificate of Designation, the undersigned hereby elects to convert the number of shares of Preferred Stock, par value $0.001 per share (the "Preferred Shares"), of Aina Le'a, Inc., a Delaware corporation (the "Corporation"), indicated below into shares of Common Stock, par value $0.001 per share (the "Common Stock"), of the Corporation, by tendering the stock certificate(s) representing the

Preferred Shares specified below as of the date specified below.

Date of Conversion _____

Number of Preferred Shares to be converted: _____

The Common Stock has been sold pursuant to an effective registration statement: Yes: ☐ No: ☐

Please confirm the following information:

Conversion Price: _____

Number of shares of Common Stock to be issued: _____

Number of shares of Common Stock beneficially owned or deemed
beneficially owned by the Holder on the Date of Conversion: _____

Please issue the Common Stock into which the Preferred Shares are being converted and, if applicable, any check drawn on an account of the Corporation in the following name and to the following address:

Issue to: _____
_____
_____

Facsimile Number: _____

Authorization: _____

By: _____
Title: _____
Dated _____

# EXHIBIT B

(Land Use Action Plan)

# CASE LOMBARDI & PETTIT

A LAW CORPORATION

Celebrating **130** YEARS
1888 - 2018

Lissa H. Andrews
David G. Brittin
James M. Cribley
Stacey W.E. Foy
Adelbert Green
Lisa K. Johnson
Michael L. Lam
Dennis M. Lombardi†

Michael R. Marsh
Jon M.H. Pang
Ted N. Pettit, Ph.D.
Lauren R. Sharkey
Mark G. Valencia
Nancy J. Youngren
John D. Zalewski

Michelle J. Chapman
Matthew A. Cohen
Mark J. Driessen
Harrison K. Goo

Jana M. Naruse
Stephanie M. Segovia
Ellen A. Swick

Of Counsel
John R. Dwyer, Jr.
Gregory M. Hansen
Frederick W. Rohlfing III

† A Law Corporation
Daniel H. Case (1925-2016)

PACIFIC GUARDIAN CENTER, MAUKA TOWER
737 BISHOP STREET, SUITE 2600
HONOLULU, HAWAII 96813-3283

TELEPHONE: (808) 547-5400
FACSIMILE: (808) 523-1888

February 7, 2019

Mr. Michael Yee                                    VIA U.S. MAIL AND EMAIL
Planning Director
Mr. Duane Kanuha
Deputy Director
East Hawaii Office
101 Pauahi Street, Suite 3
Hilo, Hawaii 96720

    Re:    The Villages of Aina Le'a ("**Project**")
            Waikoloa, South Kohala District, Island of Hawaii
            TMK Nos. (3) 6-8-001:025, 036, 069, 038, 039

Dear Mr. Yee and Mr. Kanuha:

Based on our continuing discussions with Mr. Kanuha, we are supplementing our October 30, 2018 communication to the County of Hawaii Planning Department ("**Department**") to clarify the proposed concurrent processing of an SEIS and Project District application for Aina Le'a Inc.'s ("**ALI**") urban land.

As you know, since July 2018, we have been meeting and conferring with the Department to discuss possible avenues for the Department and ALI to work together to resolve the Third Circuit Court's Order filed March 28, 2013 ("**Tolling Order**") in Civil No. 11-01-005K ("**Civil Action**") and address the concerns of the Department relative to the conditions of Ordinance No. 96-153 ("**Ordinance**"), which the Department raised in its letter dated May 16, 2017.

## The Project

Aina Le'a wishes to develop the Project known as "The Villages of Aina Le'a" in South Kohala, Waikoloa. The Project area consists of approximately 1,072 acres of land containing a mix of residential (RM-4, RM-7, RM-14.5, RA-1a), agricultural (A-5a), and commercial (CV-10) zonings in four separate parcels, TMK Nos. (3) 6-8-001:036, 069, 038, and 039, that ALI owns in fee ("**Project Area**"). TMK parcels 36 and 69 are also partially owned by Aina Le'a Land Trust No. 1 & No. 2, respectively. The Project Area also includes 27 acres of commercial (CV-10) zoned land, TMK No. (3) 6-8-001:025, which Bridge Aina Le'a, LLC ("**Bridge**") owns, but for which ALI has a recorded fixed price purchase option.

