# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| In re | ) | Case No. 17-00611 |
| | ) | (Chapter 11) |
| AINA LE`A, INC., | ) | |
| | ) | MEMORANDUM IN SUPPORT OF |
| Reorganized Debtor. | ) | MOTION |
| _____ | ) | |

## TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................1

II.   RELEVANT BACKGROUND ...........................................................3

    A.   Facts Leading to Aina Lea Seeking Chapter 11 Protection .................3

        1.   The Property and Bridge's Secured Interests ...........................3

        2.   The Project ................................................................................4

        3.   Foreclosure Actions by Aina Lea's Secured Lenders.................5

    B.   The Chapter 11 Proceeding ................................................................5

        1.   General Procedural Background .................................................5

        2.   Key Terms and Features of Plan ................................................6

            a.   The LUAP .........................................................................6

            b.   Payment Obligations Owed under the Plan.....................7

                i.    Romspen....................................................................7

                ii.   Bridge ......................................................................8

                iii.  Libo Zhang ...............................................................8

                iv.  Property Taxes..........................................................8

    C.   Aina Lea`s Post-Confirmation Defaults........................................8

        1.   Failure to Perform Any Aspect of LUAP ..................................9

        2.   Failure to Pay Iron Horse .......................................................11

        3.   Failure to Pay Romspen ..........................................................11

        4.   Failure to Pay Property Taxes.................................................12

    D.   Summary of Status and Outlook ........................................................13

i

III.   APPLICABLE LEGAL STANDARD ...........................................................16

        A.    Reopening........................................................................................16

        B.    Dismissal .........................................................................................17

IV.   THE CASE MUST BE DISMISSED FOR CAUSE....................................18

        A.    There is Cause to Reopen the Case ..................................................18

        B.    Aina Lea's Defaults Are Cause for Dismissal of the Case .................18

        C.    Dismissal of the Case Is the Proper Remedy ....................................21

V.    CONCLUSION..........................................................................................25

1228718.2

TABLE OF AUTHORITIES

## Cases

In re Baroni,
  36 F.4th 958 (9th Cir. 2022) ...........................................................17, 18

In re Dodge,
  138 B.R. 602 (Bankr. E.D. Cal. 1992) ...........................................16, 18

In re Greenfield Drive Storage Park,
  207 B.R. 913 (9th Cir. B.A.P. 1997) ..............................................18, 21

In re Kenny G Enters., LLC, No. BAP CC-13-1527,
  2014 Bankr. LEXIS 3529, 2014 WL 4100429
  (B.A.P. 9th Cir. Aug. 20, 2014) ...........................................................18

In re Mirchou,
  588 B.R. 555 (Bankr. D. Nev. 2018) ....................................................16

In re Pourteymour,
  2023 Bankr. LEXIS 997 (9th Cir. B.A.P. April 12, 2023) ................................22

In re Pryor, No. 15-BK-19998,
  2016 Bankr. LEXIS 4020, 2016 WL 6835372
  (B.A.P. 9th Cir. Nov. 18, 2016) ...........................................................18

In re Rand,
  2010 Bankr. LEXIS 5076 (9th Cir. B.A.P. Dec. 7, 2010) ...........................22, 23

In re Red Door Lounge, Inc.,
  559 B.R. 728 (Bankr. D. Mont. 2016) ....................................18, 20, 21

In re Sullivan,
  522 B.R. 604 (9th Cir. B.A.P. 2014) ..................................... 21-22, 22

In re Warren, No. BAP EC-14-1390,
  2015 Bankr. LEXIS 1775, 2015 WL 3407244
  (9th Cir. B.A.P. May 28, 2015) ...........................................18, 23, 24

iii

**Statutes**

11 U.S.C. §1112 ................................................................. 8, 16, 17, 18, 20, 22, 25

11 U.S.C. § 362 ................................................................................13, 15

1228718.2

<u>MEMORANDUM IN SUPPORT OF MOTION</u>

# I.    <u>INTRODUCTION</u>

Secured Creditor Bridge Aina Le`a, LLC ("Bridge") requests that the Court dismiss this case for cause pursuant to Section 1112 of the Bankruptcy Code.[1] The First Amended Chapter 11 Plan of Reorganization of Aina Le`a Inc. ("Plan") has failed, due to debtor Aina Le`a Inc. ("Aina Lea") defaulting on multiple material obligations owed under the Plan ("Defaults"). Aina Lea has no chance of curing its Defaults or of performing remaining obligations under the Plan.

As the Court and the parties were aware more than four years ago when the Plan went into effect ("Effective Date"), the Plan was ambitious: for Aina Lea to make good on its various representations and promises to the Court and the parties, and finally develop its real property ("Property"), complete the multifaceted construction project ("Project"), and pay off the massive debts Aina

---

[1] The case still appears to be open. <u>See</u> Dkt. 645. At a July 1, 2022 hearing on Bridge's Motion to Reopen Case and Issue Clarifying Order, <u>see</u> Dkt. 633, the Court granted that motion in part by reopening the case, but denied the motion in all other respects. <u>See</u> Dkt. 645. The Court stated that the case would be "reclosed once the order [was] entered;" <u>see id</u>.; however, the docket reflects that the order was never entered. Therefore, the case appears to have remained open since July 1, 2022; to the extent that conclusion is incorrect, Bridge requests that the Court reopen the case as a matter of course to provide the primary relief requested in this Motion. <u>See</u> §§III.A., IV.A, <u>infra</u>.

