**Date Signed:**
**December 18, 2023**



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>AINA LEʻA, INC.,<br><br>Reorganized Debtor. | Case No. 17-00611<br>(Chapter 11)<br><br>Re: ECF 649 |

## MEMORANDUM OF DECISION ON
## MOTION TO DISMISS CHAPTER 11 CASE FOR CAUSE

Creditor Bridge Aina Leʻa, LLC ("Bridge"), joined by creditor Xinhui Wang ("Wang"), moves the court to dismiss this chapter 11 case for cause, arguing that debtor Aina Leʻa, Inc. ("Aina Leʻa") has defaulted in carrying out its confirmed plan of reorganization (ECF 649, 654). Another creditor,

1

SDCK I LLC ("SDCK"), joined by Aina Le'a, opposes the motion (ECF 657, 664).

I will not dismiss the case because, as I explain below, dismissal would not have the consequences that Bridge and Wang desire and would not provide any relief to anyone. I will, however, explain the effects of Aina Lea's default under the plan.

Aina Le'a owned several parcels of land in Kona which it intended to develop. Bridge, Wang's predecessor in interest, and Romspen Investment Co. ("Romspen") had mortgage liens on some of those parcels. Aina Le'a's development effort was stymied when the County of Hawaii issued a stop work notice based on environmental and land use issues.

Aina Le'a filed a chapter 11 petition in 2017. For two years, Aina Le'a, Bridge, Wang's predecessor, and Romspen litigated and negotiated Aina Le'a's financial restructuring. Finally, the parties resolved their differences, and the court confirmed Aina Le'a's chapter 11 plan of reorganization on May 24, 2019 (ECF 474).

The chapter 11 plan was premised on Aina Lea's Land Use Action Plan, pursuant to which Aina Le'a proposed a series of steps it would take to resolve the County's objections and obtain all necessary permits and approvals. The County generally agreed to address the issues in the sequence proposed by Aina Le'a, but from the outset it imposed more burdensome requirements than Aina Le'a wanted. (For example, Aina Le'a wanted to prepare a supplemental environmental impact statement covering its property only, but the County insisted on a full environmental impact statement covering both Aina Le'a's property and adjacent property owned by Bridge.) Further, the County did not promise in advance that it would give any of the approvals that Aina Le'a needed to resume its project.

The plan provided that Aina Le'a would obtain "exit financing," meaning a loan of up to $5 million to satisfy its immediate obligations under the plan. The plan provided that it would not become effective until Aina Le'a had borrowed at least $2.5 million of that amount. The plan also contemplated that Aina Le'a or its subsidiaries would borrow up to $110 million to fund the development project.

3

Bridge, Wang's predecessor in interest, and Romspen entered into settlements with Aina Le'a pursuant to which they each accepted the plan.

Bridge agreed that its claim would be (a) fixed at $20 million plus interest at 10.2% from the effective date of the plan, (b) paid in a lump sum on the fifth anniversary of the effective date, and (c) continue to be secured by its existing liens. Aina Le'a agreed to "timely pay all real property taxes assessed on" Bridge's collateral and to reimburse Bridge for some property taxes that Bridge had paid on the collateral (ECF 454.)

Wang's predecessor agreed that Wang's claim would be (a) fixed at $6,493,995.24 plus 12% interest, (b) paid in a lump sum on the fifth anniversary of the effective date or upon a sale or refinancing of Wang's collateral, and (c) secured by the existing liens. Aina Le'a agreed to timely pay the real property taxes on Wang's collateral.

Romspen's agreement was similar, except it was entitled to full payment on the second anniversary of the effective date. (ECF 461.)

Aina Le'a satisfied the conditions to the effectiveness of the plan. Among other things, it obtained a $5 million loan from Iron Horse Credit LLC. The plan became effective on August 14, 2019. (ECF 536.)

But Aina Le'a accomplished almost none of the things it was supposed to do after the effective date. It did not repay Iron Horse when the exit financing loan became due, so Iron Horse filed a foreclosure suit (and later sold its position to SDCK). It did not repay Romspen by the second anniversary of the effective date, so Romspen foreclosed on and acquired its collateral. It made little if any progress in implementing the Land Use Action Plan and has not obtained construction financing.

Understandably, Bridge and Wang are frustrated. Aina Le'a has done virtually none of the things that it promised. Aina Lea's debts to them do not become due until next summer, but there is little if any chance that Aina Le'a will be able to repay those debts when they become due.

Further, the plan terminated any provisions of Bridge's and Wang's loan documents that would permit them to declare a default and foreclose before the due date specified in the plan. This is so because, while the plan

5

restructured their payment rights and preserved their liens, it provides that, "On the Effective Date, except as otherwise expressly provided in the Plan, all . . . documentation or agreements representing or giving rise to Claims against . . . the Debtor . . . shall be deemed canceled and of no further force or effect . . . . The Holders of such canceled . . . documentation shall have no rights arising from or relating to such . . . documentation." (ECF 474 at 81.) This term invalidated all of the covenants and default provisions contained in the original loan documents.