The Project will consist of approximately 1,932 single-family and multi-family residential

units, at least 385 of which will be affordable units, a mixed-use commercial area, a school site, open space for a future golf course, clubhouse, two or more parks including a network of walking and cycling paths, and natural open space buffers. The first component of the Project that will be constructed is the affordable housing in Lulana Gardens I. Development has substantially commenced with the construction of initial affordable housing units and infrastructure. The initiation of subdivisions for the Project have stalled (i.e., SUB 11-001070) or been rescinded (i.e., PUD 11-000020) due to the issues described below, which ALI is seeking to remedy. ALI intends to renew or otherwise continue efforts to subdivide the Project as necessary.

## Current Status

Since acquiring the Project Area, ALI has been embroiled in proceedings and litigation relating to zoning and environmental challenges stemming from the actions and omissions of ALI's predecessors. These challenges, beginning in 2008 and continuing to the present, have delayed and significantly hindered development of the Project.

By letter dated May 16, 2017, the Department issued a notice to stop work based on the Tolling Order, which tolled development in the Project and remanded issues relating to the Final Environmental Impact Statement ("**FEIS**") for the Project to the Department for further action. In its letter, the Department instructed that "work shall be prohibited on the Property until a Final Supplemental Environmental Impact Statement (SEIS) has been accepted by the Department." The Department also indicated that it would initiate rezoning due to non-compliance with the conditions of the Ordinance, many of which require development. ALI has been striving to work with the Department to identify a path to resolve the Tolling Order and undertake the actions necessary to address the conditions of zoning.

Because of the foregoing hurdles, ALI struggled to obtain regulatory approvals, which caused two lenders to recall their loans. On June 22, 2017, ALI elected to protect its assets and restructure its funding to meet its obligations in an orderly manner under Chapter 11 of the U.S. Bankruptcy Code. ALI is currently operating as Debtor-in-Possession in BK No. 17-00611, which is pending before the U.S. Bankruptcy Court for the District of Hawaii ("**Bankruptcy Action**"). As part of its reorganization plan, ALI has committed to undertaking the steps outlined herein to resolve the Tolling Order, address the conditions of zoning, and recommence development.

The plan, as outlined in our October 2018 letter and reorganized below, proposes to resolve the Tolling Order by providing the Department with an SEIS that will include an evaluation of the possible impacts of Bridge developing on its land to the permitted use as currently zoned, while concurrently processing a project district permit for the urban lands owned by ALI any approval of which must await the Department's acceptance of the SEIS. The SEIS, like the FEIS, will contemplate project district zoning for the Project Area, which ALI has agreed to pursue at the Department's suggestion. Based on other project exemplars that were identified by the Department during our meetings, ALI will file an application for Project District zoning and seek a housekeeping amendment to remove the land that ALI owns and/or controls from the Ordinance,

thereby more clearly separating ALI from Bridge, and obtaining a new set of conditions specific to the Project Area. To allow flexibility to incorporate input from the Department and County agencies, and facilitate complete and accurate disclosure as the Project details are refined, ALI has proposed to undertake processing of the SEIS and Project District application concurrently, but will hold approval of the Project District in abeyance pending approval of the SEIS.