Lea owed to Bridge and other Secured Creditors, Aina Lea would have to hit the ground running, and overcome numerous hurdles on a relatively tight timeframe, as outlined in Aina Lea's Land Use Action Plan ("LUAP"). More than four years later, Aina Lea never made it off the starting line.

As of today, Aina Lea has made no progress on developing the Project, or satisfying its debt obligations, or achieving any of the purposes that the Plan was supposed to serve. The list of Aina Lea's Defaults is long and growing:

- Aina Lea no longer owns one parcel of Property that was critical to the Project (the "Affordable Housing Parcel"), having lost it to foreclosure, after Aina Lea failed to make the payment owed to Secured Creditor Romspen Investment Co. ("Romspen") under the Plan ("Romspen Foreclosure").

- Aina Lea's DIP/Exit Lender, Iron Horse Credit LLC ("Iron Horse"), obtained summary judgment and a decree of foreclosure as to its junior interests in the Property, after Aina Lea failed to make payments owed under its loan agreement with Iron Horse ("Iron Horse Foreclosure").

- Aina Lea owes the County of Hawai`i ("County") more than $1 million in unpaid taxes on the remaining parcels of Property it owns, which have been delinquent for several years.

- Aina Lea has not completed any of the steps laid out in its "Land Use Action Plan," the centerpiece of the Plan itself, through which Aina Lea was supposed to develop and complete the Project and pay off its debts.

Unsurprisingly, given Aina Lea's track record of no progress and broken promises, no third parties have lent it any additional funds. And none will. As a result of the all the foregoing, Aina Lea: has no money; cannot move forward with or complete the Project; and cannot satisfy remaining payment obligations

2

owed under the Plan. There is no need to wait another day. The case should be dismissed, so that Bridge can proceed immediately with its remedies in state court.

## II. RELEVANT BACKGROUND

### A. Facts Leading to Aina Lea Seeking Chapter 11 Protection

#### 1. The Property and Bridge's Secured Interests

The Property that Aina Lea formerly owned consists of several parcels of real estate on the west side of the island of Hawai`i:

(a) 68-4747 Queen Ka`ahumanu Highway, designated as Tax Map Key ("TMK") No. (3) 6-8-001-038, the "B-1-A Land";

(b) 68-4747 Queen Ka`ahumanu Highway, designated as TMK No. (3) 6-8-001-0039, the "D-1-A Land";

(c) 68-4747 Queen Ka`ahumanu Highway, designated as TMK No. (3) 6-8-001-069, the "D-1-B-1 Land"; and

(d) 68-4747 Queen Ka`ahumanu Highway, designated as TMK No. (3) 6-8-001-036, the "D-1-B-2 Land," also referred to as the Affordable Housing Parcel.

Each of the foregoing parcels were subject to mortgages in favor of the following lenders, who are recognized as Secured Creditors in these proceedings.

Bridge held first mortgage liens on the B-1-A Land and the D-1-A Land (collectively, the B-1-A Land and the D-1-A Land are referred to as the

3

"Bridge-Encumbered Land" or the "2B-Encumbered Property"), see Dkt. 464, §5.3(b)(i)(C); see also Dkt. 464, pdf p. 51 (defined terms).

Secured Creditor Libo Zhang held a first mortgage lien on the D-1-B-1 Land (the "Zhang-Encumbered Land" or the "2C-Encumbered Property"). See e.g. Dkt. 464, §5.4.

Romspen held a first mortgage lien on the Affordable Housing Parcel, also referred to as the D-1-B-2 Land, the "2A-Encumbered Property," and "Lulana Gardens." See Dkt. 464, §5.3; see also pdf pp. 59, 65 (defined terms).

2.    The Project

As envisioned, the Project, also known as the "Villages of Aina Le`a," would entail development and construction of approximately 1,932 single-family and multi-family residential units on the Property, including at least 385 affordable units on the Affordable Housing Parcel, referred to as Lulana Gardens, along with a mixed-use commercial area, a school site, open space for a future golf course, clubhouse, parks and other amenities. See Exhibit A, pp. 1-2 (Feb. 7, 2019 Letter from Aina Lea to County, setting forth LUAP, attached as Exhibit B and incorporated into Dkt. 474). Of all the parcels of Property, Lulana Gardens – the Affordable Housing Parcel – would be developed and constructed first. See id., p. 2.

1228718.2
U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 649-1   Filed  10/31/23   Page 9 of 30

3.   Foreclosure Actions by Aina Lea's Secured Lenders

Aina Lea and the Project encountered various difficulties from the outset. By early 2017, due to Aina Lea defaulting on payment obligations owed under its respective loan agreements, Libo Zhang and Bridge had instituted separate actions against Aina Lea in state court seeking to foreclose on their mortgage liens.