Faced with these problems, Bridge and Wang ask the court to dismiss Aina Le'a's bankruptcy case. They argue that there is ample "cause" under section 1112(b)(1)[1] and that dismissal would be in the best interests of creditors and the estate. They argue that, under section 349, dismissal of the case would reinstate any rights that they lost under the plan.

A literal reading of section 1112 suggests that "cause" exists. Aina Le'a is in "material default . . . with respect to [its] confirmed plan." § 1112(b)(4)(N). Bridge and Wang argue that therefore the court must either

---

[1] Unless otherwise indicated, all references to "sections" refer to the Bankruptcy Code, 11 U.S.C.

convert the case to chapter 7, appoint a chapter 11 trustee or examiner, or dismiss it, depending on which option is "in the best interests of creditors and the estate." § 1112(b)(1).

I disagree with this argument because none of the three options available under section 1112 would do any good for anyone.

Conversion to chapter 7 would be senseless. Because virtually all of Aina Le'a's property was transferred to other parties pursuant to the plan, there is no property left in Aina Lea's bankruptcy estate that a chapter 7 trustee could administer. Appointing a chapter 11 trustee or examiner would be equally futile.

Dismissal of the case would also not improve anyone's position. The chapter 11 plan has become effective and is binding on Bridge and Wang. § 1141(a) ("the provisions of a confirmed plan bind that debtor . . . and any creditor . . . ."). Because the plan has been "substantially consummated" within the (peculiar) meaning of section 1101(2),[2] the plan cannot be

---

[2] A plan is "substantially consummated" when (1) all or substantially all of the property transfers under the plan have occurred, (2) the debtor or its successor has assumed management of the property dealt with by the plan, and (3) distribution under the plan has "commence[d]," These criteria have been satisfied. One would think that "substantial consummation" would require payment of most creditors. But the statute defines the term such that only "commencement" of distribution is required. In other words, a plan can be "substantially consummated" when the

7

modified. § 1127(b) (a plan may be modified "at any time after confirmation of such plan and before substantial consummation of such plan."). Confirmation cannot be revoked because the 180-day deadline for doing so has passed and there is no indication that confirmation was "procured by fraud." § 1144. In short, "a chapter 11 plan's binding effect survives conversion to chapter 7 or dismissal." *In re Oakhurst Lodge, Inc.*, 582 B.R. 784, 793 (Bankr. E.D. Cal. 2018).

Bridge and Wang rely on section 349, which provides that dismissal of a bankruptcy case:

> reinstates--
> **(A)** any proceeding or custodianship superseded under section 543 of this title;
> **(B)** any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; and
> **(C)** any lien voided under section 506(d) of this title;
> **(2)** vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and
> **(3)** revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

---

first dollar is distributed, even though most of the dollars are to be distributed years in the future.

Bridge and Wang argue that, under section 349, the dismissal of a bankruptcy case restores the property rights of all parties as they existed before the bankruptcy case was filed. But section 349 is not so broad. None of the language of section 349 purports to undo or alter a confirmed chapter 11 plan or reinstate loan covenants that the plan terminated.[3]

Because none of the remedies available under section 1112 make any sense in the circumstances of this case, I hold that "cause" does not exist within the meaning of that section. Therefore, the motion to dismiss is DENIED.

But this does not leave Bridge or Wang without a remedy. A confirmed plan operates as a contract between the debtor and the creditors that replaces the preexisting obligations. *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 588 (9th Cir. 1993) ("A reorganization plan resembles a consent decree and therefore, should be construed basically as a contract."). A

---

[3] Section 349 is a general provision, applicable to cases under all chapters of the Code. If section 349 were inconsistent with the provisions specific to chapter 11 cases, the more specific provisions would prevail. See *In re Lee*, 35 B.R. 452, 456 (Bankr. N.D. Ga. 1983).

debtor's failure to carry out a plan of reorganization is therefore a breach of contract, and creditors are entitled to appropriate remedies.

In return for Aina Le'a's promises in the plan to implement the Land Use Action Plan, resume development of the property, and secure construction financing, Bridge and Wang agreed to reduce their claims and delay the due date of payment. Because Aina Le'a has not carried out its end of the bargain and has committed material breaches of the contract (i.e., the plan), Aina Le'a should not get the benefit of the extended due date. (The claims reduction should stay in place because Iron Horse -- SDCK's predecessor in interest -- made the exit financing loan in reliance on it.) Therefore, because Aina Le'a defaulted under the plan, Bridge and Wang are entitled to enforce their claims and liens now notwithstanding the terms of the confirmed plan.

**END OF ORDER**