### Plan to Resolve Open Issues re: Tolling Order & Ordinance

1. **Resolve Tolling Order with SEIS**
   Pursuant to the Department's prior instructions in its May 16, 2017 letter, ALI will submit an SEIS for the Project. The SEIS will provide additional and expanded disclosures to enable the Department to fully evaluate the potential environmental impacts of the Project as required under HEPA.

   a. **Hard Look & Determination that SEIS is Required**
      i. While the Department has indicated that an SEIS is required, the Department should make a formal written determination that it has taken a hard look and that an SEIS is required for the Project.
   b. **Submit SEIS**
      i. **Scope**: ALI will publish an SEIS preparation notice that will identify ALI as the sole applicant and disclose ALI's intent to include in the evaluation of secondary impacts, the potential impacts of Bridge developing on its land to the maximum permitted use as currently zoned. The scope of the SEIS may be further refined during the initial public review and comment period.
      ii. **Purpose**: The SEIS will include updated and expanded studies to address the issues raised by the Mauna Lani Resort Association ("**MLRA**") in the Civil Action, and to satisfy HRS Chapter 343 and HAR Section 11-200. The SEIS process will also provide new opportunities for the public, government agencies, and MLRA to review, comment, and engage in dialogue regarding the Project.
      iii. **Note**: Although ALI's SEIS will evaluate the potential impacts of development on Bridge's land, ALI will be the sole applicant and neither the FEIS nor the SEIS are applicable to or intended to satisfy any environmental review required to be conducted by Bridge for its land. Any future rezoning or other trigger for Bridge's potential uses should be evaluated in a separate environmental impact statement submitted by Bridge.

2. **Obtain Relief from the Tolling Order and/or Dismiss Civil Action as Moot**
   Once the Tolling Order has been satisfied through the Department's taking a hard look and determining that an SEIS is required, and the commencement of the SEIS process, ALI and the Department will be in a position to request relief from the Tolling Order.

    **a. Intervene in the Civil Action**

       i. With input from corporation counsel, our client, The Official Committee of Unsecured Creditors for Aina Le'a, Inc. ("**Committee**"), and ALI have filed a non-hearing motion to intervene and be substituted in the Civil Action pursuant to Rules 24 and 25 of the Hawaii Rules of Civil Procedure.

    **b. Request Status Conference**

       i. Once ALI and the Committee are made parties to the Civil Action, ALI, the Committee, and the Department will jointly request a status conference to update the Court and discuss the plans to address the Tolling Order.

    **c. Seek Relief from the Tolling Order and/or Dismissal**

       i. ALI and the Committee will initiate dialogue with MLRA's counsel to discuss the possibility of a negotiated resolution.

      ii. If a negotiated resolution is not possible, ALI, the Committee, and the Department will file a joint motion to lift the Tolling Order and/or dismiss the Civil Action in light of the SEIS process being underway.

**3. Obtain New Zoning Conditions with Project District and Amended Ordinance**

Pursuant to the Department's prior suggestions, ALI will apply for Project District zoning and seek a housekeeping amendment to the Ordinance that will clearly separate ALI's land from Bridge's land and result in a new set of conditions specific to ALI's land.

    **a. File Application for Project District**

       i. **Scope**: ALI will file an application for Project District zoning for the land that ALI owns and/or controls. The Project District application will mirror the previously proposed Project District that was contemplated in the 2010 FEIS.

      ii. **Purpose**: Project District zoning will help to bifurcate ALI's land from Bridge's land, provide greater flexibility in development, resolve boundary line issues within the Project Area, and simplify enforcement for the Department going forward. The Project District zoning ordinance will also resolve issues regarding compliance with the conditions in the Ordinance by establishing new conditions specific to ALI's land.

      iii. **Note**: The Project District application will be supported by the existing FEIS, with the understanding that ALI will be concurrently preparing an SEIS and will hold approval of the Project District application in abeyance pending final approval of the SEIS.

      iv. **Note**: The proposed Project District will retain the obligation to construct a wastewater treatment plant but, as indicated in the 2010

> FEIS, will allow deferred delivery so as to permit expedited delivery of affordable housing using a package plant.

v. **Note**: ALI will continue pursuing the right to develop and construct wells in Ouli, but will also consider and pursue alternatives to satisfy the condition to develop at its expense and in coordination with the State Department of Land and Natural Resources and the County of Hawaii Department of Water Supply, the necessary water source, storage, and transmission facilities to provide an adequate supply of potable water to the Project.