In Bridge's foreclosure action, it filed a motion for summary judgment and interlocutory decree of foreclosure, in which Bridge demonstrated that there were no issues of material fact regarding Aina Lea's defaults under the subject loan agreements ("Bridge Loan Documents") and that, at the time of its filing, Aina Lea owed Bridge $18,969,817.47, with interest, late fees, and other charges and costs continuing to accrue. See Declaration of Bruce D. Voss ("Voss Decl."), ¶5. Bridge's motion for summary judgment was unopposed, and scheduled to be heard on June 26, 2017. See id.

B.   The Chapter 11 Proceeding

1.   General Procedural Background

To stave off the foreclosures, Aina Lea filed its petition and initiated these proceedings more than six years ago, on June 22, 2017. See Dkt. 1; see also Dkt. 385, Confirmation Brief, pdf pp. 6-7, 20-22.  Aina Lea filed the Plan on April 29, 2019, see Dkt. 464, and the Court entered its Findings of Fact, Conclusions of

5

Law, and Order Confirming the [Plan] ("FOF/COL") on May 24, 2019. See Dkt.

474. The Plan was given an Effective Date of August 14, 2019. See Dkt. 536.

        2.     Key Terms and Features of Plan

Broadly, the purpose of the Plan was to provide Aina Lea with a

"fresh start," a chance to save the Project and in doing so, generate funds sufficient

to pay off Aina Lea's creditors' claims. See Dkt. 307, Disclosure Statement, pdf

pp. 11-13. In its final form, the Plan stated or incorporated the following key terms

and benchmarks.

        a.     The LUAP

As the Court recognized in confirming the Plan, the LUAP was an

essential component of the Plan itself. See Dkt. 474, FOF/COL, at pdf pp. 11-13

(summarizing context for and purpose of LUAP), pdf pp. 37-38 (COLs where

LUAP is referenced); see also Exhibits A (LUAP) and B (County Response

Letter); Dkt. 307, Disclosure Statement, pdf pp. 38-49; Exhibit C (Wessels Depo.

Excerpts), 16:19-22 ("Q. And do you recall that a Land Use Action Plan was an

essential element of that disclosure statement in the Chapter 11 plan? A. Yes.").

The LUAP was supposed to serve as Aina Lea's "path to resolution of

various land use issues it was facing." See Dkt. 474, pdf p. 12; see also Dkt. 307,

Disclosure, pdf pp. 41-49 ("Description of Land Use Action Plan"). Aina Lea

claimed that the LUAP would allow it to resolve those "various land use issues,"

1228718.2

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 649-1   Filed   10/31/23   Page 11 of 30

which Aina Lea claimed had prevented it from "initiating further construction activity at the" Property. Dkt. 307, pdf p. 39. Aina Lea identified "Action Items," or steps, that were critical to beginning and completing the LUAP. <u>See</u> Dkt. 307, pdf pp. 41-49; Exhibit A (LUAP). In confirming the Plan, the Court summarized the LUAP and the necessary steps that Aina Lea intended to take as follows:

> Pursuant to the Land Use Action Plan, Debtor intends to (i) submit a new Environmental Impact Statement ('<u>EIS</u>') that will address the cumulative/supplementary impacts of the use of approximately 1,900 acres of adjacent land, as currently zoned, and (ii) obtain new zoning conditions for the Project through a 'Project District' zoning ordinance and housekeeping amendment to the Ordinance. The Land Use Action Plan provides a framework for resolving the land use issues and is intended to be a flexible plan that allows the Reorganized Debtor to take any action that may be necessary or desirable in furtherance of the Project's development.

Dkt. 474, pdf p. 12, ¶24.

b. <u>Payment Obligations Owed under the Plan</u>

The Plan also scheduled payments of the Secured Creditors' claims and made clear that Aina Lea would remain responsible for paying property taxes for the Property. <u>See</u> Dkt. 464, pdf pp. 11-19, §§5.2-5.4.

i. <u>Romspen</u>

The Plan specifies Aina Lea's obligation to pay Romspen $13,300,000, plus interest, no later than two years after the Effective Date. <u>See</u> Dkt. 464, pdf pp. 12-13, §5.2. Thus, under the Plan, Aina Lea's payment to Romspen would come due August 14, 2021. <u>See id</u>.

7

ii.     <u>Bridge</u>

The Plan specifies Aina Lea's obligation to pay Bridge $20,000,000, plus interest, no later than five years after the Effective Date. <u>See</u> Dkt. 464, pdf pp. 14-16, §5.3. Thus, under the Plan, Aina Lea's payment to Bridge would come due August 14, 2024. <u>See id</u>.

iii.     <u>Libo Zhang</u>

The Plan specifies Aina Lea's obligation to pay Libo Zhang $6,493,995.24, plus interest, no later than five years after the Effective Date. <u>See</u> Dkt. 464, pdf pp. 17-18, §5.4. Thus, under the Plan, Aina Lea's payment to Zhang would come due August 14, 2024. <u>See id</u>.

iv.     <u>Property Taxes</u>

As to each parcel of Property, the Plan reiterated that Aina Lea would remain responsible for timely paying associated property taxes. <u>See</u> Dkt. 464, pdf pp. 13, 16, 18.