**b. File Housekeeping Amendment to Ordinance 96-153**

i. **Scope**: Concurrently with the Project District application, ALI and/or the Department will seek to amend the Ordinance to remove ALI's land.

ii. **Purpose**: ALI's land will be subject to a new Project District zoning ordinance. If the Council approves ALI's Project District, ALI's land should be removed from the Ordinance for clarity and consistency.

iii. **Note**: The effective date of the housekeeping amendment should coincide with the adoption of the Project District zoning ordinance.

iv. **Note**: The Department advised that this process has been used previously, for example, for the Makalei Estates Subdivision.

ALI has committed to taking the foregoing actions as part of its reorganization plan in the pending Bankruptcy Action. While the proposed path should be acceptable by virtue of it being a recitation of the Department's prior instructions and suggestions, we have requested a written response affirming the Department's position so that we may inform the Judge and parties to the Bankruptcy Action in advance of the confirmation hearing scheduled for March 13, 2019.

Please let us know if you have any questions or if you would like to discuss further. Thank you for your time and consideration and for your ongoing support of the Project.

Very truly yours,

**CASE LOMBARDI & PETTIT**

Dennis M. Lombardi, Esq.

cc: Robert Wessels (via email)
Mayor Harry Kim (via certified mail and email)

# **EXHIBIT C**

(County Acceptance Letter)



Harry Kim
*Mayor*

West Hawai'i Office
74-5044 Ane Keohokalole Hwy
Kailua-Kona, Hawai'i 96740
Phone (808) 323-4770
Fax (808) 327-3563

**County of Hawai'i**
**PLANNING DEPARTMENT**

Michael Yee
*Director*

Duane Kanuha
*Deputy Director*

East Hawai'i Office
101 Pauahi Street, Suite 3
Hilo, Hawai'i 96720
Phone (808) 961-8288
Fax (808) 961-8742

March 5, 2019

Mr. Dennis M. Lombardi, Esq.
Case Lombardi & Pettit. A Law Corporation
Pacific Guardian Center, Mauka Tower
737 Bishop Street, Suite 2600
Honolulu, HI 96813-3228

**SUBJECT:** **Order to Toll, Civil No. 11-01-005K and Other Unresolved Issues Related to**
**Entitlements and Development of the Subject Properties**
**DW 'Aina Le'a Development, LLC; RELCO Corp; 'Aina Le'a, LLC and**
**'Aina Le'a Inc.**
**Ordinance No. 96-153 (REZ 734)**
**Waikoloa, South Kohala District, Island of Hawai'i**
**TMK Nos: (3) 6-8-001:025, 036, 038, 039, and 069**

Dear Mr. Lombardi:

This is in response to your letter dated October 30, 2018, as supplemented by letter dated
February 7, 2019 regarding the above subject matter. Your response was generated by our letter
to you dated May 16, 2017 which contained a notice of violation with respect to the above
referenced Third Circuit Court Order to Toll dated March 28, 2013 ("the Tolling Order"), and
consequently the department ordered that all work, including but not limited to ground
disturbance such as trenching and grading; grubbing and stockpiling; and any other construction
immediately cease until a Final Supplemental Environmental Impact Statement (SEIS) has been
accepted by the department.

We acknowledge that since acquiring the project area, 'Aina Le'a Inc. ("ALI"), the present
successor, has been embroiled in proceedings and litigation relating to entitlements stemming
from the actions and omissions of ALI's predecessors. Those challenges have delayed and
significantly hindered development of ALI's component of the project. We further acknowledge
that on June 22, 2017, ALI elected to protect its assets and restructure its funding to meet its
obligations in an orderly and timely manner under Chapter 11 of the U.S. Bankruptcy Code. ALI
is currently operating as Debtor-in-Possession in bankruptcy action pending before the U.S.
Bankruptcy Court for the District of Hawai'i. As part of its reorganization plan, ALI has

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 474   Filed 05/24/19   Page 143 of 145

**EXHIBIT 1**

Mr. Dennis M. Lombardi, Esq.
Case Lombardi & Pettit. A Law Corporation
March 5, 2019
Page 2

committed to undertaking the steps outlined in your correspondences to resolve the tolling order, address conditions of zoning, and recommence development of the project.