C.     <u>Aina Lea`s Post-Confirmation Defaults</u>

To satisfy conditions for the Plan's confirmation, Aina Lea obtained exit funding from Iron Horse in the amount of $5,000,000.00, for which Aina Lea executed a Secured Promissory Note and Mortgage, Security Agreement, Assignment of Leases and Rents, Fixture Filing and Financing Statement to document their transaction ("Iron Horse Loan Documents"), and provided Iron

8

Horse with liens on each parcel of the Property, which were junior to those of the Secured Creditors, including Bride's liens on the Bridge-Encumbered Land. <u>See e.g.</u> Dkt. 474, pdf pp. 35, 47; <u>see also</u> Dkt. 514 (Order Approving DIP/Exit Facility and Providing Other Relief); Dkt. 536 (Notice of Effective Date and Deadlines).

Almost immediately after the Court confirmed the Plan and closed the case, Aina Lea began defaulting on its obligations under the Plan, and did nothing to cure its Defaults, which are listed below.

1.   <u>Failure to Perform Any Aspect of LUAP</u>

In a deposition taken on November 18, 2022, Aina Lea's chief executive officer Robert Wessels admitted that Aina Lea had made no progress as to any aspect of the LUAP; indeed, his testimony confirms that Aina Lea never made a credible effort to move the Project forward as Aina Lea repeatedly represented it would. <u>See generally</u> Exhibit C (Excerpts from Wessels Depo.). Among other things, Mr. Wessels was forced to admit or otherwise confirm that:

- Aina Lea has no wells or working water transmission facilities in place for the Project. <u>Id.</u>, 29:9-50:4.

- Aina Lea has not paid the $1 million-plus Contribution in Aid of Construction fee to Hawaii Water Service Co. required to make any water commitments for the Project enforceable, nor has the utility even added the Project to its service area. <u>Id.</u>, 37:8-41:14.

9

- Aina Lea has not installed a wastewater treatment plant on the Project site; indeed, the wastewater package plant Aina Lea was hoping to install has been repossessed by its seller. <u>Id.</u>, 19:16-29:16.

- No electrical substation has been built, no utility poles have been installed, and no electrical conduits have been dug to provide electrical service to the Project. <u>Id.</u>, 50:5-54:22.

- Aina Lea has not completed an EIS for the Project, and has not even submitted an EIS Preparation Notice to the County. <u>Id.</u>, 56:23-60:17.

- Aina Lea has not begun construction of the intersection with the Queen Kaahumanu Highway necessary to provide access to the Project; Aina Lea has not paid for the intersection construction plans. <u>Id.</u> at 68:22-72:20, 74:2-76:21.

- No internal roads have been constructed for the Project. <u>Id.</u>, 86:21-87:4.

In summary, over the past four years, Aina Lea failed to make any significant progress on any of its so-called "Action Items" under the LUAP. <u>See e.g.</u> <u>id.</u>, 55:16-56:22 (regarding failure to timely perform elements of "Action Item 1"), 77:22-78:5 (regarding failure to timely perform elements of "Action Item 2"), 78:6-81:9 (regarding failure to timely perform elements of "Action Item 3").

10

2.     <u>Failure to Pay Iron Horse</u>

After the Court closed the case, Aina Lea promptly defaulted on its payment obligations owed to Iron Horse under the Iron Horse Loan Documents, giving rise to the Iron Horse Foreclosure. In the Iron Horse Foreclosure, the state court granted Iron Horse's motion for summary judgment and an interlocutory decree of foreclosure as to its junior liens on the Property. <u>See</u> Exhibits D (Judgment re Iron Horse MSJ); E (FOF/COL re Iron Horse MSJ).[2] A commissioner has been appointed in the Iron Horse Foreclosure, but the public auction in connection with that action was repeatedly delayed. Voss Decl., ¶¶6-7. Recently, however, Iron Horse's successor-in-interest, SDCK, requested that the commissioner proceed with rescheduling the public auction of the Zhang-Encumbered Land and the Bridge-Encumbered Land. <u>See</u> Exhibit F (October 19, 2023 Letter from Tius to Robinson).

3.     <u>Failure to Pay Romspen</u>

While the Iron Horse Foreclosure was proceeding, Aina Lea also defaulted on the payment obligation it owed Romspen under the Plan, leading Romspen to renew the Romspen Foreclosure. In that action, the state court granted Romspen's motion for summary judgment and an interlocutory decree of

---

[2] Subsequently, SDCK I, LLC ("SDCK") substituted into the Iron Horse Foreclosure in place of Iron Horse. Voss Decl., ¶¶6-7.