After careful review of your revised Plan to Resolve Open Issues ("the Plan") as stated in the February 7, 2019 letter and after further consultation with staff and our Corporation Counsel, we have taken the requested "hard look" at the method to resolve the Tolling Order and have determined that a new, rather than a supplemental SEIS, will be required for the entire 3,000 acre Bridge 'Aina Le'a LLC and ALI project area. This determination is based on 1) the Tolling Order's finding that the County's acceptance of the FEIS did not meet the requirements of HRS and HAR, so acceptance of the FEIS was invalid and consequently, there is no FEIS to supplement;  2) there have been numerous draft SEIS or EIS prep notices for the Bridge 'Aina Le'a LLC portion of the overall project area but no comprehensive impact assessment of that project component has ever been conducted; 3) ALI's representation that the scope of the EIS/SEIS will now cover the Bridge 'Aina Le'a LLC portion of the project area to provide additional and expanded disclosure and enable the department to fully evaluate the potential environmental impacts of the project as required by the Tolling Order and HEPA; and 4) certain infrastructure improvements trigger compliance with HRS, Chapter 343 such as the use of government lands (highway intersection improvements) and wastewater treatment facilities.

With this determination, item 3 of the Plan, the concurrent filing of a Project District application, cannot be implemented until the new EIS is completed and approved. Because we are requiring a new EIS, your Project District application cannot be accepted for completeness within fifteen (15) days of filing as our zoning code requires, so concurrent processing of the EIS and Project District application is not possible. This does not, however, preclude ALI from preparing the application in concert with initiating the new EIS and making appropriate adjustments as commentary on the EIS is received. It is our understanding that the application for Project District is to allow ALI more development flexibility in their presently zoned area, for which many conditions of zoning approval are out of compliance due to the ongoing litigation affecting the entire project area. In the course of preparing the Project District application, ALI needs to be mindful of the conditions imposed by the State Land Use Commission (SLUC), which were based on a comprehensive, rather than a segmented development program.

Finally, item 2 of the Plan has already been initiated by The Official Committee of Unsecured Creditors of Aina Le'a Inc.'s filing for a non-hearing motion to 1) intervene and 2) substitution of real party in interest for defendants DW 'Aina Le'a Development, LLC and RELCO Corp filing on February 4, 2019. MLRA filed a  response dated February 12, 2019, that litigation has been completed, judgement has been entered and not appealed, and the court order tolling development until HRS Chapter 343 is final. There is no ongoing proceeding in which to intervene. It is our understanding that ALI has accepted MLRA's response and does not intend to pursue it any further.

It is also our understanding that ALI has secured funding which will enable ALI to commence implementation of the Plan upon approval of ALI's proposed reorganization plan by the

bankruptcy court. To that end, ALI is requesting a confirming response from our department so that the Judge and other parties to the Bankruptcy action can be noticed in advance of the confirmation hearing scheduled for March 13, 2019.

This will confirm that subject to the Plan revisions as described herein, the Plan is acceptable to our department, subject to customary processing requirements and the receipt of acceptable plans, designs, and/or other documentation. This confirmation, however, does not imply or represent any pre-commitment or approval guarantee with regard to additional permitting or approval requirements as set forth in the February 7, 2019 letter.

Based on the assumption that the bankruptcy proceedings will direct and enable ALI to move forward with the studies and analysis necessary to demonstrate compliance with the Tolling Order and eventually to provide ALI with the necessary environmental review to apply for the Project District, we agree to hold initiation of downzoning of the project area due to non-compliance with the conditions of Ordinance No. 96-153 in abeyance at this time. The tolling/stop work order effective May 16, 2017 will remain in full force and effect.

Please feel free to contact me or my Deputy if there are any further questions.

Sincerely,

MICHAEL YEE
Planning Director

cc:     Ron Kim, Deputy Corporation Counsel
        Planning Division
        REZ 734, LUC 692, SUB11-0011070
        State Land Use Commission