1228718.2
U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 649-1   Filed  10/31/23   Page 16 of 30

foreclosure as to its senior lien on the Affordable Housing Parcel. See Exhibit G, p. 2 (Commissioner's Deed). A public auction in connection with the Romspen Foreclosure was held on August 8, 2022, and on June 27, 2023, the state court entered its order confirming the sale of the Affordable Housing Parcel and awarding other associated relief to Romspen. See id., p. 3.

On August 31, 2023, a Commissioner's Deed was recorded in the Bureau of Conveyances, pursuant to which the Affordable Housing Parcel was deeded to RIC (Luluna) LLC, as Romspen's nominee ("Commissioner's Deed"). See id.

### 4. Failure to Pay Property Taxes

Finally, Aina Lea has not made any payments of property tax assessed to the Property for more than four years. As of October 31, 2023, Aina Lea will owe nearly $750,000 in unpaid real property taxes on the Bridge-Encumbered Land, and an additional $265,207.29 on the Zhang-Encumbered Land, for a total of approximately $1 million; the only reason that Aina Lea no longer owes the County additional unpaid real property taxes on the Affordable Housing Parcel is that Aina Lea no longer owns the Affordable Housing Parcel. See Exhibit H (Real Property Tax Records); Exhibit C (Depo. Excerpts), 145:25-146:5.

1228718.2

D.    Summary of Status and Outlook

Due to Aina Lea's various Defaults, the Plan is no longer viable. The loss of the Affordable Housing Parcel in the Romspen Foreclosure was the final nail in the coffin. Throughout these proceedings, Aina Lea has emphasized that development and sale of units on the Affordable Housing Units was crucial to the Plan's success, and to Aina Lea's ability to fund the remainder of the Project and satisfy its obligations under the Plan.  For that reason, Aina Lea has referred to the Affordable Housing Parcel as the Plan's "centerpiece" and "driving engine," and "[c]learly […] necessary to an effective reorganization."[3]

Even before Aina Lea lost the Affordable Housing Parcel, the "driving engine" of the Plan, the Project had been stuck in neutral for years, going nowhere. See generally Exhibit C (Wessels Depo. Excerpts). Aina Lea achieved none of the "Action Items" set forth in the LUAP that Aina Lea used to persuade

_____

[3] See e.g. Dkt. 261, Aina Lea's Opposition to Romspen's Motion for Relief from Stay, pdf p. 2 ("The centerpiece of the Plan is the completion of 432 townhouse units on the parcels claimed as collateral by Romspen."), pdf p. 6 ("the 38-acre parcel of land denoted by the Debtor as 'Lulana Gardens' that serves as Romspen's collateral is the driving engine behind the Debtor's contemplated Plan and will provide ample cash flows to pay all creditors in full on their allowed claims within a reasonable time frame. Lulana Gardens will be the first parcel to be developed upon resolution of the regulatory issues with County of Hawaii, the roadmap for which has been substantially advanced by the Debtor and Committee land use counsel…"); id. at pdf pp. 7-8 ("Clearly, […] the collateral securing Romspen's loan is necessary to an effective reorganization within the meaning of 11 U.S.C. § 362(d)(2).").

13

1228718.2

the Court that the Plan had a reasonable chance of success. See id. As a result, the benchmarks that Aina Lea said it would reach years ago remain years away. See id.

Aina Lea has no means of ever attaining any of those benchmarks, or moving the Project forward. The fundamental problem that forced Aina Lea into bankruptcy in the first place remains an intractable problem today. Aina Lea is hopelessly broke. See e.g. Exhibit C, 9:19-10:9, 39:5-14, 76:6-9, 145:25-146:5, 160:7-10 (Wessels Depo. Excerpts). None of Aina Lea's wild assurances regarding additional sources of funding have ever materialized. See e.g. Dkt. 641-1, Declaration of Robert J. Wessels in Supp. of Opp. to Bridge's Motion to Reopen Case and Issue Clarifying Order, pdf pp. 2-3, ¶¶2-3.

Based on Aina Lea's track record, no credible lender, investor, or contractor has been willing to wade any deeper into the morass that Aina Lea has created. None will, and for good reason. In addition to not having any money, Aina Lea itself has no credibility, as its representations to the Court throughout these proceedings demonstrate:

On October 16, 2018, Aina Lea stated, among other things, that "[f]urther, as will be evidenced in the Plan and Disclosure Statement to be filed, there has been significant interest among construction lenders to finance construction and development of Lulana Gardens." Dkt. 261, pdf p. 7.

14

On February 19, 2019, when it was seeking confirmation of the Plan, Aina Lea represented, among other things, that "Summit and Bellwether[] continue to advance their diligence and review of the Lulana Gardens Development Project, evidencing their continued interest in financing the project upon satisfaction of the Governmental Development Conditions." Dkt. 385, pdf p. 30.

On December 28, 2020, Aina Lea stated, among other things, that "[Summit] has indicated that it would proceed with its prior financing commitment for a $42.6 million construction loan." Dkt. 610, pdf p. 7.

On February 15, 2021, Aina Lea stated, among other things, that:

- "Taken together, Summit and Whales Point loan [*sic*] are adequate to pay off Romspen, Iron Horse, and provide working capital to enable the initial development of Lulana Gardens well before the August 14, 2021 maturity date of the obligations owing Romspen …." Dkt. 620, pdf p. 9.

- "With the stop-work order lifted, consummation of the Lulana Gardens Project is a firm reality." Id., pdf p. 12.

- "With the stop-work order now lifted, the Reorganized Debtor projects it will be able to "cure" the outstanding post-Effective Date real property taxes using funds committed from Whales Point (described above), which funds projected to be received concurrent with the closing of the Summit loan. These funds, together with the funds committed from Summit, will enable

1228718.2
U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 649-1   Filed   10/31/23   Page 20 of 30

the Reorganized Debtor to bring all real property taxes current, repay Romspen and Iron Horse, and provide additional working capital to enable commencement of construction of Lulana Gardens." Id., pdf pp. 13-14.

On June 17, 2022, Aina Lea stated, among other things, that "the Plan remains viable and the Reorganized Debtor has made significant strides since the Plan Effective Date," based on Mr. Wessels' sworn declaration regarding "various efforts undertaken to secure financing to complete the project and thereby enable the full payment to Creditors contemplated by the Plan," supposed "efforts" which "contemplate[d] refinancing the obligations due Romspen and Iron Horse, respectively, in advance of the foreclosure sales are scheduled for July 11 and 12, 2022, respectively." See Dkt. 641, pdf p. 14; see also Dkt. 641-1, Wessels Decl.

None of those "projections" – or false promises – was ever anything more than a fantasy.

III.     APPLICABLE LEGAL STANDARD

A.     Reopening

Pursuant to 11 U.S.C. Section 350(b), this Court may reopen the case "to administer assets, to accord relief to the debtor, or for other cause." (Emphasis added.) "The decision to reopen a case is committed to the discretion of the bankruptcy court." In re Mirchou, 588 B.R. 555, 562 (Bankr. D. Nev. 2018) (citations omitted). Because a case must necessarily be reopened to consider the

16

underlying request for relief, motions to reopen are granted routinely. <u>See</u> <u>In re</u> <u>Dodge</u>, 138 B.R. 602, 605 (Bankr. E.D. Cal. 1992).

    B.    <u>Dismissal</u>

        Like the decision whether to reopen, the decision whether to dismiss a case for cause pursuant to 11 U.S.C. Section 1112(b)(1) is a matter committed to the Court's broad discretion. <u>See</u> <u>In re Baroni</u>, 36 F.4th 958, 966 (9th Cir. 2022) ("It is also well established that bankruptcy courts have broad discretion in deciding whether to grant relief under Section 1112(b)(1)…" In relevant part, Section 1112(b) provides that the Court "shall convert a case under [chapter 11] to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of the creditors and the estate, for cause …" 11 U.S.C. §1112(b)(1) (bracketing and ellipses added); <u>In re Baroni</u>, 36 F.4th at 965 (advising that, "depending on the arguments advanced by the parties, there are three primary inquiries [that may need to be addressed]: (1) whether cause exists for granting relief under Section 1112(b)(1); (2) whether granting relief is in the creditors' and the estate's best interests; and (3) if so, which form of relief best serves the creditors' and the estate's interests.") (bracketing added).

1228718.2

IV.   THE CASE MUST BE DISMISSED FOR CAUSE

    A.   There is Cause to Reopen the Case

       Again, Bridge believes that the case remains open, given the procedural posture. See fn. 1, supra. However, if the case is indeed closed, there is cause to reopen it, given the primary relief requested in the Motion. See In re Dodge, 138 B.R. at 605; see also In re Greenfield Drive Storage Park, 207 B.R. 913, 918 (9th Cir. B.A.P. 1997).

    B.   Aina Lea's Defaults Are Cause for Dismissal of the Case

       Given Aina Lea's multiple material defaults with respect to the Plan, there is also "cause" to dismiss the case pursuant to Section 1112(b). "'Cause' is a defined term, and it includes a 'material default by the debtor with respect to a confirmed plan.'" In re Baroni, 36 F.4th at 966 (citing 11 U.S.C. § 1112(b)(4)(N)).

       "'A failure to make a payment required under the plan is a material default and is cause for dismissal.'" Id. (quoting In re AMC Mortg. Co., Inc., 213 F.3d 917, 921 (6th Cir. 2000)); Collier on Bankruptcy ¶ 1112.04[6][n] ("Although the Code does not define the term material, the failure to make payments when due under the plan can constitute a material default.").[4]

---

[4] In a string cite, the Ninth Circuit in In re Baroni noted that lower courts within this circuit follow the general rule that a debtor's failure to make payments when due is a "material default" for purposes of Section 1112(b):

    Bankruptcy courts in the Ninth Circuit have followed this rule. See, e.g., In re Kenny G Enters., LLC, No. BAP CC-13-1527, 2014 Bankr. LEXIS 3529,

18

Aina Lea's multiple breaches of its payment obligations under the Plan are material defaults that warrant dismissal of the case. Aina Lea's failure to pay Romspen $13,300,000, plus interest, on August 14, 2021 as the Plan dictated was a "material default" of its own, with devastating consequences for the viability of the Plan itself. As a result of the Romspen Foreclosure, Aina Lea no longer owns the Affordable Housing Parcel, which Aina Lea previously characterized as "necessary," and the "centerpiece" or "driving engine" of the Plan, see Dkt. 261, pdf pp. 6, 7-8; as a result, Aina Lea cannot proceed with, or complete, the first phase of the Project or generate revenues through unit sales to pay off the remaining amounts owed to Bridge and Zhang under the Plan, which amounts

---

2014 WL 4100429, at *13-14 (B.A.P. 9th Cir. Aug. 20, 2014) (unpublished) (holding that a "failure to pay creditors pursuant to the Plan certainly was" a material default constituting cause for conversion); In re Warren, No. BAP EC-14-1390, 2015 Bankr. LEXIS 1775, 2015 WL 3407244, at *5 (B.A.P. 9th Cir. May 28, 2015) (unpublished) (holding that "failure to make any payments to several unsecured creditors for more than four years in contravention of the Plan amounted to a material default and constituted cause to convert or dismiss the bankruptcy case"); In re Red Door Lounge, Inc., 559 B.R. 728, 733 (Bankr. D. Mont. 2016) (failure to make monthly loan payments and pay property taxes was material default); cf. In re Pryor, No. 15-BK-19998, 2016 Bankr. LEXIS 4020, 2016 WL 6835372, at *8-9 (B.A.P. 9th Cir. Nov. 18, 2016) (unpublished) (failure to make required quarterly fee payments to trustee was "cause for dismissal or conversion").

In re Baroni, 36 F.4th at 966.

1228718.2
U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 649-1   Filed  10/31/23   Page 24 of 30

come due on August 24, 2024. There is no way that Aina Lea will be able to make those payments when they come due.

Likewise, as the Court has previously indicated, Aina Lea's chronic and longstanding failure to pay property taxes when due is a "material default," Dkt. 631, Feb. 22, 2021 Hearing Tr. 37:7-25, which also amounts to "cause" for purposes of Section 1112(b)(1). See e.g. In re Red Door Lounge, 559 B.R. at 733 (failure to pay property taxes was material default).[5] Due to its years-long failure to pay real property taxes, Aina Lea now owes approximately $1 million in taxes and associated penalties on the Bridge-Encumbered Land and the Zhang-Encumbered Land. See Exhibit H (Real Property Tax Printouts). Aina Lea has no funds available, or forthcoming, to pay those delinquent taxes and associated penalties. See generally Exhibit C (Wessels Depo. Excerpts).

And while not expressly set forth in the Plan itself, as the Court previously recognized, Aina Lea's failure to make payments owed under the Iron Horse Loan Documents should be treated as another "material default" by Aina Lea "with respect to" the Plan. See Dkt. 617, Jan. 11, 2021 Hearing Tr., 5:2-4 (noting that "[t]he whole idea of the plan was to prevent anybody from foreclosing.

---

[5] Aina Lea's failure to pay Property taxes also constitutes "cause" under Section 1112(b)(1). See 11 U.S.C. §1112(b)(4)(I) (providing that "cause" includes "failure timely to [sic] pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief.").

20

So, at some point, a foreclosure by Iron Horse has to be a material default."); see also In re Red Door Lounge, Inc., 559 B.R. at 733 (failure to make monthly loan payments was material default); In re Greenfield Drive Storage Park, 207 B.R. at 917 (recognizing that debtor's loss of property in separate foreclosure proceedings, which resulted in debtor's inability to generate revenue and maintain its payments under the plan, was a material default of debtor's obligations under the plan).

As noted above, judgment has been entered against Aina Lea in the Iron Horse Foreclosure; a commissioner has been appointed, and SDCK, Iron Horse's successor-in-interest, recently requested that the commissioner reschedule the auction of the Bridge-Encumbered Land and the Zhang-Encumbered Land. See Exhibit F (October 19, 2023 Letter from S. Tius to Commissioner). Those parcels will be sold soon, and neither Aina Lea nor its subsidiaries will have any remaining interests in the Property.

In summary, due to Aina Lea's failure to meet its payment obligations under the Plan and otherwise, "the entire purpose of the [Plan] [can] no longer be achieved." In re Greenfield Drive Storage Park, 207 B.R. at 917 (bracketing added). There is undoubtedly cause to dismiss or convert the case.

C.    Dismissal of the Case Is the Proper Remedy

"If cause is established, the decision whether to convert or dismiss the case falls within the sound discretion of the court." In re Sullivan, 522 B.R. 604,

612 (9th Cir. B.A.P. 2014). In deciding whether to convert or dismiss the case, courts must consider "the best interests of the creditors and the estate." See id.; see also 11 U.S.C. §1112(b)(1) ("the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of the creditors and the estate…."); see also In re Pourteymour, 2023 Bankr. LEXIS 997, *12, 2023 WL 2929323 (9th Cir. B.A.P. April 12, 2023) ("Once a bankruptcy court has determined that cause to convert or dismiss exists, it must apply a 'balancing test,' based on the best interests of creditors and the estate, to decide between conversion and dismissal.") (citing In re AVI, Inc., 389 B.R. 721, 729 (9th Cir. B.A.P. 2008) (further citations omitted)).[6]

---

[6] In performing that balancing test, courts sometimes refer to the following factors for guidance: (1) whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal; (2) whether there would be a loss of rights granted in the case if it were dismissed rather than converted; (3) whether the debtor would simply file a further case upon dismissal; (4) the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors; (5) in assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise; (6) whether any remaining issues would be better resolved outside the bankruptcy forum; (7) whether the estate consists of a 'single asset'; (8) whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests; (9) whether a plan has been confirmed and whether any property remains in the estate to be administered; and (10) whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns. In re Pourteymour, 2023 Bankr. LEXIS 997, *10, 2023 WL 2929323 In re Rand, 2010 Bankr. LEXIS 5076, *31-32, n. 14, 2010 WL 6259960 (9th Cir. B.A.P. Dec. 7, 2010) (quoting 7 Collier on Bankruptcy ¶ 1112.04[7])).

1228718.2

U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 649-1   Filed   10/31/23   Page 27 of 30

Here, the relevant facts to consider weigh in favor of a straight dismissal of the case, rather than conversion. As the Court noted nearly three years ago, and Aina Lea agreed, conversion would – most likely – be a costly waste of time. See e.g. Dkt. 617, Jan. 11, 2021 Hearing Tr., 6:12-7:22[7]; see also Dkt. 631, Feb. 22, 2021 Hearing Tr., 6:4-25, 7:10-11, 37:24-39:1; Dkt. 610, Aina Lea Memo. Opp. Mot. Convert, pdf pp. 16-17 (explaining difficulties and "tremendous administrative burden and costs" that a trustee would face if the case were converted).

The Property is no longer the property of the estate. See id.; see also In re Warren, 2015 Bankr. LEXIS 1775, *16 and at n. 7 (9th Cir. B.A.P. May 28, 2015). Whatever remaining interests Aina Lea holds, or theoretically might be revested in the estate following a conversion, are rapidly diminishing. Romspen now owns the Affordable Housing Parcel, which was supposed to serve as the "centerpiece" and "engine" of the Plan. See Exhibit G (Deed). Aina Lea's ownership interests in the Bridge-Encumbered Land and the Zhang-Encumbered Land will soon be extinguished. See Exhibit F (Tius Letter).

---

[7] Among other things, the Court noted that: "I'm not going to require a Chapter 7 Trustee if there's basically no prospect of that person getting paid. And it's unlikely that I would appoint a Chapter 7 Trustee where there's no prospect of Unsecured Creditors getting anything. Typically, when that's the case, I would dismiss the case and 8 leave the Secured Creditors to their remedies in state court." Id. at 7:4-9.

1228718.2
U.S. Bankruptcy Court - Hawaii   #17-00611   Dkt # 649-1   Filed  10/31/23   Page 28 of 30

Aina Lea is still broke. See e.g., Exhibit C (Wessels Depo. Excerpts), 8:16-10:25. It is not generating any income, see id., and it has no realistic prospects of doing so. No new infusion of capital has come, despite years of Aina Lea's assurances, see §II.D., supra, and none will. As the Court recognized years ago, there is very little, if anything, of value to distribute to the Unsecured Creditors, and no means of paying the Trustee in a converted case; the Court's observations are even more true today. Meanwhile, whatever opportunity remains to proceed with development of the Project is increasingly at risk, as time marches on and ownership of the Property continues to splinter.

The Court previously stated that under the circumstances that are present here, the move that would best serve the creditors' interest is dismissal of the case, so that Secured Creditors can proceed with their remedies in state court. See Dkt. 617, Jan. 11, 2021 Hearing Tr., 7:4-9. Other courts follow the same approach in similar circumstances. See e.g. In re Warren, 2015 Bankr. LEXIS 1775, *16 (upholding bankruptcy court's determination that dismissal, rather than conversion, was the remedy that best served creditors' interests).

Bridge has waited long enough. Aina Lea wasted the opportunity, and breathing room, that the Court provided it years ago. Time has run out. The case should be dismissed, so that Bridge can pursue its rights to relief and foreclosure in state court.

1228718.2

V.     CONCLUSION

For the reasons stated above, Bridge respectfully requests that the Court grant the Motion, and reopen this case and dismiss it for cause, pursuant to Section 1112 of the Bankruptcy Code, with directions that Bridge may pursue its remedies through foreclosure in state court immediately and without further restriction by the Plan.

DATED:  Honolulu, Hawaii, October 31, 2023.

/s/ John D. Ferry III
BRUCE D. VOSS
MATTHEW C. SHANNON
JOHN D. FERRY III

Attorneys for Secured Creditor
BRIDGE AINA LE`A, LLC

25